**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RACHEL WEINGEIST, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED WHO WERE EMPLOYED BY TROPIX MEDIA & ENTERTAINMENT AND TROPIX HOLDINGS LLC AND TROPIX INC., <br><br> PLAINTIFF, <br><br> -AGAINST- <br><br> TROPIX MEDIA & ENTERTAINMENT, TROPIX HOLDINGS LLC, TROPIX INC., MARIO BAEZA, TAYMI CESPEDES, JAVIER RODRIGUEZ, AND TANIA MILAN, <br><br> DEFENDANTS. | CIVIL ACTION NO.: 1:20-CV-00275-ER-SLC <br><br><br> **NOTICE OF MOTION TO VACATE DEFAULT JUDGMENT, ENLARGING THE TIME TO FILE AN ANSWER AND GRANTING PERMISSION TO FILE A COUNTERCLAIM AND THIRD PARTY COMPLAINT PURSUANT TO 28 U.S.C. § 1367.** |

**SIRS:**

**PLEASE TAKE NOTICE** that upon the attached affirmation of Mario Baeza and affirmation of Geoffrey D. Mueller, Esq., sworn to on July 30, 2021, and upon the brief submitted herein, Defendants will move this Court, Honorable Judge Edgardo Ramos, U.S.M.J., in Room 619, United States District Court for the Southern District of New York, 40 Foley Square, New York, New York, on the ____ day of September, 2021 at 10:00 a.m., or soon thereafter as counsel can be heard, for an order pursuant to Rules 55(c) and 60(b) of the Federal Rules of Civil Procedure setting aside a default judgment, enlarging the time to file an answer and granting permission to file a counterclaim and third party complaint pursuant to 28 U.S.C. § 1367.

Dated: Westwood, New Jersey
      July 30, 2021

Law Offices of Geoffrey D. Mueller, LLC
Attorneys for Defendants, Tropix Inc. d/b/a
Tropix Media & Entertainment, Tropix
Holdings LLC and Mario Baeza


By: __*/s/Geoffrey D. Mueller*__
    GEOFFREY D. MUELLER, ESQ.
    366 Kinderkamack Road
    Westwood, New Jersey 07675
    (201) 569-2533
    email: gmueller@gdm-law.com


TO:    Darius Adam Marzec, Esq.
      Marzec Law Firm, P.C.
      776A Manhattan Avenue, Suite 104
      Brooklyn, New York 11222
      (718) 609-0303
      email: dmarzec@marzeclaw.com

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RACHEL WEINGEIST, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED WHO WERE EMPLOYED BY TROPIX MEDIA & ENTERTAINMENT AND TROPIX HOLDINGS LLC AND TROPIX INC., | CIVIL ACTION NO.: 1:20-CV-00275-ER-SLC |
| PLAINTIFF, | **ORDER** |
| -AGAINST- | |
| TROPIX MEDIA & ENTERTAINMENT, TROPIX HOLDINGS LLC, TROPIX INC., MARIO BAEZA, TAYMI CESPEDES, JAVIER RODRIGUEZ, AND TANIA MILAN, | |
| DEFENDANTS. | |

**THIS MATTER** having been presented to the Court upon the application of the LAW OFFICES OF GEOFFREY D. MUELLER, LLC, attorneys for Defendants, TROPIX INC. d/b/a TROPIX MEDIA & ENTERTAINMENT, TROPIX HOLDINGS LLC and MARIO BAEZA for an Order Setting Aside a Default Judgment, Enlarging the Time to File an Answer and Granting Permission to file a Counterclaim pursuant to 28 U.S.C. § 1367 in the above-referenced matter; and for good cause shown:

**IT IS** on this _____ day of _____, 2021;

**ORDERED** that Defendants' Motion Setting Aside a Default Judgment, Enlarging the Time to File an Answer and Granting Permission to file a Counterclaim pursuant to 28 U.S.C. § 1367 be and is hereby GRANTED; and

**IT IS FURTHER ORDERED** that the Defendants are to file the Answer and Counterclaim in this matter within thirty (30) days of the entered order; and

**IT IS FURTHER ORDERED** that within _____ days of Defendants' receipt, a copy of this Order shall be transmitted to all parties.

_____

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RACHEL WEINGEIST, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED WHO WERE EMPLOYED BY TROPIX MEDIA & ENTERTAINMENT AND TROPIX HOLDINGS LLC AND TROPIX INC., | CIVIL ACTION NO.: 1:20-CV-00275-ER-SLC |

CIVIL ACTION NO.: 1:20-CV-00275-ER-SLC

**CERTIFICATION OF SERVICE**

RACHEL WEINGEIST, INDIVIDUALLY
AND ON BEHALF OF ALL OTHER
PERSONS SIMILARLY SITUATED WHO
WERE EMPLOYED BY TROPIX MEDIA &
ENTERTAINMENT AND TROPIX
HOLDINGS LLC AND TROPIX INC.,

                PLAINTIFF,

          -AGAINST-

TROPIX MEDIA & ENTERTAINMENT,
TROPIX HOLDINGS LLC, TROPIX INC.,
MARIO BAEZA, TAYMI CESPEDES,
JAVIER RODRIGUEZ, AND TANIA
MILAN,

                DEFENDANTS.

 

I hereby certify that on this 30th day of July, 2021, a true and accurate copy of Defendants' Motion Setting Aside a Default Judgment, Enlarging the Time to File an Answer and Granting Permission to file a Counterclaim and third-party complaint pursuant to 28 U.S.C. § 1367 was filed and served on all counsel of record via ECF.

**LAW OFFICES OF GEOFFREY D. MUELLER, LLC**
Attorneys for Defendants, Tropix Inc. d/b/a Tropix Media
& Entertainment, Tropix Holdings LLC and Mario Baeza

By: ____/s/Geoffrey D. Mueller_____
      GEOFFREY D. MUELLER

Dated: July 30, 2021

366 Kinderkamack Road
Westwood, New Jersey 07675
Phone: (201) 569-2533
Fax: (201) 569-2554
Email: gmueller@gdm-law.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

RACHEL WEINGEIST, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED WHO WERE EMPLOYED BY TROPIX MEDIA & ENTERTAINMENT AND TROPIX HOLDINGS LLC AND TROPIX INC.,

PLAINTIFF,

-AGAINST-

TROPIX MEDIA & ENTERTAINMENT, TROPIX HOLDINGS LLC, TROPIX INC., MARIO BAEZA, TAYMI CESPEDES, JAVIER RODRIGUEZ, AND TANIA MILAN,

DEFENDANTS.

CIVIL ACTION NO.: 1:20-CV-00275-ER-SLC

**AFFIRMATION OF COUNSEL IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT, ENLARGE TIME TO ANSWER AND GRANTING PERMISSION TO FILE A COUNTERCLAIM AND THIRD-PARTY COMPLAINT PURSUANT TO 28 U.S.C. § 1367**

I, GEOFFREY D. MUELLER, ESQ., do hereby affirm as follows:

1.      I am an attorney in the State of New York and the managing member of the Law Offices of Geoffrey D. Mueller, LLC, counsel for Defendants, Tropix Inc. d/b/a Tropix Media & Entertainment, Tropix Holdings LLC and Mario Baeza (hereinafter, "Defendants").

2.      I am responsible for the handling of the within matter, and I am fully familiar with the facts and circumstances set forth herein.

3.      This Affirmation in support of the within Motion to Vacate Default Judgment, Enlarge Time to Answer and granting permission to file a Counterclaim and Third-party Complaint pursuant to 28 U.S.C. § 1367.

## PROCEDURAL HISTORY

4.        Annexed hereto as **Exhibit A** is a true and accurate copy of the Docket Report.

5.        Upon a review of the docket, Plaintiff's Complaint was filed on January 10, 2020. [See Dkt. 1].

6.        Shortly thereafter, an Amended Complaint was filed on January 12, 2020. [See Dkt. 2].

7.        Simultaneously, seven separate entries requesting the issuance of a Summons from the Clerk were uploaded. [See Dkt. 6 through Dkt. 12].

8.        On January 13, 2020, the Court advised that the Summons were deficient for various clerical reasons, including the incorrect document being filed and the incorrect case number on the document filed. See Exhibit A.

9.        Further, on January 13, 2020, the Court advised that the Amended Complaint was deficient as the initial Complaint was not filed correctly. Id.

10.       It appears that on January 16, 2020, Plaintiff filed a Complaint and an Amended Complaint all in one day. [See Dkt. 13 and Dkt. 14].

11.       Further on January 16, 2020, Plaintiff requested for Issuance of a Summons. [See Dkt. 15].

12.       On January 17, 2020, this matter was assigned to Judge Edgardo Ramos and Magistrate Judge Sarah L. Cave. See Exhibit A.

13.       On January 17, 2020, the Court advised that the Amended Complaint and request for Issuance of Summonses were deficient and that they would need to be refiled. Id.

14.       Thereafter, on January 24, 2020, Plaintiff refiled the First Amended Complaint. [See Dkt. 16].

15.     Further, on January 24, 2020, Plaintiff filed a Request for Issuance of Summons as to all parties.  [See Dkt. 17 through Dkt. 23].

16.     Thereafter, the Court advised that the Summonses were to be refiled as the captions do not match the pleading caption. See Exhibit A.

17.     On January 30, 2020, Plaintiff refiled a Request for Issuance of Summons for all parties.  [See Dkt. 25 through Dkt. 30].

18.     On January 31, 2020, the Court issued electronic summonses as to all parties.  [See Dkt. 31 through Dkt. 36].

19.     On February 24, 2020, Plaintiff filed Executed Summonses stating that all parties were allegedly served on February 20, 2020 through Jose, Security for River Ridge located at 200 Old Palisade Road, Fort Lee.  [See Dkt. 37 through Dkt. 43].[1]

20.     Reviewing the tax records for 200 Old Palisade Road, Fort Lee, New Jersey, it is a very large building with thirty-one floors and approximately 250 apartments.  Annexed hereto as **Exhibit B** is a true and accurate copy of the tax records for 200 Old Palisade Road, Fort Lee, New Jersey. See also, **Exhibit C**, a true and accurate copy of the River Ridge "Homepage" for the Chen Agency, Realtors.

21.     Nowhere does Plaintiff include any apartment number in any attempt for service of any pleading.

22.     It appears that Plaintiff attempted to file a Proposed Certificate of Default on March 24, 2020.  [See Dkt. 44].

23.     On March 26, 2020, the Court advised that the Proposed Certificate of Default was deficient as it was the wrong document, it lists the wrong name for the person that was personally

---

[1] There appears to be no dispute that Defendants were never personally served and that the doorman for River Ridge does not reside with any Defendant.

served with the Amended Complaint, and Plaintiff did not cite the Amended Complaint. <u>See</u> Exhibit A.

24.     Further, on March 26, 2020, Plaintiff filed a Proposed Clerk's Certificate of Default for each party, along with a Declaration in Support of the Proposed Clerk's Certificates of Default. [<u>See</u> Dkt. 45 through Dkt. 52].

25.     On or about March 26, 2020, the Clerk's Certificate of Default was entered as to all parties.  [<u>See</u> Dkt. 53 through Dkt. 59].

26.     On April 22, 2020, Plaintiff filed a Proposed Order to Show Cause without Emergency Relief against the Defendants.  [<u>See</u> Dkt. 60].

27.     This was approved and reviewed on April 22, 2020.

28.     On April 23, 2020, the Court advised that the Order to Show Cause Hearing would be held on June 5, 2020 at 11:15 a.m. [<u>See</u> Dkt. 61].

29.     On June 4, 2020, Plaintiff filed an Affidavit of Service of the Order to Show Cause for Default Judgment and all other documents served on all Defendants by first class and certified mail, return receipt requested to 200 Old Palisade Road, Fort Lee, New Jersey. [<u>See</u> Dkt. 62].

30.     On June 5, 2020, a minute entry from the Order to Show Cause Hearing was entered denying Plaintiff's Motion for Default Judgment and directing her to effectuate proper service of process on the Defendants or brief the Court on why existing service is proper.  <u>See</u> Exhibit A.

31.     Further, the minute entry gives Plaintiff until September 5, 2020 to effectuate this service or the matter would be dismissed. <u>Id.</u>

32.     On September 8, 2020, the Court entered an Order allowing Plaintiff until September 30, 2020 to effectuate service on the Defendants. [<u>See</u> Dkt. 63].

33.     On September 30, 2020, Plaintiff filed Affidavits of Service as to Tropix Media and

Entertainment, Tropix Holdings, LLC and Tropix Inc. as to service on the New York Department of State. [See Dkt. 64 through Dkt. 66].

34. Further, on September 30, 2020, Plaintiff filed an Order to Show Cause without Emergency Relief for an Order for Default Judgment. [See Dkt. 67].

35. On October 1, 2020, the Court advised that the filing for the Order to Show Cause was deficient, and as such, it would need to be refiled. See Exhibit A.

36. As such, on October 1, 2020, Plaintiff refiled the Order to Show Cause, along with an Affidavit in Support of the Order to Show Cause and a Statement of Damages. [See Dkt. 68 through Dkt. 70].

37. An Order to Show Cause Hearing for Default Judgment was scheduled for October 28, 2020 at 10:00 a.m. [See Dkt. 72].

38. The hearing was then adjourned from October 28, 2020 was rescheduled for November 5, 2020. [See Dkt. 73].

39. On November 3, 2020, Plaintiff filed a Certificate of Service as to the service of the Order to Show Cause on Defendants by first class and certified mail, return recipe requested. [See Dkt. 75].

40. On November 5, 2020. Default Judgment was entered against Tropix Media & Entertainment, Tropix Holdings, LLC, Tropix, Inc. and Mario Baeza. [See Dkt. 76].

41. On or about June 29, 2021, this Firm filed a Notice of Appearance on behalf of Tropix Media & Entertainment, Tropix Holdings, LLC, Tropix, Inc. and Mario Baeza. [See Dkt. 78].

42. Further, on June 29, 2021, this Firm requested a conference as to the issues relative to service and requesting permission to file a Motion to Vacate Default Judgment. [See Dkt. 81].

43.     In the pre-motion conference, Defendants were granted leave to file a Motion to Vacate Default Judgment by July 30, 2021.

44.     A true and complete copy of the Defendants proposed Answer and Counterclaim is annexed hereto as **Exhibit D**

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

**THE LAW OFFICES OF GEOFFREY D. MUELLER, LLC**
Attorneys for Defendants, Tropix Inc. d/b/a Tropix Media &
Entertainment, Tropix Holdings LLC and Mario Baeza


By: _____*/s/ Geoffrey D. Mueller*_____
        GEOFFREY D. MUELLER

Dated:  July 30, 2021

Exhibit A

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:20-cv-00275-ER

Weingeist v. Tropix Media and Entertainment et al        Date Filed: 01/10/2020
Assigned to: Judge Edgardo Ramos                         Jury Demand: Plaintiff
Cause: 05:7123 Petition by FLRA against unfair labor practices   Nature of Suit: 710 Labor: Fair Standards
                                                         Jurisdiction: Federal Question

**Plaintiff**

**Rachel Weingeist**                        represented by   **Darius Adam Marzec**
*individually and on behalf of all other*                    Marzec Law Firm, P.C.
*persons similarly situated who were*                        776A Manhattan Avenue Suite 104
*employed by Tropix Media & Entertainment*                   Brooklyn, NY 11222
*and Tropix Holdings LLC and Tropix Inc.*                    718-609-0303
                                                             Fax: 718-841-7508
                                                             Email: dmarzec@marzeclaw.com
                                                             *ATTORNEY TO BE NOTICED*

V.

**Defendant**

**Tropix Media and Entertainment**          represented by   **Geoffrey David Mueller**
*TERMINATED: 11/05/2020*                                     Harwood, Lloyd, LLC
                                                             130 Main Street
                                                             Hackensack, NJ 07601
                                                             (201)-487-1080
                                                             Fax: (201)-487-4758
                                                             Email: gmueller@gdm-law.com
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Tropix Holdings LLC**                     represented by   **Geoffrey David Mueller**
*TERMINATED: 11/05/2020*                                     (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Tropix Inc.**                             represented by   **Geoffrey David Mueller**
*TERMINATED: 11/05/2020*                                     (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Mario Baeza**                             represented by   **Geoffrey David Mueller**
*TERMINATED: 11/05/2020*                                     (See above for address)
                                                             *LEAD ATTORNEY*
                                                             *ATTORNEY TO BE NOTICED*

**Defendant**

**Tayme Cespedes**
*TERMINATED: 01/27/2020*

**Defendant**

**Javier Rodriguez**

**Defendant**

**Tania Milan**

**Defendant**

**Taymi Cespedes**

| Date Filed | # | Docket Text |
|---|---|---|
| 01/10/2020 | 1 | **FILING ERROR - PDF ERROR -** COMPLAINT against Mario L. Baeza, Tayme Cespedes, Tania Milan, Javier Rodriguez, Tropix Holdings LLC, Tropix Inc., Tropix Media and Entertainment. (Filing Fee $ 400.00, Receipt Number ANYSDC-18479008)Document filed by Rachel Weingeist.(Marzec, Darius) Modified on 1/13/2020 (pne). (Entered: 01/10/2020) |
| 01/12/2020 | 2 | **FILING ERROR - LINKED TO DEFICIENT PLEADING-** FIRST AMENDED COMPLAINT amending 1 Complaint, against Mario L. Baeza, Tayme Cespedes, Tania Milan, Javier Rodriguez, Tropix Holdings LLC, Tropix Inc., Tropix Media and Entertainment with JURY DEMAND.Document filed by Rachel Weingeist. Related document: 1 Complaint,.(Marzec, Darius) Modified on 1/13/2020 (pne). (Entered: 01/12/2020) |
| 01/12/2020 | 3 | NOTICE OF APPEARANCE by Darius Adam Marzec on behalf of Rachel Weingeist. (Marzec, Darius) (Entered: 01/12/2020) |
| 01/12/2020 | 4 | NOTICE OF APPEARANCE by Darius Adam Marzec on behalf of Rachel Weingeist. (Marzec, Darius) (Entered: 01/12/2020) |
| 01/12/2020 | 5 | CIVIL COVER SHEET filed. (Marzec, Darius) (Entered: 01/12/2020) |
| 01/12/2020 | 6 | REQUEST FOR ISSUANCE OF SUMMONS as to Tropix Media & Entertainment, re: 2 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/12/2020) |
| 01/12/2020 | 7 | REQUEST FOR ISSUANCE OF SUMMONS as to Tropix Holdings LLC, re: 2 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/12/2020) |
| 01/12/2020 | 8 | REQUEST FOR ISSUANCE OF SUMMONS as to Tropix Inc., re: 2 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/12/2020) |
| 01/12/2020 | 9 | REQUEST FOR ISSUANCE OF SUMMONS as to Mario L. Baeza, re: 2 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/12/2020) |
| 01/12/2020 | 10 | REQUEST FOR ISSUANCE OF SUMMONS as to Tayme Cespedes, re: 2 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/12/2020) |
| 01/12/2020 | 11 | REQUEST FOR ISSUANCE OF SUMMONS as to Javier Rodriguez, re: 2 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/12/2020) |
| 01/12/2020 | 12 | REQUEST FOR ISSUANCE OF SUMMONS as to Tania Milan, re: 2 Amended |

| | | Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/12/2020) |
|---|---|---|
| 01/13/2020 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Darius Adam Marzec to RE-FILE Document No. <u>1</u> Complaint,. The filing is deficient for the following reason(s): the PDF attached to the docket entry for the pleading is not correct; incorrect case number on PDF. Re-file the pleading using the event type Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. If the deficiency/deficiencies are not corrected within five (5) days per Amended Standing Order 15-mc-00131 this case will be administratively closed. Initial Pleading due by 1/21/2020. (pne) (Entered: 01/13/2020) |
| 01/13/2020 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Darius Adam Marzec to RE-FILE Document No. <u>2</u> Amended Complaint,. The filing is deficient for the following reason(s): an Amended Complaint can not be filed in a case unless the initial pleading is filed correctly. Re-file the pleading using the event type Amended Complaint found under the event list Complaints and Other Initiating Documents - attach the correct signed PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (pne) (Entered: 01/13/2020) |
| 01/16/2020 | <u>13</u> | COMPLAINT against Mario L. Baeza, Tayme Cespedes, Tania Milan, Javier Rodriguez, Tropix Holdings LLC, Tropix Inc., Tropix Media and Entertainment. Document filed by Rachel Weingeist.(Marzec, Darius) (Entered: 01/16/2020) |
| 01/16/2020 | <u>14</u> | **FILING ERROR - NOT LINKED TO CORRESPONDING PLEADING-** FIRST AMENDED COMPLAINT amending <u>2</u> Amended Complaint, against Mario L. Baeza, Tania Milan, Javier Rodriguez, Tropix Holdings LLC, Tropix Inc., Tropix Media and Entertainment, Taymi Cespedes with JURY DEMAND.Document filed by Rachel Weingeist. Related document: <u>2</u> Amended Complaint,.(Marzec, Darius) Modified on 1/17/2020 (pne). (Entered: 01/16/2020) |
| 01/16/2020 | <u>15</u> | REQUEST FOR ISSUANCE OF SUMMONS as to Tami Cespedes, re: <u>14</u> Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/16/2020) |
| 01/17/2020 | | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Edgardo Ramos. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions. (pne) (Entered: 01/17/2020) |
| 01/17/2020 | | Magistrate Judge Sarah L. Cave is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (pne) (Entered: 01/17/2020) |
| 01/17/2020 | | Case Designated ECF. (pne) (Entered: 01/17/2020) |
| 01/17/2020 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT PLEADING. Notice to Attorney Darius Adam Marzec to RE-FILE Document No. <u>14</u> Amended Complaint,. The filing is deficient for the following reason(s): the Amended Complaint must be linked to the correctly filed Complaint at Document No. <u>13</u> . Re-file the pleading using the event type Amended Complaint found under the event list Complaints and |

| | | |
|---|---|---|
| | | Other Initiating Documents - attach the PDF - select the individually named filer/filers - select the individually named party/parties the pleading is against. (pne) (Entered: 01/17/2020) |
| 01/17/2020 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Darius Adam Marzec to RE-FILE Document No. 11 Request for Issuance of Summons, 8 Request for Issuance of Summons, 7 Request for Issuance of Summons, 6 Request for Issuance of Summons, 12 Request for Issuance of Summons, 10 Request for Issuance of Summons, 9 Request for Issuance of Summons. The filing is deficient for the following reason(s): the summons requests are linked to a pleading that was not accepted by the Court; Re-file the summons requests and link them to the properly filed Complaint at Document No. 13 . Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the summons form PDF. (pne) (Entered: 01/17/2020) |
| 01/17/2020 | | ***NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Darius Adam Marzec to RE-FILE Document No. 15 Request for Issuance of Summons. The filing is deficient for the following reason(s): the summons request was not processed due to the deficient pleading; re-file the summons request after you have properly re-filed the Amended Complaint; party name on the docket entry text contains a typographical error. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the summons form PDF. (pne) (Entered: 01/17/2020) |
| 01/24/2020 | 16 | FIRST AMENDED COMPLAINT amending 13 Complaint against Mario Baeza, Taymi Cespedes, Tania Milan, Javier Rodriguez, Tropix Holdings LLC, Tropix Inc., Tropix Media and Entertainment with JURY DEMAND.Document filed by Rachel Weingeist. Related document: 13 Complaint.(Marzec, Darius) (Entered: 01/24/2020) |
| 01/24/2020 | 17 | FILING ERROR - SUMMONS REQUEST PDF ERROR - REQUEST FOR ISSUANCE OF SUMMONS as to Tropix Media & Entertainment, re: 16 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) Modified on 1/27/2020 (jgo). (Entered: 01/24/2020) |
| 01/24/2020 | 18 | FILING ERROR - SUMMONS REQUEST PDF ERROR - REQUEST FOR ISSUANCE OF SUMMONS as to Tropix Holdings LLC, re: 16 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) Modified on 1/27/2020 (jgo). (Entered: 01/24/2020) |
| 01/24/2020 | 19 | FILING ERROR - SUMMONS REQUEST PDF ERROR - REQUEST FOR ISSUANCE OF SUMMONS as to Tropix Inc., re: 16 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) Modified on 1/27/2020 (jgo). (Entered: 01/24/2020) |
| 01/24/2020 | 20 | FILING ERROR - SUMMONS REQUEST As To - REQUEST FOR ISSUANCE OF SUMMONS as to Mario L. Baeza, re: 16 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) Modified on 1/27/2020 (jgo). (Entered: 01/24/2020) |
| 01/24/2020 | 21 | REQUEST FOR ISSUANCE OF SUMMONS as to Taymi Cespedes, re: 16 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/24/2020) |
| 01/24/2020 | 22 | FILING ERROR - SUMMONS REQUEST PDF ERROR - REQUEST FOR ISSUANCE OF SUMMONS as to Javier Rodriguez, re: 16 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) Modified on 1/27/2020 (jgo). (Entered: 01/24/2020) |

| 01/24/2020 | 23 | **FILING ERROR - SUMMONS REQUEST PDF ERROR -** REQUEST FOR ISSUANCE OF SUMMONS as to Tania Milan, re: 16 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) Modified on 1/27/2020 (jgo). (Entered: 01/24/2020) |
|---|---|---|
| 01/27/2020 | 24 | ELECTRONIC SUMMONS ISSUED as to Taymi Cespedes. (jgo) (Entered: 01/27/2020) |
| 01/27/2020 |  | ***NOTICE TO ATTORNEY REGARDING DEFICIENT REQUEST FOR ISSUANCE OF SUMMONS. Notice to Attorney Darius Adam Marzec to RE-FILE Document No. 22 Request for Issuance of Summons, 23 Request for Issuance of Summons, 17 Request for Issuance of Summons, 18 Request for Issuance of Summons, 19 Request for Issuance of Summons, 20 Request for Issuance of Summons. The filing is deficient for the following reason(s): the PDF case caption does not match pleading caption; party name on 'as to' docket entry text and the PDF 'To' must match party name listed on pleading caption (Doc. 20);. Re-file the document using the event type Request for Issuance of Summons found under the event list Service of Process - select the correct filer/filers - and attach the correct summons form PDF. (jgo) (Entered: 01/27/2020)** |
| 01/30/2020 | 25 | REQUEST FOR ISSUANCE OF SUMMONS as to Javier Rodriguez, re: 16 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/30/2020) |
| 01/30/2020 | 26 | REQUEST FOR ISSUANCE OF SUMMONS as to Tania Milan, re: 16 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/30/2020) |
| 01/30/2020 | 27 | REQUEST FOR ISSUANCE OF SUMMONS as to Tropix Media & Entertainment, re: 16 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/30/2020) |
| 01/30/2020 | 28 | REQUEST FOR ISSUANCE OF SUMMONS as to Tropix Holdings LLC, re: 16 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/30/2020) |
| 01/30/2020 | 29 | REQUEST FOR ISSUANCE OF SUMMONS as to Tropix Inc., re: 16 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/30/2020) |
| 01/30/2020 | 30 | REQUEST FOR ISSUANCE OF SUMMONS as to Mario Baeza, re: 16 Amended Complaint,. Document filed by Rachel Weingeist. (Marzec, Darius) (Entered: 01/30/2020) |
| 01/31/2020 | 31 | ELECTRONIC SUMMONS ISSUED as to Javier Rodriguez..(sj) (Entered: 01/31/2020) |
| 01/31/2020 | 32 | ELECTRONIC SUMMONS ISSUED as to Tania Milan..(sj) (Entered: 01/31/2020) |
| 01/31/2020 | 33 | ELECTRONIC SUMMONS ISSUED as to Tropix Media and Entertainment..(sj) (Entered: 01/31/2020) |
| 01/31/2020 | 34 | ELECTRONIC SUMMONS ISSUED as to Tropix Holdings LLC..(sj) (Entered: 01/31/2020) |
| 01/31/2020 | 35 | ELECTRONIC SUMMONS ISSUED as to Tropix Inc...(sj) (Entered: 01/31/2020) |
| 01/31/2020 | 36 | ELECTRONIC SUMMONS ISSUED as to Mario Baeza..(sj) (Entered: 01/31/2020) |
| 02/24/2020 | 37 | SUMMONS RETURNED EXECUTED Summons and Amended Complaint, served. Tropix Media and Entertainment served on 2/20/2020, answer due 3/12/2020. Service was accepted by Jose, Security for River Ridge. Document filed by Rachel Weingeist..(Marzec, Darius) (Entered: 02/24/2020) |
| 02/24/2020 | 38 | SUMMONS RETURNED EXECUTED Summons and Amended Complaint, served. Tropix Holdings LLC served on 2/20/2020, answer due 3/12/2020. Service was accepted |

| | | |
|---|---|---|
| | | by Jose, Security for River Ridge. Document filed by Rachel Weingeist..(Marzec, Darius) (Entered: 02/24/2020) |
| 02/24/2020 | <u>39</u> | SUMMONS RETURNED EXECUTED Summons and Amended Complaint, served. Tropix Inc. served on 2/20/2020, answer due 3/12/2020. Service was accepted by Jose, Security for River Ridge. Document filed by Rachel Weingeist..(Marzec, Darius) (Entered: 02/24/2020) |
| 02/24/2020 | <u>40</u> | SUMMONS RETURNED EXECUTED Summons and Amended Complaint, served. Mario Baeza served on 2/20/2020, answer due 3/12/2020. Service was accepted by Jose, Security for River Ridge. Document filed by Rachel Weingeist..(Marzec, Darius) (Entered: 02/24/2020) |
| 02/24/2020 | <u>41</u> | SUMMONS RETURNED EXECUTED Summons and Amended Complaint, served. Tania Milan served on 2/20/2020, answer due 3/12/2020. Service was accepted by Jose, Security for River Ridge. Document filed by Rachel Weingeist..(Marzec, Darius) (Entered: 02/24/2020) |
| 02/24/2020 | <u>42</u> | SUMMONS RETURNED EXECUTED Summons and Amended Complaint, served. Taymi Cespedes served on 2/20/2020, answer due 3/12/2020. Service was accepted by Jose, Security for River Ridge. Document filed by Rachel Weingeist..(Marzec, Darius) (Entered: 02/24/2020) |
| 02/24/2020 | <u>43</u> | SUMMONS RETURNED EXECUTED Summons and Amended Complaint, served. Javier Rodriguez served on 2/20/2020, answer due 3/12/2020. Service was accepted by Jose, Security for River Ridge. Document filed by Rachel Weingeist..(Marzec, Darius) (Entered: 02/24/2020) |
| 03/24/2020 | <u>44</u> | **FILING ERROR - WRONG PDF FILE ASSOCIATED WITH DOCKET ENTRY -** PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Rachel Weingeist. (Attachments: # <u>1</u> Affidavit of Rachel Weingeist, # <u>2</u> Supplement Clerk's Certificates of Default, # <u>3</u> Affidavit Certification of Service).(Marzec, Darius) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** Modified on 3/24/2020 (dt). (Entered: 03/24/2020) |
| 03/24/2020 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT PROPOSED CLERK'S CERTIFICATE OF DEFAULT: Notice to Attorney Darius Marzec. RE-FILE Document No. <u>44</u> Proposed Clerk's Certificate of Default. The filing is deficient for the following reason(s): the PDF attached to the docket entry for the proposed clerk's certificate of default is the wrong document; the proposed clerk's certificate of default lists the wrong name for the person that was personally served as in the Affidavits of Service; the proposed clerk's certificate of default does not cite to an Amended Complaint being filed; the proposed clerk's certificate of default does not cite that the service of the amended complaint was served, it has Summons and Complaint; First Correct all of the Clerk's Certificates of Default, then separately file each one as to each Defendant using the event type Proposed Clerk's Certificate of Default found under the event list Proposed Order then, separately Re-file the Affidavit with the Request for default and Affidavit of Service also as an attachment to the Affidavit in Support, using the event type Affidavit in Support of a Non-Motion, found under the event list Other Answers- select the correct filer/filers - attach the correct PDF that - lists the correct filed date of the complaint, lists the correct name(s) of the party(ies)who was/were served, lists the correct date the party(ies) was/were served, lists the correct filed date of the proof of service, cites the service of the amended complaint. (dt)** Modified on 3/24/2020 (dt). (Entered: 03/24/2020) |
| 03/26/2020 | <u>45</u> | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Rachel |

| | | |
|---|---|---|
| | | Weingeist..(Marzec, Darius) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Entered: 03/26/2020) |
| 03/26/2020 | 46 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Rachel Weingeist..(Marzec, Darius) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Entered: 03/26/2020) |
| 03/26/2020 | 47 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Rachel Weingeist..(Marzec, Darius) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Entered: 03/26/2020) |
| 03/26/2020 | 48 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Rachel Weingeist..(Marzec, Darius) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Entered: 03/26/2020) |
| 03/26/2020 | 49 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Rachel Weingeist..(Marzec, Darius) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Entered: 03/26/2020) |
| 03/26/2020 | 50 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Rachel Weingeist..(Marzec, Darius) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Entered: 03/26/2020) |
| 03/26/2020 | 51 | PROPOSED CLERK'S CERTIFICATE OF DEFAULT. Document filed by Rachel Weingeist..(Marzec, Darius) **Proposed document to be reviewed and processed by Clerk's Office staff (No action required by chambers).** (Entered: 03/26/2020) |
| 03/26/2020 | 52 | DECLARATION of Darius A. Marzec, Esq. in Support re: 51 Proposed Clerk's Certificate of Default, 47 Proposed Clerk's Certificate of Default, 45 Proposed Clerk's Certificate of Default, 49 Proposed Clerk's Certificate of Default, 50 Proposed Clerk's Certificate of Default, 46 Proposed Clerk's Certificate of Default, 48 Proposed Clerk's Certificate of Default. Document filed by Rachel Weingeist. (Attachments: # 1 Affidavit of Rachel Weingeist in Support of Request for Certificate of Default, # 2 Supplement Request for Clerk's Certificate of Default, # 3 Affidavit Certification of Service).(Marzec, Darius) (Entered: 03/26/2020) |
| 03/26/2020 | 53 | CLERK'S CERTIFICATE OF DEFAULT as to Tropix Media and Entertainment, issued March 26, 2020..(dt) (Entered: 03/26/2020) |
| 03/26/2020 | 54 | CLERK'S CERTIFICATE OF DEFAULT as to Tropix Holdings LLC, issued March 26, 2020. (dt) (Entered: 03/26/2020) |
| 03/26/2020 | 55 | CLERK'S CERTIFICATE OF DEFAULT as to Tropix Inc., issued March 26, 2020. (dt) (Entered: 03/26/2020) |
| 03/26/2020 | 56 | CLERK'S CERTIFICATE OF DEFAULT as to Mario Baeza, issued March 26, 2020. (dt) (Entered: 03/26/2020) |
| 03/26/2020 | 57 | CLERK'S CERTIFICATE OF DEFAULT as to Tania Milan, issued March 26, 2020. (dt) (Entered: 03/26/2020) |
| 03/26/2020 | 58 | CLERK'S CERTIFICATE OF DEFAULT as to Taymi Cespedes, issued March 26, 2020. (dt) (Entered: 03/26/2020) |
| 03/26/2020 | 59 | CLERK'S CERTIFICATE OF DEFAULT as to Javier Rodriguez, issued March 26, 2020. (dt) (Entered: 03/26/2020) |
| 04/22/2020 | 60 | PROPOSED ORDER TO SHOW CAUSE WITHOUT EMERGENCY RELIEF. Document filed by Rachel Weingeist. (Attachments: # 1 Affidavit of Jerome Noll, Esq., # 2 Affidavit of Rachel Weingeist, # 3 Text of Proposed Order Proposed Default Judgment, # |

| | | |
|---|---|---|
| | | 4 Exhibit A (Complaint), # 5 Exhibit B (Summons and First Amended Complaint), # 6 Exhibit C (Affidavits of Service), # 7 Exhibit D (Affidavit of Service), # 8 Exhibit E (Affidavit of Service), # 9 Exhibit F (Affidavit of Service), # 10 Exhibit G (Clerk's Certificates of Default), # 11 Exhibit H (Statement of Damages)).(Marzec, Darius) **Proposed Order to Show Cause to be reviewed by Clerk's Office staff.** (Entered: 04/22/2020) |
| 04/22/2020 | | ***NOTICE TO COURT REGARDING PROPOSED ORDER TO SHOW CAUSE WITHOUT EMERGENCY RELIEF. Document No. 60 Proposed Order to Show Cause Without Emergency Relief,, was reviewed and approved as to form. (ad)** (Entered: 04/23/2020) |
| 04/23/2020 | 61 | ORDER TO SHOW CAUSE FOR JUDGMENT BY DEFAULT: ORDERED, that the Defendants, TROPIX MEDIA & ENTERTAINMENT, TROPIX HOLDINGS LLC, TROPIX, INC., MARIO BAEZA, TA YMI CESPEDES, JAVIER RODRIGUEZ, and TANIA MILAN ("Defendants"), or their counsel, show cause before the Honorable Edgardo Ramos, United States District Court Judge for the Southern District of New York, via teleconference (Number: 877-411-9748; Access: 302 9857) on the 5th day of June, 2020, at 11:15 A.M. And as set forth herein. Show Cause Hearing set for 6/5/2020 at 11:15 AM before Judge Edgardo Ramos. (Signed by Judge Edgardo Ramos on 4/23/2020) (ama) (Entered: 04/23/2020) |
| 04/23/2020 | | Set/Reset Hearings: Telephone Conference set for 6/5/2020 at 11:15 AM before Judge Edgardo Ramos. (ama) (Entered: 04/23/2020) |
| 06/04/2020 | 62 | AFFIDAVIT OF SERVICE of Order to Show Cause for Default Judgment with all supporting exhibits and papers served on TROPIX MEDIA & ENTERTAINMENT, TROPIX HOLDINGS LLC, TROPIX INC., MARIO BAEZA, TAYMI CESPEDES, JAVIER RODRIGUEZ, TANIA MILAN on May 9, 2020. Service was accepted by JRG. Service was made by Certified Mail Return Receipt Requested. Document filed by Rachel Weingeist. (Attachments: # 1 Exhibit Returned Certified Mail Receipts).(Marzec, Darius) (Entered: 06/04/2020) |
| 06/05/2020 | | Minute Entry for proceedings held before Judge Edgardo Ramos: Telephone Conference held on 6/5/2020. Plaintiff's counsel appeared by telephone. Plaintiff is directed to effectuate proper service on defendants or submit briefing on why current service of process is proper. Plaintiff is further directed to provide the summons and complaint in this case to attorney Wilder, counsel to defendants. (jar) (Entered: 06/08/2020) |
| 09/08/2020 | 63 | ORDER: On June 5, 2020, the Court held a show-cause hearing to consider Weingeist's proposed default judgment, Doc. 60. At that conference, the Court denied Weingeist's motion for default judgment and directed her to either effectuate proper service of process on the defendants or brief the Court on why existing service was proper. Minute Entry (June 5, 2020). Three months later, Weingeist has failed to do either. Weingeist is directed to properly serve the defendants by September 30, 2020. Failure to do so will result in dismissal of this matter without prejudice. Fed. R. Civ. P. 4(m). ( Service due by 9/30/2020.) (Signed by Judge Edgardo Ramos on 9/8/2020) (mro) (Entered: 09/08/2020) |
| 09/30/2020 | 64 | AFFIDAVIT OF SERVICE. Tropix Media and Entertainment served on 6/8/2020, answer due 6/29/2020. Service was accepted by Sue Zouky, Corporation Division of NY Department of State. Document filed by Rachel Weingeist..(Marzec, Darius) (Entered: 09/30/2020) |
| 09/30/2020 | 65 | AFFIDAVIT OF SERVICE. Tropix Holdings LLC served on 6/8/2020, answer due 6/29/2020. Service was accepted by Sue Zouky, Corporation Division of NY Department of State. Document filed by Rachel Weingeist..(Marzec, Darius) (Entered: 09/30/2020) |

| | | |
|---|---|---|
| 09/30/2020 | 66 | AFFIDAVIT OF SERVICE. Tropix Inc. served on 6/8/2020, answer due 6/29/2020. Service was accepted by Sue Zouky, Corporation Division of NY Department of State. Document filed by Rachel Weingeist..(Marzec, Darius) (Entered: 09/30/2020) |
| 09/30/2020 | 67 | **FILING ERROR - DEFICIENT DOCKET ENTRY -** PROPOSED ORDER TO SHOW CAUSE WITHOUT EMERGENCY RELIEF. Document filed by Rachel Weingeist. (Attachments: # 1 Text of Proposed Order Proposed Default Judgment, # 2 Affidavit Affidavit of Rachel Weingeist, # 3 Affidavit Affidavit of Jerome Noll, Esq., # 4 Exhibit A (Complaint), # 5 Exhibit B (First Amended Complaint), # 6 Exhibit C (Summons Issued as to each Defendant), # 7 Exhibit D (Affidavits of Service dated February 20, 2020), # 8 Exhibit E (Clerks Certificate of Default), # 9 Exhibit F (Affidavits of Service dated June 10, 2020), # 10 Exhibit G (Letter to Counsel w/attachments dated June 8, 2020), # 11 Exhibit H (Statement of Damages)).(Marzec, Darius) **Proposed Order to Show Cause to be reviewed by Clerk's Office staff.** Modified on 10/1/2020 (km). (Entered: 09/30/2020) |
| 10/01/2020 | | **\*\*\*NOTICE TO ATTORNEY REGARDING DEFICIENT PROPOSED ORDER TO SHOW CAUSE WITHOUT EMERGENCY RELIEF. Notice to attorney Darius Marzec to RE-FILE Document No. 67 Proposed Order to Show Cause Without Emergency Relief. The filing is deficient for the following reason(s): the documents need to be filed as separate entries. The proposed order to show cause needs to be filed separately under proposed orders, proposed order to show cause without emergency relief. The affidavit in support needs to be filed under other answers, affidavit in support of a non-motion. The statement of damages needs to be filed under Other Filings, Other Documents, Statement of Damages. The proposed default judgment needs to be filed under proposed orders, proposed default judgment. Anything else you wish to include can be submitted as exhibits to the affidavit. (km)** (Entered: 10/01/2020) |
| 10/01/2020 | 68 | PROPOSED ORDER TO SHOW CAUSE WITHOUT EMERGENCY RELIEF. Document filed by Rachel Weingeist..(Marzec, Darius) **Proposed Order to Show Cause to be reviewed by Clerk's Office staff.** (Entered: 10/01/2020) |
| 10/01/2020 | 69 | AFFIDAVIT of Rachel Weingeist in Support re: 68 Proposed Order to Show Cause Without Emergency Relief. Document filed by Rachel Weingeist. (Attachments: # 1 Affidavit of Jerome Noll, Esq. in Support of OSC for Default Judgment, # 2 Exhibit A (Complaint), # 3 Exhibit B (Amended Complaint), # 4 Exhibit C (Summons Issued), # 5 Exhibit D (Affidavits of Service dated February 20, 2020), # 6 Exhibit E (Clerks Certificate of Default), # 7 Exhibit F (Affidavits of Service dated June 10, 2020), # 8 Exhibit G (Letter to Defendants' Counsel w/attachmentsdated June 8, 2020), # 9 Exhibit H (Statement of Damages)).(Marzec, Darius) (Entered: 10/01/2020) |
| 10/01/2020 | 70 | STATEMENT OF DAMAGES. Document filed by Rachel Weingeist..(Marzec, Darius) (Entered: 10/01/2020) |
| 10/01/2020 | 71 | PROPOSED DEFAULT JUDGMENT pursuant to FRCP 55(b)(2). Document filed by Rachel Weingeist..(Marzec, Darius) **Proposed Default Judgment to be reviewed by Clerk's Office staff.** (Entered: 10/01/2020) |
| 10/01/2020 | | **\*\*\*NOTICE TO COURT REGARDING PROPOSED ORDER TO SHOW CAUSE WITHOUT EMERGENCY RELIEF. Document No. 68 Proposed Order to Show Cause Without Emergency Relief was reviewed and approved as to form. (km)** (Entered: 10/01/2020) |
| 10/01/2020 | | **\*\*\*NOTICE TO COURT REGARDING PROPOSED DEFAULT JUDGMENT. Document No. 71 Proposed Default Judgment was reviewed and approved as to form. (km)** (Entered: 10/01/2020) |

| 10/01/2020 | 72 | ORDER TO SHOW CAUSE FOR JUDGMENT BY DEFAULT: ORDERED, that the Defendants, TROPIX MEDIA & ENTERTAINMENT, TROPIX HOLDINGS LLC, TROPIX, INC. and MARIO BAEZA ("Defendants"), or their counsel, show cause before the Honorable Edgardo Ramos, United States District Court Judge for the Southern District of New York, via teleconference (Dial: (877) 411-9748; Access Code: 302 9857#) on the 28th day of October, 2020, at 10 A.M. or as soon thereafter as counsel can be heard, why an Order should not be issued pursuant to Rule 55.1 and 55.2(a) of the Local Civil Rules for the Southern District of New York and Rule 54 of the Federal Rules of Civil Procedure, for the entry of a judgment by default against Defendants, jointly and severally, in amounts of: (a) $25,000.00 as and for unpaid wages for the months of November 2019 ($12,500.00) and December 2019 ($12,500.00); (b) statutory liquidated damages under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 et seq.) and the various wage orders promulgated thereunder by the U.S. Department of Labor and codified under 29 C.F.R. § 552 et seq. ("FLSA") in the amount of $25,000.00; (c) statutory damages in the amount of $5,000.00 for failure to furnish Plaintiff with a statement with every payment of wages listing gross wages, deductions and net wages in contravention of New York Labor Law § 195(3) and New York State Department of Labor Regulations§ 142-2.7; (d) statutory damages in the amount of $5,000.00 for failure to apprise Plaintiff of her rights under New York Labor Law and failure to establish, maintain and preserve for not less than six (6) years payroll records showing the hours worked, gross wages, deductions and net wages in contravention of New York Labor Law § 194(4) and New York State Department of Labor Regulation § 142-2.6; and (e) reimbursement of $10,409.55 in unreimbursed employee costs incurred by Plaintiff on behalf of Defendants, plus interest at the rate of 9% on the unreimbursed expenses from December 1, 2019 to September 30, 2020 in the amount of $756.84 (daily rate of interest being $2.57), for a total as of September 30, 2020 of $71,166.39, plus taxable costs in the amount of $678.24 and attorneys' fees in the amount of $7,055.00, for a total judgment by default in the amount of $78,899.63; and it is further ORDERED, that first class mail, return-receipt requested service of a copy of this order and annexed affidavits with all supporting papers and exhibits upon Defendants on or before the 14th day of October, 2020 shall be deemed good and sufficient service thereof. ( Telephone Conference set for 10/28/2020 at 10:00 AM before Judge Edgardo Ramos.) (Signed by Judge Edgardo Ramos on 10/1/2020) (mro) (Entered: 10/02/2020) |
| 10/16/2020 | 73 | RESCHEDULING NOTICE: Initial Conference set for 11/5/2020 at 10:45 AM before Judge Edgardo Ramos. The initial conference previously scheduled for October 28, 2020, is hereby rescheduled for November 5, 2020 at 10:45 a.m. The conference will occur remotely and by telephone. The parties are directed to call the Court at (877) 411-9748; Access Code: 3029857. (mro) (Entered: 10/16/2020) |
| 10/19/2020 | 74 | AMENDED RESCHEDULING NOTICE: The show cause hearing previously scheduled for October 28, 2020, is hereby rescheduled for November 5, 2020 at 10:45 a.m. The hearing will occur remotely and by telephone. The parties are directed to call the Court at (877) 411-9748; Access Code: 3029857. (Telephone Conference set for 11/5/2020 at 10:45 AM before Judge Edgardo Ramos.) (rro) (Entered: 10/19/2020) |
| 11/03/2020 | 75 | CERTIFICATE OF SERVICE of signed Order to Show Cause dated October 1, 2020 served on Defendants TROPIX MEDIA & ENTERTAINMENT, TROPIX HOLDINGS LLC, TROPIX, INC. and MARIO BAEZA on October 14, 2020. Service was made by MAIL. Document filed by Rachel Weingeist. (Attachments: # 1 Exhibit A (Certified Mail Receipts for OSC dated October 1, 2020), # 2 Exhibit B (signed returned Certified Mail Receipts for OSC dated October 1, 2020)).(Marzec, Darius) (Entered: 11/03/2020) |
| 11/05/2020 | | Minute Entry for proceedings held before Judge Edgardo Ramos: Show Cause Hearing held on 11/5/2020 by telephone. Plaintiff's counsel present. Neither Defendant nor counsel |

| | | |
|---|---|---|
| | | for Defendant appeared. By the end of the day, Plaintiff's counsel shall report back to the Court whether defendants' counsel has contacted him. (jar) (Entered: 11/05/2020) |
| 11/05/2020 | 76 | DEFAULT JUDGMENT: ORDERED, ADJUDGED AND DECREED: That the Plaintiff, RACHEL WEIN GEIST, have judgment against the Defendants, TROPIX MEDIA & ENTERTAINMENT, TROPIX HOLDINGS LLC, TROPIX, INC. and MARIO BAEZA, jointly and severally, in the liquidated amount of $60,000.00, plus unreimbursed employee expenses in the amount of $10,409.55 with interest at 9% on the unreimbursed expenses from December 1, 2019 to September 30, 2020 in the amount of $756.84, amounting to $71,166.39, plus costs and disbursements of this action in the amount of $678.24, plus attorneys' fees incurred by Plaintiff in this action in the amount of $7,055.00, amounting in all to $78,899.63. (Signed by Judge Edgardo Ramos on 11/5/2020) (rro) (Entered: 11/05/2020) |
| 04/05/2021 | 77 | ORDER: On November 5, 2020, the Court entered a default judgment against defendants Tropix Media & Entertainment, Tropix Holdings LLC, Tropix, Inc. and Mario Baeza. Defendants Rodriguez, Milan and Cespedes have been served with process and remain in the case. Plaintiff is directed to move for default against these defendants or otherwise provide the Court with a status update by no later than April 19, 2021. (Signed by Judge Edgardo Ramos on 4/5/2021) (mro) (Entered: 04/05/2021) |
| 06/29/2021 | 78 | NOTICE OF APPEARANCE by Geoffrey David Mueller on behalf of Mario Baeza, Tropix Holdings LLC, Tropix Inc., Tropix Media and Entertainment..(Mueller, Geoffrey) (Entered: 06/29/2021) |
| 06/29/2021 | 79 | LETTER MOTION for Conference addressed to Judge Edgardo Ramos from Geoffrey D. Mueller, Esq. dated June 29, 2021. Document filed by Mario Baeza, Tropix Holdings LLC, Tropix Inc., Tropix Media and Entertainment..(Mueller, Geoffrey) (Entered: 06/29/2021) |
| 07/01/2021 | 80 | ORDER granting 79 Letter Motion for Conference. A pre-motion conference will occur by telephone on July 16, 2021 at 11:00 AM before Judge Edgardo Ramos. The parties are instructed to call (877) 411-9748 and enter access code 3029857# when prompted. (HEREBY ORDERED by Judge Edgardo Ramos)(Text Only Order) (jar) (Entered: 07/01/2021) |
| 07/15/2021 | 81 | LETTER RESPONSE to Motion addressed to Judge Edgardo Ramos from Darius A. Marzec and Jerome Noll dated July 15, 2021 re: 79 LETTER MOTION for Conference addressed to Judge Edgardo Ramos from Geoffrey D. Mueller, Esq. dated June 29, 2021. . Document filed by Rachel Weingeist..(Marzec, Darius) (Entered: 07/15/2021) |
| 07/16/2021 | | Minute Entry for proceedings held before Judge Edgardo Ramos: Pre-Motion Conference held on 7/16/2021 by telephone. Plaintiff's counsel present. Counsel for Tropix Defendants, present. Tropix defendants are granted leave to file a motion to vacate the default judgment with the following briefing schedule: moving papers due July 30, 2021; opposition due September 8, 2021; and reply due September 22, 2021. (jar) (Entered: 07/16/2021) |

| **PACER Service Center** | | |
|---|---|---|
| **Transaction Receipt** | | |
| 07/30/2021 08:57:41 | | |
| **PACER Login:** | gmueller | **Client Code:** | Baeza |
| **Description:** | Docket Report | **Search Criteria:** | 1:20-cv-00275-ER |
| **Billable Pages:** | 10 | **Cost:** | 1.00 |

Exhibit B

**243 Records Found for District: 0219 FORT LEE Data as of 07/29/21    Page: 1**    Back    Next

| | Block | Lot | Qual | Class | Location | Owner |
|---|---|---|---|---|---|---|
| More Info | 3352 | 4 | C001A | 2 | 200 OLD PALISADE RD. #1A | DE ANGELIS, ELIZABETH |
| More Info | 3352 | 4 | C001B | 2 | 200 OLD PALISADE RD. #1B | CHU, PETER & YI LING CHEN |
| More Info | 3352 | 4 | C001C | 2 | 200 OLD PALISADE RD. #1C | 200 OLD PALISADE ROAD UNIT 1C LLC |
| More Info | 3352 | 4 | C001D | 2 | 200 OLD PALISADE RD. #1D | PARK, CHANG SIK & SUN HYUNG |
| More Info | 3352 | 4 | C001E | 2 | 200 OLD PALISADE RD. #1E | PARK, CHANG SIK & SUN HYUNG |
| More Info | 3352 | 4 | C001F | 2 | 200 OLD PALISADE RD. #1F | ARGERAKIS, GEORGE P. & JOANNA |
| More Info | 3352 | 4 | C001G | 2 | 200 OLD PALISADE RD. #1G | LEE, ELIZABETH; LEE, SUSAN M. |
| More Info | 3352 | 4 | C001H | 2 | 200 OLD PALISADE RD. #1H | SON, BOHYE; SONG, YONG |
| More Info | 3352 | 4 | C001J | 2 | 200 OLD PALISADE RD. #1J | LIM, SEUNG HA |
| More Info | 3352 | 4 | C002A | 2 | 200 OLD PALISADE RD. #2A | JOUNG, HYOSUN S. |
| More Info | 3352 | 4 | C002B | 2 | 200 OLD PALISADE RD. #2B | LEONG FAMILY INVESTMENTS, LLC |
| More Info | 3352 | 4 | C002C | 2 | 200 OLD PALISADE RD. #2C | OK, IN HEE; OK, JENNIFER |
| More Info | 3352 | 4 | C002D | 2 | 200 OLD PALISADE RD. #2D | PETRIGLIANO, ANGELA |
| More Info | 3352 | 4 | C002G | 2 | 200 OLD PALISADE RD. #2G | LI, YAGUANG & XU, LIN |
| More Info | 3352 | 4 | C002H | 2 | 200 OLD PALISADE RD. #2H | PARISER, AMANDA E. & RUTH |
| More Info | 3352 | 4 | C002J | 2 | 200 OLD PALISADE RD. #2J | YOON, HEA K. |
| More Info | 3352 | 4 | C003A | 2 | 200 OLD PALISADE RD. #3A | KIM, JAE HONG |
| More Info | 3352 | 4 | C003B | 2 | 200 OLD PALISADE RD. #3B | TVARUZEK, MIROSLAV & ZLATA |
| More Info | 3352 | 4 | C003C | 2 | 200 OLD PALISADE RD. #3C | LEE, JAE W. & OAK S.;SAM,ANN,&BOBBY |
| More Info | 3352 | 4 | C003D | 2 | 200 OLD PALISADE RD. #3D | CHOE, JEANIE K. |
| More Info | 3352 | 4 | C003E | 2 | 200 OLD PALISADE RD. #3E | GARCIA, MILDRED |
| More Info | 3352 | 4 | C003F | 2 | 200 OLD PALISADE RD. #3F | LI,RAYMOND KWOK CHAK&CHING,S;TRSTES |
| More Info | 3352 | 4 | C003G | 2 | 200 OLD PALISADE RD. #3G | KIM, HYUN KEUN & LEE, ASHLEY EUN J. |
| More Info | 3352 | 4 | C003H | 2 | 200 OLD PALISADE RD. #3H | MURRAY, DENISE |
| More Info | 3352 | 4 | C003J | 2 | 200 OLD PALISADE RD. #3J | AHN, SOOK YOUNG |
| More Info | 3352 | 4 | C004A | 2 | 200 OLD PALISADE RD. | HYUN, JAE EUN |

| | | | | | |
|---|---|---|---|---|---|
| | | | | #4A | |
| More Info | 3352 | 4 | C004B | 2 | 200 OLD PALISADE RD. #4B | KIM; MARY M.,ROBERT C.,CHARLES C.S. |
| More Info | 3352 | 4 | C004C | 2 | 200 OLD PALISADE RD. #4C | BLANK, IGOR |
| More Info | 3352 | 4 | C004D | 2 | 200 OLD PALISADE RD. #4D | SHAPIRO, STEPHEN |
| More Info | 3352 | 4 | C004G | 2 | 200 OLD PALISADE RD. #4G | GURIN, MARK & VERA |
| More Info | 3352 | 4 | C004H | 2 | 200 OLD PALISADE RD. #4H | KIM, MINHYE |
| More Info | 3352 | 4 | C004J | 2 | 200 OLD PALISADE RD. #4J | VARGA, ELLE C. |
| More Info | 3352 | 4 | C005A | 2 | 200 OLD PALISADE RD. #5A | YANG, FAN |
| More Info | 3352 | 4 | C005B | 2 | 200 OLD PALISADE RD. #5B | MILMAN, ARON & FRIEDA & TATYANA |
| More Info | 3352 | 4 | C005C | 2 | 200 OLD PALISADE RD. #5C | 200 FORT LEE, LLC C/O LEE-NIXON,HYU |
| More Info | 3352 | 4 | C005D | 2 | 200 OLD PALISADE RD. #5D | YOO, CHANG |
| More Info | 3352 | 4 | C005E | 2 | 200 OLD PALISADE RD. #5E | MORDECHAI, LLC |
| More Info | 3352 | 4 | C005F | 2 | 200 OLD PALISADE RD. #5F | XIN, YUZHOU; JIANG, YUQING |
| More Info | 3352 | 4 | C005G | 2 | 200 OLD PALISADE RD. #5G | SUH, HYUNSOOK; SUH, CHANG SUN |
| More Info | 3352 | 4 | C005H | 2 | 200 OLD PALISADE RD. #5H | JANG, JAE & SEO, EUNJU |
| More Info | 3352 | 4 | C005J | 2 | 200 OLD PALISADE RD. #5J | YASKIL, DAR |
| More Info | 3352 | 4 | C006A | 2 | 200 OLD PALISADE RD. #6A | KIM; SANG YON, SEUNG JA & DAI SIK |
| More Info | 3352 | 4 | C006B | 2 | 200 OLD PALISADE RD. #6B | KO, HYE RYUN |
| More Info | 3352 | 4 | C006C | 2 | 200 OLD PALISADE RD. #6C | KWAN, EDMUND K. & SUSAN L. |
| More Info | 3352 | 4 | C006D | 2 | 200 OLD PALISADE RD. #6D | KATHY RYU IRREVOCABLE TRUST |
| More Info | 3352 | 4 | C006G | 2 | 200 OLD PALISADE RD. #6G | CHOI, YOUNG SOOK |
| More Info | 3352 | 4 | C006H | 2 | 200 OLD PALISADE RD. #6H | SIEGEL, ARTHUR & RENEE S. |
| More Info | 3352 | 4 | C006J | 2 | 200 OLD PALISADE RD. #6J | LANGER, HOPE |
| More Info | 3352 | 4 | C007A | 2 | 200 OLD PALISADE RD. #7A | PARK, YUN K. & CHRISTINE |
| More Info | 3352 | 4 | C007B | 2 | 200 OLD PALISADE RD. #7B | WEINER, STEPHEN & DEBORAH L. |

**243 Records Found for District: 0219 FORT LEE Data as of 07/29/21**    **Page: 2**   [ Back ] [ Next ]

| | Block | Lot | Qual | Class | Location | Owner |
|---|---|---|---|---|---|---|
| More Info | 3352 | 4 | C007C | 2 | 200 OLD PALISADE RD. #7C | WERNIKOFF, WARREN |
| More Info | 3352 | 4 | C007D | 2 | 200 OLD PALISADE RD. #7D | POLLAK, MICHAEL |
| More Info | 3352 | 4 | C007E | 2 | 200 OLD PALISADE RD. #7E | KANG, PHILIP Y. & ERIN Y. |
| More Info | 3352 | 4 | C007F | 2 | 200 OLD PALISADE RD. #7F | KEDESHIAN, ROSE NAJARIAN |
| More Info | 3352 | 4 | C007G | 2 | 200 OLD PALISADE RD. #7G | BU, TAE HYUNG & IN OK |
| More Info | 3352 | 4 | C007H | 2 | 200 OLD PALISADE RD. #7H | PAE, STEVEN & DIANA |
| More Info | 3352 | 4 | C007J | 2 | 200 OLD PALISADE RD. #7J | YI, HAE S. & CHAE S. |
| More Info | 3352 | 4 | C008A | 2 | 200 OLD PALISADE RD. #8A | LEE, YON HO; LEE, YEON HEE |
| More Info | 3352 | 4 | C008B | 2 | 200 OLD PALISADE RD. #8B | CHUNG, TAE UN & JUNG HEE |
| More Info | 3352 | 4 | C008C | 2 | 200 OLD PALISADE RD. #8C | PELLER, MELVIN A.& ROBERT(TRUSTEES) |
| More Info | 3352 | 4 | C008D | 2 | 200 OLD PALISADE RD. #8D | HOU, YONG |
| More Info | 3352 | 4 | C008G | 2 | 200 OLD PALISADE RD. #8G | CHOI, KRISSY; CHOI, SUSAN |
| More Info | 3352 | 4 | C008H | 2 | 200 OLD PALISADE RD. #8H | CHUN, SEI H. & EUN HEE |
| More Info | 3352 | 4 | C008J | 2 | 200 OLD PALISADE RD. #8J | KIM, JAEJUNG |
| More Info | 3352 | 4 | C009A | 2 | 200 OLD PALISADE RD. #9A | PRICE, POLINA |
| More Info | 3352 | 4 | C009B | 2 | 200 OLD PALISADE RD. #9B | LIBERATO, MANUEL A. |
| More Info | 3352 | 4 | C009C | 2 | 200 OLD PALISADE RD. #9C | HABERFELD, GABRIEL |
| More Info | 3352 | 4 | C009D | 2 | 200 OLD PALISADE RD. #9D | FORT LEE OGN CONDO, LLC |
| More Info | 3352 | 4 | C009E | 2 | 200 OLD PALISADE RD. #9E | ROSENBERG, ESTA |
| More Info | 3352 | 4 | C009F | 2 | 200 OLD PALISADE RD. #9F | LANDAU, KAZUKO |
| More Info | 3352 | 4 | C009G | 2 | 200 OLD PALISADE RD. #9G | KRUGER, PAUL FRANCIS & JIN HI RHEEM |
| More Info | 3352 | 4 | C009H | 2 | 200 OLD PALISADE RD. #9H | KO, EUGENE & HYE RYUN |
| More Info | 3352 | 4 | C009J | 2 | 200 OLD PALISADE RD. #9J | CHOI, JOSEPH |
| More Info | 3352 | 4 | C010A | 2 | 200 OLD PALISADE RD. #10A | LEE, MI SUN |
| More Info | 3352 | 4 | C010B | 2 | 200 OLD PALISADE RD. #10B | CEREIJO, RAFAEL & SUSANA |
| More Info | 3352 | 4 | C010C | 2 | 200 OLD PALISADE RD. #10C | YANG, LIH SHENG & VIVIEN |
| More Info | 3352 | 4 | C010D | 2 | 200 OLD PALISADE RD. #10D | YANG, KI CHUL |
| More Info | 3352 | 4 | C010G | 2 | 200 OLD PALISADE RD. #10G | CHUNG, CHUNG TAIK & NAM SOOK |
| More Info | 3352 | 4 | C010H | 2 | 200 OLD PALISADE RD. #10H | LEE, HONG & CHOI, MIN YOUNG |
| More Info | 3352 | 4 | C010J | 2 | 200 OLD PALISADE RD. #10J | CHOU, PHILIP SHEN-YAO & REBECCA |
| More Info | 3352 | 4 | C011A | 2 | 200 OLD PALISADE RD. #11A | BARLOW, MINDY |
| More Info | 3352 | 4 | C011B | 2 | 200 OLD PALISADE RD. #11B | LOB, HELGA |
| More Info | 3352 | 4 | C011C | 2 | 200 OLD PALISADE RD. #11C | SONG, CHOONG HYUN |
| More Info | 3352 | 4 | C011D | 2 | 200 OLD PALISADE RD. #11D | KANG, PHILIP YONGGOO & ERIN YANGHEE |
| More Info | 3352 | 4 | C011E | 2 | 200 OLD PALISADE RD. #11E | BIRKENFELD, ARIE & LUCIA |

| More Info | 3352 | 4 | C011F | 2 | 200 OLD PALISADE RD. #11F | KIM, PAUL |
|---|---|---|---|---|---|---|
| More Info | 3352 | 4 | C011G | 2 | 200 OLD PALISADE RD. #11G | KATIRAIEFAR, AMIN AKRAM |
| More Info | 3352 | 4 | C011H | 2 | 200 OLD PALISADE RD. #11H | WIETING VILLEGAS,HEINI& MARMOLEJO,T |
| More Info | 3352 | 4 | C011J | 2 | 200 OLD PALISADE RD. #11J | KIM, DUK SOON & JAMES JONGMAN |
| More Info | 3352 | 4 | C012A | 2 | 200 OLD PALISADE RD. #12A | BERGER, YITZHAK & ELLEN |
| More Info | 3352 | 4 | C012B | 2 | 200 OLD PALISADE RD. #12B | BERGER, YITZHAK & ELLEN |
| More Info | 3352 | 4 | C012C | 2 | 200 OLD PALISADE RD. #12C | PAIK, SUNG JIN |
| More Info | 3352 | 4 | C012D | 2 | 200 OLD PALISADE RD. #12D | CHOO, YONG & MOON |
| More Info | 3352 | 4 | C012G | 2 | 200 OLD PALISADE RD. #12G | CHENG, MARVIN & SARAH |
| More Info | 3352 | 4 | C012H | 2 | 200 OLD PALISADE RD. #12H | DEUTSCH, EMERIC & EVA |
| More Info | 3352 | 4 | C012J | 2 | 200 OLD PALISADE RD. #12J | KIM, SHIN K.C.; KIM, WILLIAM Y.J. |
| More Info | 3352 | 4 | C014A | 2 | 200 OLD PALISADE RD. #14A | FALLA, LUIS ALFONSO & GLORIA |
| More Info | 3352 | 4 | C014B | 2 | 200 OLD PALISADE RD. #14B | RHO, STELLA HAN & ALOYSIUS |
| More Info | 3352 | 4 | C014C | 2 | 200 OLD PALISADE RD. #14C | KIM, DONALD TECK & JOON RYUNG |
| More Info | 3352 | 4 | C014D | 2 | 200 OLD PALISADE RD. #14D | BENECKE, SHERRI |

| | Block | Lot | Qual | Class | Location | Owner |
|---|---|---|---|---|---|---|
| More Info | 3352 | 4 | C007C | 2 | 200 OLD PALISADE RD. #7C | WERNIKOFF, WARREN |
| More Info | 3352 | 4 | C007D | 2 | 200 OLD PALISADE RD. #7D | POLLAK, MICHAEL |
| More Info | 3352 | 4 | C007E | 2 | 200 OLD PALISADE RD. #7E | KANG, PHILIP Y. & ERIN Y. |
| More Info | 3352 | 4 | C007F | 2 | 200 OLD PALISADE RD. #7F | KEDESHIAN, ROSE NAJARIAN |
| More Info | 3352 | 4 | C007G | 2 | 200 OLD PALISADE RD. #7G | BU, TAE HYUNG & IN OK |
| More Info | 3352 | 4 | C007H | 2 | 200 OLD PALISADE RD. #7H | PAE, STEVEN & DIANA |
| More Info | 3352 | 4 | C007J | 2 | 200 OLD PALISADE RD. #7J | YI, HAE S. & CHAE S. |
| More Info | 3352 | 4 | C008A | 2 | 200 OLD PALISADE RD. #8A | LEE, YON HO; LEE, YEON HEE |
| More Info | 3352 | 4 | C008B | 2 | 200 OLD PALISADE RD. #8B | CHUNG, TAE UN & JUNG HEE |
| More Info | 3352 | 4 | C008C | 2 | 200 OLD PALISADE RD. #8C | PELLER, MELVIN A.& ROBERT(TRUSTEES) |
| More Info | 3352 | 4 | C008D | 2 | 200 OLD PALISADE RD. #8D | HOU, YONG |
| More Info | 3352 | 4 | C008G | 2 | 200 OLD PALISADE RD. #8G | CHOI, KRISSY; CHOI, SUSAN |
| More Info | 3352 | 4 | C008H | 2 | 200 OLD PALISADE RD. #8H | CHUN, SEI H. & EUN HEE |
| More Info | 3352 | 4 | C008J | 2 | 200 OLD PALISADE RD. #8J | KIM, JAEJUNG |
| More Info | 3352 | 4 | C009A | 2 | 200 OLD PALISADE RD. #9A | PRICE, POLINA |
| More Info | 3352 | 4 | C009B | 2 | 200 OLD PALISADE RD. #9B | LIBERATO, MANUEL A. |
| More Info | 3352 | 4 | C009C | 2 | 200 OLD PALISADE RD. #9C | HABERFELD, GABRIEL |
| More Info | 3352 | 4 | C009D | 2 | 200 OLD PALISADE RD. #9D | FORT LEE OGN CONDO, LLC |
| More Info | 3352 | 4 | C009E | 2 | 200 OLD PALISADE RD. #9E | ROSENBERG, ESTA |
| More Info | 3352 | 4 | C009F | 2 | 200 OLD PALISADE RD. #9F | LANDAU, KAZUKO |
| More Info | 3352 | 4 | C009G | 2 | 200 OLD PALISADE RD. #9G | KRUGER, PAUL FRANCIS & JIN HI RHEEM |
| More Info | 3352 | 4 | C009H | 2 | 200 OLD PALISADE RD. #9H | KO, EUGENE & HYE RYUN |
| More Info | 3352 | 4 | C009J | 2 | 200 OLD PALISADE RD. #9J | CHOI, JOSEPH |
| More Info | 3352 | 4 | C010A | 2 | 200 OLD PALISADE RD. #10A | LEE, MI SUN |
| More Info | 3352 | 4 | C010B | 2 | 200 OLD PALISADE RD. #10B | CEREIJO, RAFAEL & SUSANA |
| More Info | 3352 | 4 | C010C | 2 | 200 OLD PALISADE RD. #10C | YANG, LIH SHENG & VIVIEN |
| More Info | 3352 | 4 | C010D | 2 | 200 OLD PALISADE RD. #10D | YANG, KI CHUL |
| More Info | 3352 | 4 | C010G | 2 | 200 OLD PALISADE RD. #10G | CHUNG, CHUNG TAIK & NAM SOOK |
| More Info | 3352 | 4 | C010H | 2 | 200 OLD PALISADE RD. #10H | LEE, HONG & CHOI, MIN YOUNG |
| More Info | 3352 | 4 | C010J | 2 | 200 OLD PALISADE RD. #10J | CHOU, PHILIP SHEN-YAO & REBECCA |
| More Info | 3352 | 4 | C011A | 2 | 200 OLD PALISADE RD. #11A | BARLOW, MINDY |
| More Info | 3352 | 4 | C011B | 2 | 200 OLD PALISADE RD. #11B | LOB, HELGA |
| More Info | 3352 | 4 | C011C | 2 | 200 OLD PALISADE RD. #11C | SONG, CHOONG HYUN |
| More Info | 3352 | 4 | C011D | 2 | 200 OLD PALISADE RD. #11D | KANG, PHILIP YONGGOO & ERIN YANGHEE |
| More Info | 3352 | 4 | C011E | 2 | 200 OLD PALISADE RD. #11E | BIRKENFELD, ARIE & LUCIA |

| | | | | | |
|---|---|---|---|---|---|
| More Info | 3352 | 4 | C011F | 2 | 200 OLD PALISADE RD. #11F | KIM, PAUL |
| More Info | 3352 | 4 | C011G | 2 | 200 OLD PALISADE RD. #11G | KATIRAIEFAR, AMIN AKRAM |
| More Info | 3352 | 4 | C011H | 2 | 200 OLD PALISADE RD. #11H | WIETING VILLEGAS,HEINI& MARMOLEJO,T |
| More Info | 3352 | 4 | C011J | 2 | 200 OLD PALISADE RD. #11J | KIM, DUK SOON & JAMES JONGMAN |
| More Info | 3352 | 4 | C012A | 2 | 200 OLD PALISADE RD. #12A | BERGER, YITZHAK & ELLEN |
| More Info | 3352 | 4 | C012B | 2 | 200 OLD PALISADE RD. #12B | BERGER, YITZHAK & ELLEN |
| More Info | 3352 | 4 | C012C | 2 | 200 OLD PALISADE RD. #12C | PAIK, SUNG JIN |
| More Info | 3352 | 4 | C012D | 2 | 200 OLD PALISADE RD. #12D | CHOO, YONG & MOON |
| More Info | 3352 | 4 | C012G | 2 | 200 OLD PALISADE RD. #12G | CHENG, MARVIN & SARAH |
| More Info | 3352 | 4 | C012H | 2 | 200 OLD PALISADE RD. #12H | DEUTSCH, EMERIC & EVA |
| More Info | 3352 | 4 | C012J | 2 | 200 OLD PALISADE RD. #12J | KIM, SHIN K.C.; KIM, WILLIAM Y.J. |
| More Info | 3352 | 4 | C014A | 2 | 200 OLD PALISADE RD. #14A | FALLA, LUIS ALFONSO & GLORIA |
| More Info | 3352 | 4 | C014B | 2 | 200 OLD PALISADE RD. #14B | RHO, STELLA HAN & ALOYSIUS |
| More Info | 3352 | 4 | C014C | 2 | 200 OLD PALISADE RD. #14C | KIM, DONALD TECK & JOON RYUNG |
| More Info | 3352 | 4 | C014D | 2 | 200 OLD PALISADE RD. #14D | BENECKE, SHERRI |

**243 Records Found for District: 0219 FORT LEE Data as of 07/29/21   Page: 3**   [ Back ] [ Next ]

| | Block | Lot | Qual | Class | Location | Owner |
|---|---|---|---|---|---|---|
| More Info | 3352 | 4 | C014E | 2 | 200 OLD PALISADE RD. #14E | KIM, KEUN SOO & KIM, JIYEON |
| More Info | 3352 | 4 | C014F | 2 | 200 OLD PALISADE RD. #14F | PHARAON, SUHAIL & NORA ALIRIFI |
| More Info | 3352 | 4 | C014G | 2 | 200 OLD PALISADE RD. #14G | MOH, PAUL |
| More Info | 3352 | 4 | C014H | 2 | 200 OLD PALISADE RD. #14H | CHEN, CHING HUI & MING YUEH |
| More Info | 3352 | 4 | C014J | 2 | 200 OLD PALISADE RD. #14J | ASHKINAZY, GARY |
| More Info | 3352 | 4 | C015A | 2 | 200 OLD PALISADE RD. #15A | GLICK, CORY |
| More Info | 3352 | 4 | C015B | 2 | 200 OLD PALISADE RD. #15B | LEE, JAMES |
| More Info | 3352 | 4 | C015C | 2 | 200 OLD PALISADE RD. #15C | OH, SOO KIL; OH, JI WON |
| More Info | 3352 | 4 | C015D | 2 | 200 OLD PALISADE RD. #15D | TCHELEBI, MOUNZER; MDPC |
| More Info | 3352 | 4 | C015G | 2 | 200 OLD PALISADE RD. #15G | GRAF, KATARINA & SOL (TRUSTEES) |
| More Info | 3352 | 4 | C015H | 2 | 200 OLD PALISADE RD. #15H | KIM, PAUL H. & CHUNG, JOON L. |
| More Info | 3352 | 4 | C015J | 2 | 200 OLD PALISADE RD. #15J | GUARDINO, VINCENT & MC CANN, ROBERT |
| More Info | 3352 | 4 | C016A | 2 | 200 OLD PALISADE RD. #16A | TONG, SUK HING HO; TONG, VIVIAN |
| More Info | 3352 | 4 | C016B | 2 | 200 OLD PALISADE RD. #16B | LEE, KANG HO & MYUNG HUI |
| More Info | 3352 | 4 | C016C | 2 | 200 OLD PALISADE RD. #16C | SONG, DONGJOON & JANET |
| More Info | 3352 | 4 | C016D | 2 | 200 OLD PALISADE RD. #16D | LEE, EUNIE |
| More Info | 3352 | 4 | C016E | 2 | 200 OLD PALISADE RD. #16E | VERMA, AKHIL & PURNIMA |
| More Info | 3352 | 4 | C016F | 2 | 200 OLD PALISADE RD. #16F | ADAMS, MARIAN A. |
| More Info | 3352 | 4 | C016G | 2 | 200 OLD PALISADE RD. #16G | MIN, BYUNG E. & CHUNG W. (TRUSTEES) |
| More Info | 3352 | 4 | C016H | 2 | 200 OLD PALISADE RD. #16H | CUTLER, MAURICE & RITA |
| More Info | 3352 | 4 | C016J | 2 | 200 OLD PALISADE RD. #16J | PARK, KYESOON |
| More Info | 3352 | 4 | C017A | 2 | 200 OLD PALISADE RD. #17A | CHA, ELAINE K. |
| More Info | 3352 | 4 | C017B | 2 | 200 OLD PALISADE RD. #17B | TINKER, VIRIS M. |
| More Info | 3352 | 4 | C017C | 2 | 200 OLD PALISADE RD. #17C | KIL, SHIN KYUNG & SOOK JA LEE |
| More Info | 3352 | 4 | C017D | 2 | 200 OLD PALISADE RD. #17D | VIMAXR, INC. |
| More Info | 3352 | 4 | C017G | 2 | 200 OLD PALISADE RD. #17G | JUN, JONG HWAN & ASHLEY YOUNSIL |
| More Info | 3352 | 4 | C017H | 2 | 200 OLD PALISADE RD. | BLOCH, AMPARO |

| | | | | #17H | |
|---|---|---|---|---|---|
| More Info | 3352 | 4 | C017J | 200 OLD PALISADE RD. #17J | YOON, MICHELLE JUNG |
| More Info | 3352 | 4 | C018A | 200 OLD PALISADE RD. #18A | SPEYER, IVA |
| More Info | 3352 | 4 | C018B | 200 OLD PALISADE RD. #18B | KORN, ELAINE |
| More Info | 3352 | 4 | C018C | 200 OLD PALISADE RD. #18C | CHOI, CHANG YOUNG |
| More Info | 3352 | 4 | C018D | 200 OLD PALISADE RD. #18D | BAYAZITOVA, SOLIDAT |
| More Info | 3352 | 4 | C018E | 200 OLD PALISADE RD. #18E | RAHAMAN, MUNTAZ & HUSSAIN, SUBUHEE |
| More Info | 3352 | 4 | C018F | 200 OLD PALISADE RD. #18F | CHUNG, MINA |
| More Info | 3352 | 4 | C018G | 200 OLD PALISADE RD. #18G | LEPKO, ERVIN E. & JUDITH |
| More Info | 3352 | 4 | C018H | 200 OLD PALISADE RD. #18H | MONSOUR, FRED J. & LISA RISKIN |
| More Info | 3352 | 4 | C018J | 200 OLD PALISADE RD. #18J | MAGANDA NAL, LLC |
| More Info | 3352 | 4 | C019A | 200 OLD PALISADE RD. #19A | KIM, CALVIN B.; KIM, SHINKYUNG |
| More Info | 3352 | 4 | C019B | 200 OLD PALISADE RD. #19B | KANG, MITCHELL |
| More Info | 3352 | 4 | C019C | 200 OLD PALISADE RD. #19C | HENDLISH FAMILY TRUST |
| More Info | 3352 | 4 | C019D | 200 OLD PALISADE RD. #19D | LEE, CHRISTINA H. & LEE, ELIZABETH |
| More Info | 3352 | 4 | C019G | 200 OLD PALISADE RD. #19G | GOPWANI,SAJU;BOVELL,KAVITA (TRSTES) |
| More Info | 3352 | 4 | C019H | 200 OLD PALISADE RD. #19H | CHANG, JAMES Y. |
| More Info | 3352 | 4 | C019J | 200 OLD PALISADE RD. #19J | LAU, KIT LEUNG & RUBY JULIANA |
| More Info | 3352 | 4 | C020A | 200 OLD PALISADE RD. #20A | HALPERN, SUSAN |
| More Info | 3352 | 4 | C020B | 200 OLD PALISADE RD. #20B | ARANG, NADER |
| More Info | 3352 | 4 | C020C | 200 OLD PALISADE RD. #20C | CHOI, CHARLES HYUN |
| More Info | 3352 | 4 | C020D | 200 OLD PALISADE RD. #20D | YOO, CHANG |
| More Info | 3352 | 4 | C020E | 200 OLD PALISADE RD. #20E | MOHL, ROBERT & TRUDI |
| More Info | 3352 | 4 | C020F | 200 OLD PALISADE RD. #20F | ANHALT FAMILY, LLC |

## 243 Records Found for District: 0219 FORT LEE Data as of 07/29/21 Page: 4 [ Back ] [ Next ]

| | Block | Lot | Qual | Class | Location | Owner |
|---|---|---|---|---|---|---|
| More Info | 3352 | 4 | C020G | 2 | 200 OLD PALISADE RD. #20G | WEISSMAN, MYRNA S. TRUSTEE |
| More Info | 3352 | 4 | C020H | 2 | 200 OLD PALISADE RD. #20H | KWON, JOHN S. |
| More Info | 3352 | 4 | C020J | 2 | 200 OLD PALISADE RD. #20J | SAKER, MOHANAD AHMAD |
| More Info | 3352 | 4 | C021A | 2 | 200 OLD PALISADE RD. #21A | DOMINGUEZ, NEIDO & LOUISE |
| More Info | 3352 | 4 | C021B | 2 | 200 OLD PALISADE RD. #21B | CHOE, JAE-HAK & JANE YOUNG |
| More Info | 3352 | 4 | C021C | 2 | 200 OLD PALISADE RD. #21C | CHOE, JAE-HAK & JANE YOUNG |
| More Info | 3352 | 4 | C021D | 2 | 200 OLD PALISADE RD. #21D | KIM, HYUN TAE; LEE, NA KYUNG |
| More Info | 3352 | 4 | C021G | 2 | 200 OLD PALISADE RD. #21G | OLD RIVER, INC. |
| More Info | 3352 | 4 | C021H | 2 | 200 OLD PALISADE RD. #21H | ABE, SHEILA |
| More Info | 3352 | 4 | C021J | 2 | 200 OLD PALISADE RD. #21J | ANA MARIA FALLA LIVING TRUST |
| More Info | 3352 | 4 | C022A | 2 | 200 OLD PALISADE RD. #22A | LEONG FAMILY INVESTMENTS, LLC |
| More Info | 3352 | 4 | C022B | 2 | 200 OLD PALISADE RD. #22B | KHALOYAN, PARVIZ & SHIVA |
| More Info | 3352 | 4 | C022C | 2 | 200 OLD PALISADE RD. #22C | JOO, GEE YOUNG |
| More Info | 3352 | 4 | C022D | 2 | 200 OLD PALISADE RD. #22D | KIM, CAROLINE |
| More Info | 3352 | 4 | C022E | 2 | 200 OLD PALISADE RD. #22E | LEON, JORGE ALFREDO |
| More Info | 3352 | 4 | C022F | 2 | 200 OLD PALISADE RD. #22F | KIM, WILLIAM Y. & LINDA H. |
| More Info | 3352 | 4 | C022G | 2 | 200 OLD PALISADE RD. #22G | PERALTA, ANDREA C. |
| More Info | 3352 | 4 | C022H | 2 | 200 OLD PALISADE RD. #22H | MENDELSOHN, DAVID |
| More Info | 3352 | 4 | C022J | 2 | 200 OLD PALISADE RD. #22J | CHUNG, HEE MOON |
| More Info | 3352 | 4 | C023A | 2 | 200 OLD PALISADE RD. #23A | GREEN, CAROL; GREEN, DALE |
| More Info | 3352 | 4 | C023B | 2 | 200 OLD PALISADE RD. #23B | RO CONSULTING AND DESIGN, LLC |
| More Info | 3352 | 4 | C023C | 2 | 200 OLD PALISADE RD. #23C | RO CONSULTING AND DESIGN, LLC |
| More Info | 3352 | 4 | C023D | 2 | 200 OLD PALISADE RD. #23D | FFM REALTY, LLC |
| More Info | 3352 | 4 | C023G | 2 | 200 OLD PALISADE RD. #23G | 23G OLD PALISADE ROAD, LLC |
| More Info | 3352 | 4 | C023H | 2 | 200 OLD PALISADE RD. #23H | TSOULLIS, ATHENA |
| More Info | 3352 | 4 | C023J | 2 | 200 OLD PALISADE RD. #23J | JUN, MIN-SHIN |
| More Info | 3352 | 4 | C024A | 2 | 200 OLD PALISADE RD. #24A | OGUZ, SENGUL |
| More Info | 3352 | 4 | C024B | 2 | 200 OLD PALISADE RD. #24B | OGUZ, SENGUL |
| More Info | 3352 | 4 | C024C | 2 | 200 OLD PALISADE RD. #24C | OGUZ, SENGUL |
| More Info | 3352 | 4 | C024D | 2 | 200 OLD PALISADE RD. #24D | MOUNZER TCHELEBI, MD PC DBP |
| More Info | 3352 | 4 | C024E | 2 | 200 OLD PALISADE RD. #24E | PARSIFUS IV, LLC |
| More Info | 3352 | 4 | C024F | 2 | 200 OLD PALISADE RD. #24F | NG, JAMES CHIU-MAN & LEE, YEE MAN |
| More Info | 3352 | 4 | C024G | 2 | 200 OLD PALISADE RD. #24G | FRANCISCO, JEFFREY & TEJADA,JOHANNY |
| More Info | 3352 | 4 | C024H | 2 | 200 OLD PALISADE RD. #24H | CHUNG, MINA |
| More Info | 3352 | 4 | C024J | 2 | 200 OLD PALISADE RD. #24J | KIM, MYUNG JA |
| More Info | 3352 | 4 | C025A | 2 | 200 OLD PALISADE RD. #25A | LEONG FAMILY INVESTMENTS, LLC |
| More Info | 3352 | 4 | C025B | 2 | 200 OLD PALISADE RD. #25B | 200 OLD PALISADES 25B, LLC |
| More Info | 3352 | 4 | C025C | 2 | 200 OLD PALISADE RD. #25C | HSU, HANS M. |
| More Info | 3352 | 4 | C025D | 2 | 200 OLD PALISADE RD. #25D | YOU, HEE SUK |

| More Info | 3352 | 4 | C025G | 2 | 200 OLD PALISADE RD. #25G | SETRAKIAN, VERA; BALOUZIAN, SANDRA |
|---|---|---|---|---|---|---|
| More Info | 3352 | 4 | C025H | 2 | 200 OLD PALISADE RD. #25H | BIRIA, FERESHTEH KATIRAIEFAR |
| More Info | 3352 | 4 | C025J | 2 | 200 OLD PALISADE RD. #25J | KORMENDI, LINDA SUNHEE |
| More Info | 3352 | 4 | C026A | 2 | 200 OLD PALISADE RD. #26A | KIM, BERNARD & SOO JA BUM |
| More Info | 3352 | 4 | C026B | 2 | 200 OLD PALISADE RD. #26B | RUBIO, REINALDO & ENCARNACION |
| More Info | 3352 | 4 | C026C | 2 | 200 OLD PALISADE RD. #26C | PRINCIPE, FRANK J. |
| More Info | 3352 | 4 | C026D | 2 | 200 OLD PALISADE RD. #26D | WAN, LI |
| More Info | 3352 | 4 | C026E | 2 | 200 OLD PALISADE RD. #26E | MILGROM, SHARON |
| More Info | 3352 | 4 | C026F | 2 | 200 OLD PALISADE RD. #26F | WU, KAREN |
| More Info | 3352 | 4 | C026G | 2 | 200 OLD PALISADE RD. #26G | LEE, DAVID |
| More Info | 3352 | 4 | C026H | 2 | 200 OLD PALISADE RD. #26H | KWON, JOONG GAB |

**243 Records Found for District: 0219 FORT LEE Data as of 07/29/21   Page: 5**   | Back |

| | Block | Lot | Qual | Class | Location | Owner |
|---|---|---|---|---|---|---|
| More Info | 3352 | 4 | C026J | 2 | 200 OLD PALISADE RD. #26J | WOO, JENNY L. |
| More Info | 3352 | 4 | C027A | 2 | 200 OLD PALISADE RD. #27A | SHIN FAMILY TRUST |
| More Info | 3352 | 4 | C027B | 2 | 200 OLD PALISADE RD. #27B | LEE, JOHN JONG & DIANA YOUNG |
| More Info | 3352 | 4 | C027C | 2 | 200 OLD PALISADE RD. #27C | LEE, JOHN JONG & DIANA YOUNG |
| More Info | 3352 | 4 | C027D | 2 | 200 OLD PALISADE RD. #27D | LEE, JOHN JONG & DIANA YOUNG |
| More Info | 3352 | 4 | C027G | 2 | 200 OLD PALISADE RD. #27G | AKIMOTO, HIROSHI |
| More Info | 3352 | 4 | C027H | 2 | 200 OLD PALISADE RD. #27H | CHAN, ELLIOT & CHANG, TITIA |
| More Info | 3352 | 4 | C027J | 2 | 200 OLD PALISADE RD. #27J | BLEIWEISS, PAUL & EVELYN |
| More Info | 3352 | 4 | C028A | 2 | 200 OLD PALISADE RD. #28A | ARIA HOLDINGS, LLC |
| More Info | 3352 | 4 | C028B | 2 | 200 OLD PALISADE RD. #28B | LAM, DENNIS H. & YEEMAN W. |
| More Info | 3352 | 4 | C028C | 2 | 200 OLD PALISADE RD. #28C | LAM, DENNIS H. & YEEMAN W. |
| More Info | 3352 | 4 | C028D | 2 | 200 OLD PALISADE RD. #28D | BAIMAKHAN, ASSEL |
| More Info | 3352 | 4 | C028E | 2 | 200 OLD PALISADE RD. #28E | TCHELEBI, MOUNZER |
| More Info | 3352 | 4 | C028F | 2 | 200 OLD PALISADE RD. #28F | SHIN, CHEOLSU |
| More Info | 3352 | 4 | C028G | 2 | 200 OLD PALISADE RD. #28G | MOON, MICHIE |
| More Info | 3352 | 4 | C028H | 2 | 200 OLD PALISADE RD. #28H | ZIMMER, EVLYNNE |
| More Info | 3352 | 4 | C028J | 2 | 200 OLD PALISADE RD. #28J | DACK HOLDINGS, LLC |
| More Info | 3352 | 4 | C029A | 2 | 200 OLD PALISADE RD. #29A | HYMAN, BINYAMIN & KRANTZOW, ARIELE |
| More Info | 3352 | 4 | C029B | 2 | 200 OLD PALISADE RD. #29B | HYMAN,BINYAMIN S. & KRANTZOW,ARIELE |
| More Info | 3352 | 4 | C029C | 2 | 200 OLD PALISADE RD. #29C | ANDRIOLLO, PAOLO & SIEW PHING |
| More Info | 3352 | 4 | C029D | 2 | 200 OLD PALISADE RD. #29D | ANDRIOLLO, PAOLO & SIEW PHING |
| More Info | 3352 | 4 | C029G | 2 | 200 OLD PALISADE RD. #29G | WILDER, JEFFREY S. & RITA |
| More Info | 3352 | 4 | C029H | 2 | 200 OLD PALISADE RD. #29H | WILDER, JEFFREY S. & RITA |
| More Info | 3352 | 4 | C029J | 2 | 200 OLD PALISADE RD. #29J | CALDERON, MILLIE |
| More Info | 3352 | 4 | C030A | 2 | 200 OLD PALISADE RD. #30A | LEE, JUN HEE |
| More Info | 3352 | 4 | C030B | 2 | 200 OLD PALISADE RD. #30B | PARK, JIE H. & YOUNG RAE AHN |
| More Info | 3352 | 4 | C030C | 2 | 200 OLD PALISADE RD. #30C | PARK, JIE H. & YOUNG RAE AHN |

| | | | | | |
|---|---|---|---|---|---|
| More Info | 3352 | 4 | C030D | 2 | 200 OLD PALISADE RD. #30D | SONG, KUNCHANG |
| More Info | 3352 | 4 | C030G | 2 | 200 OLD PALISADE RD. #30G | AHN, CHANG W. & BYUNG G. |
| More Info | 3352 | 4 | C030H | 2 | 200 OLD PALISADE RD. #30H | CHIN, MYUNG HEE |
| More Info | 3352 | 4 | C030J | 2 | 200 OLD PALISADE RD. #30J | BIRIA, SHAHRIAR |
| More Info | 3352 | 4 | C0PH1 | 2 | 200 OLD PALISADE RD. #PH1 | COHEN, AMIR & JOAN |
| More Info | 3352 | 4 | C0PH2 | 2 | 200 OLD PALISADE RD. #PH2 | KIM, HAE KYUNG |
| More Info | 3352 | 4 | C0PH3 | 2 | 200 OLD PALISADE RD. #PH3 | DE MATTIA, MICHAEL & SORAYA |
| More Info | 3352 | 4 | C0PH4 | 2 | 200 OLD PALISADE RD. #PH4 | NAGARAJA, THOTA & LAKSHMI(TRUSTEES) |
| More Info | 3352 | 4 | C0PH5 | 2 | 200 OLD PALISADE RD. #PH5 | NAGARAJA, THOTA & LAKSHMI(TRUSTEES) |
| More Info | 3352 | 4 | C0PH6 | 2 | 200 OLD PALISADE RD. #PH6 | TOBACK, MICHAEL J. & KAREN C. |
| More Info | 3352 | 4 | C0TH1 | 2 | 200 OLD PALISADE RD. #TH1 | CHI, NUNGJA |
| More Info | 3352 | 4 | C0TH2 | 2 | 200 OLD PALISADE RD. #TH2 | KIM, DANAH |
| More Info | 3352 | 4 | C0TH3 | 2 | 200 OLD PALISADE RD. #TH3 | KARSIAN, RICHARD & ANDREA |
| More Info | 3352 | 4 | C0TH4 | 2 | 200 OLD PALISADE RD. #TH4 | SHALEM FAMILY 2020, LLC |
| More Info | 3352 | 4 | C0TH5 | 2 | 200 OLD PALISADE RD. #TH5 | FAHMY, AHMED & JILL |
| More Info | 3352 | 4 | C0TH6 | 2 | 200 OLD PALISADE RD. #TH6 | BEREZIN, DAVID & ETTI OZIR |

Exhibit C

# River Ridge

Unparalleled views, and the richest life of all!



ROLLOVER BUTTONS
FOR MORE INFO

LOCATION     DESCRIPTION     OVERVIEW     SERVICES & AMENITIES     FLOOR PLANS

31 story hi-rise condominium atop the Palisades Cliff overlooking the Hudson River. Built in 1984, # Units-243. Unit mix; 1,2 & 3 Bedroom simplex floorplans. 2 & 3 Bedroom duplexes. Limited number of townhomes & penthouses.

# THE CHEN AGENCY



REALTORS

1392 Palisade Avenue, Fort Lee, NJ 07024 | Phone: 201-346-8888 | Fax: 201-346-0881 | info@chenagency.com

HOME | SPOTLIGHT | SEARCH | CONDOS/CO-OPS | COMMUNITIES | ABOUT | RESOURCES | BLOG | CONTACT | AGENT EMAIL

Copyright © 2021 The Chen Agency Realtors

Exhibit D

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| RACHEL WEINGEIST, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED WHO WERE EMPLOYED BY TROPIX MEDIA & ENTERTAINMENT AND TROPIX HOLDINGS LLC AND TROPIX INC., <br><br> PLAINTIFF, <br><br> -AGAINST- <br><br> TROPIX MEDIA & ENTERTAINMENT, TROPIX HOLDINGS LLC, TROPIX INC., MARIO BAEZA, TAYMI CESPEDES, JAVIER RODRIGUEZ, AND TANIA MILAN, <br><br> DEFENDANTS. | CIVIL ACTION NO.: 1:20-CV-00275-ER-SLC <br><br><br> **ANSWER WITH AFFIRMATIVE DEFENSES AND COUNTERCLAIM/THIRD PARTY COMPLAINT** |

Defendants, Tropix Media & Entertainment, Tropix Holdings LLC, Tropix Inc. (hereinafter, "Tropix") and Mario Baeza (hereinafter, "Baeza"), by their attorneys, The Law Offices of Geoffrey D. Mueller, LLC hereby answers the Complaint of Rachel Weingeist as follows:

1.  The allegations set forth in Paragraph 1 of the Complaint call for legal conclusions and therefore no response is required.

2.  The Defendants are without facts sufficient to admit or deny the allegations set forth in Paragraph 2 of the Complaint and leaves Plaintiff to her proofs.

3.  The Defendants are without facts sufficient to admit or deny the allegations set forth in Paragraph 3 of the Complaint and leave Plaintiff to her proofs.

4.  The Defendants deny the allegations set forth in Paragraph 4 of the Complaint.

**PARTIES**

5.      The Defendants are without facts sufficient to admit or deny the allegations pertaining to the Plaintiff's address set forth in Paragraph 5 of the Complaint, but admit the remaining allegations set forth therein.

6.      The Defendants deny the allegations set forth in Paragraph 6 of the Complaint as written but admit to maintaining office space in New York, New York from March 2019 through December 2019.

7.      The Defendants admit the allegations set forth in Paragraph 7 of the Complaint as to the role of each Defendant but deny the remaining allegations set forth therein.

8.      The Defendants deny the allegations set forth in Paragraph 8 of the Complaint.

9.      The Defendants admit the allegations set forth in Paragraph 9 of the Complaint.

10.      The Defendants admits that they are officers, managers and directors of the Corporate Defendants but deny the remaining allegations set forth in Paragraph 10 of the Complaint.

11.      The Defendants deny the allegations of Paragraph 11 of the Complaint and leave Plaintiff to her proofs.

**JURISDICTION AND VENUE**

12.       The Defendants deny the allegations of Paragraph 12 of the Complaint.

13.      The Defendants deny the allegations of Paragraph 13 of the Complaint.

14.      The Defendants deny the allegations of Paragraph 14 of the Complaint.

15.      The allegations set forth in Paragraph 15 of the Complaint call for legal conclusions and therefore no response is required.

16.     The allegations set forth in Paragraph 16 of the Complaint call for legal conclusions and therefore no response is required.

17.     The Defendants deny the allegations of Paragraph 17 of the Complaint.

## JURY DEMAND

18.     The allegations of Paragraph 18 of the Complaint are not against Defendants therefore no response is required.

## FACTUAL BACKGROUND

19.     Defendants admit the allegations set forth in Paragraph 19 of the Complaint.

20.     Defendants deny the allegations as written in Paragraph 20 of the Complaint; Plaintiff was hired as Chief Development Officer.

21.     The allegations set forth in Paragraph 21 of the Complaint call for legal conclusions and therefore no response is required.

22.     Defendants deny the allegations as written in Paragraph 22 of the Complaint.

23.     Defendants deny the allegations as written in Paragraph 23 of the Complaint.

24.     Defendants deny the allegations as written in Paragraph 24 of the Complaint.

25.     Defendants deny the allegations set forth in Paragraph 25 of the Complaint.

26.     Defendants deny the allegations set forth in Paragraph 26 of the Complaint.

27.     Defendants deny the allegations set forth in Paragraph 27 of the Complaint.

28.     Defendants deny the allegations set forth in Paragraph 28 of the Complaint.

29.     Defendants deny the allegations set forth in Paragraph 29 of the Complaint.

30.     Defendants deny the allegations set forth in Paragraph 30 of the Complaint.

31.     Defendants deny the allegations set forth in Paragraph 31 of the Complaint.

32.     Defendants deny the allegations set forth in Paragraph 32 of the Complaint.

33.     Defendants deny the allegations set forth in Paragraph 33 of the Complaint.

## DEFENDANTS' CONDUCT WAS AND IS WILLFUL AND ONGOING

34.     Defendants deny the allegations set forth in Paragraph 34 of the Complaint.

35.     Defendants deny the allegations set forth in Paragraph 35 of the Complaint.

36.     Defendants deny the allegations set forth in Paragraph 36 of the Complaint.

37.     Defendants deny the allegations set forth in Paragraph 37 of the Complaint.

38.     Defendants deny the allegations set forth in Paragraph 38 of the Complaint.

## FACTS RELATING TO THE DEFENDANTS AS AN EMPLOYER

39.     Defendants deny the allegations set forth in Paragraph 39 of the Complaint.

40.     Defendants deny the allegations set forth in Paragraph 40 of the Complaint.

41.     Defendants deny the allegations set forth in Paragraph 41 of the Complaint.

42.     Defendants deny the allegations set forth in Paragraph 42 of the Complaint.

43.     Defendants deny the allegations set forth in Paragraph 43 of the Complaint.

44.     Defendants deny the allegations set forth in Paragraph 44 of the Complaint.

45.     Defendants deny the allegations set forth in Paragraph 45 of the Complaint.

## FACTS RELATING TO PIERCING OF THE CORPORATE
## VEIL OF TROPIX MEDIA & ENTERATAINMENT
## AND TROPIX HOLDINGS LLC AND TROPIX INC.

46.     Defendants deny the allegations set forth in Paragraph 46 of the Complaint.

47.     Defendants deny the allegations set forth in Paragraph 47 of the Complaint.

48.     Defendants deny the allegations set forth in Paragraph 48 of the Complaint.

49.     Defendants deny the allegations set forth in Paragraph 49 of the Complaint.

50.     Defendants deny the allegations set forth in Paragraph 50 of the Complaint.

## COLLECTIVE ACTION ALLEGATIONS

51.     There are no allegations for Defendants to admit or deny in Paragraph 51 of the Complaint.

52.     There are no allegations for Defendants to admit or deny in Paragraph 52 of the Complaint.

53.     The allegations set forth in Paragraph 53 of the Complaint call for legal conclusions and therefore no response is required.

54.     Defendants deny the allegations set forth in Paragraph 54 of the Complaint.

55.     The allegations set forth in Paragraph 55 of the Complaint call for legal conclusions and therefore no response is required.

## FIRST CLAIM FOR RELIEF
### (BREACH OF CONTRACT)

56.     There are no allegations for Defendants to admit or deny in Paragraph 56 of the Complaint.

57.     Defendants deny the allegations set forth in Paragraph 57 of the Complaint.

58.     Defendants deny the allegations set forth in Paragraph 58 of the Complaint.

59.     Defendants deny the allegations set forth in Paragraph 59 of the Complaint.

60.     Defendants deny the allegations set forth in Paragraph 60 of the Complaint.

61.     Defendants deny the allegations set forth in Paragraph 61 of the Complaint.

62.     Defendants deny the allegations set forth in Paragraph 62 of the Complaint.

## SECOND CLAIM FOR RELIEF
### (UNPAID WAGES AND OVERTIME
### NEW YORK MINIMUM WAGE ACT NYLL ¶ 650 et. seq.)

63.     There are no allegations for Defendants to admit or deny in Paragraph 63 of the Complaint.

64. Defendants deny the allegations set forth in Paragraph 64 of the Complaint.

65. Defendants deny the allegations set forth in Paragraph 65 of the Complaint.

66. Defendants deny the allegations set forth in Paragraph 66 of the Complaint.

67. Defendants deny the allegations set forth in Paragraph 67 of the Complaint.

68. Defendants deny the allegations set forth in Paragraph 68 of the Complaint.

69. Defendants deny the allegations set forth in Paragraph 69 of the Complaint.

70. Defendants deny the allegations set forth in Paragraph 70 of the Complaint.

71. Defendants deny the allegations set forth in Paragraph 71 of the Complaint.

72. There are no allegations for Defendants to admit or deny in Paragraph 72 of the Complaint.

## THIRD CLAIM FOR RELIEF
### (UNPAID WAGES AND OVERTIME
### FAIR LABOR STANDARDS ACT – 29 U.S.C. 201 et seq.)

73. There are no allegations for Defendants to admit or deny in Paragraph 73 of the Complaint.

74. Defendants deny the allegations set forth in Paragraph 74 of the Complaint.

75. Defendants deny the allegations set forth in Paragraph 75 of the Complaint.

76. Defendants deny the allegations set forth in Paragraph 76 of the Complaint.

77. Defendants deny the allegations set forth in Paragraph 77 of the Complaint.

78. Defendants deny the allegations set forth in Paragraph 78 of the Complaint.

79. Defendants deny the allegations set forth in Paragraph 79 of the Complaint.

80. Defendants deny the allegations set forth in Paragraph 80 of the Complaint.

81. Defendants deny the allegations set forth in Paragraph 81 of the Complaint.

82. Defendants deny the allegations set forth in Paragraph 82 of the Complaint.

83.     Defendants deny the allegations set forth in Paragraph 83 of the Complaint.

84.     Defendants deny the allegations set forth in Paragraph 84 of the Complaint.

85.     Defendants deny the allegations set forth in Paragraph 85 of the Complaint.

86.     Defendants deny the allegations set forth in Paragraph 86 of the Complaint.

87.     Defendants deny the allegations set forth in Paragraph 87 of the Complaint.

88.     There are no allegations for Defendants to admit or deny in Paragraph 88 of the Complaint.

## FOURTH CLAIM FOR RELIEF
### (QUANTUM MERIT)

89.     There are no allegations for Defendants to admit or deny in Paragraph 89 of the Complaint.

90.     Defendants deny the allegations set forth in Paragraph 90 of the Complaint.

91.     Defendants deny the allegations set forth in Paragraph 91 of the Complaint.

92.     Defendants deny the allegations set forth in Paragraph 92 of the Complaint.

93.     Defendants deny the allegations set forth in Paragraph 93 of the Complaint.

94.     There are no allegations for Defendants to admit or deny in Paragraph 94 of the Complaint.

## FIFTH CLAIM FOR RELIEF
### (DECLARATORY JUDGMENT)

95.     There are no allegations for Defendants to admit or deny in Paragraph 95 of the Complaint.

96.     Defendants deny the allegations set forth in Paragraph 96 of the Complaint.

## PRAYER FOR RELIEF

Defendant denies that the Plaintiff is entitled to any prayer for relief from Defendants as stated in Plaintiff's Complaint.

## AFFIRMATIVE DEFENSES

Defendants allege the following separate affirmative defenses to the individual claims asserted against Defendants without assuming the burden of proof, where such burden is otherwise on the Plaintiff under applicable procedural law.

1.      The Defendants were not properly served and this Court lacks personal jurisdiction over the answering Defendants.

2.      This Court is the improper venue for this case.

3.      Plaintiff's claims are barred by reason of Plaintiff's breach of the parties' agreement.

4.      The Complaint fails to state a cause of action upon which relief can be granted against Defendants.

5.      Defendants are not responsible for any sums allegedly due to Plaintiff.

6.      At all relevant times, Defendants acted reasonably, fairly, justly, and in good faith with regard to Plaintiff and with reasonable grounds for believing they have not violated New York or Federal Law.

7.      The doctrines of waiver, latches, estoppel, ratification, acquiescence and unclean hands bars Plaintiff's claims and Plaintiff from recovery.

8.      At all relevant times, Defendants complied with all applicable laws, regulations and standards.

9.     If Plaintiff suffered injury or damage, it was the direct, proximate and sole result of Plaintiff's own intentional acts or actions over which Defendants had no control and for which Defendants are neither responsible nor liable.

10.     Plaintiff was adequately compensated in accordance with state and federal labor law requirements.

11.     Plaintiff's claims are barred, or limited, by the applicable Statute of Limitations.

12.     Defendants reserve the right to add additional affirmative defenses should they become aware of such during the course of discovery.

**WHEREFORE**, having fully answered the Complaint, Defendants pray for relief as follows:

1. The Complaint and each cause of action asserts against Defendants be dismissed with prejudice;

2. That the Plaintiff and the putative class take nothing by way of the Complaint;

3. That Defendants be awarded their reasonable cost and attorney's fees in defending this matter; and

4. That the Court order such other and further relief for Defendants as this Court deems just and proper.

## <u>COUNTERCLAIM/THIRD PARTY COMPLAINT</u>

Tropix Holdings LLC, Tropix Inc. d/b/a Tropix Media & Entertainment, and Mario Baeza (collectively referred to as "Counterclaim/Third Party Plaintiffs") by way of counterclaim/third party complaint against Rachel Weingeist, Perera & Company LLC and Pickled Punk Sublease LLC (collectively referred to as "Counterclaim Defendants/Third Party Defendants") state as follows:

**Parties**

1.      Tropix Inc d/b/a Tropix Media & Entertainment ("Tropix Media") is incorporated in Madrid, Spain and maintains its principal place of business located at Calle Avenida del Mediterraneo No. 3, piso primero, 03725 Teulada, Alicante, Spain.

2.      Tropix Holdings LLC ("Tropix Holdings") is a Delaware corporation and can be served c/o Incorp. Services, Inc. 919 North Market Street, Suite 950, Wilmington, Delaware 19801.

3.      Mario Baeza (hereinafter, "Baeza") who is the: (i) chief executive officer of Tropix Holdings and (ii) Tropix and (ii) Agent acting under a Power of Attorney dated April 10, 2017 for Tropix Media maintains a residence at 200 Old Palisade Road, Fort Lee, New Jersey 07024.

4.      Rachel Weingeist (hereinafter, "Weingeist") is a citizen of New York with an address of 56 Beaver Street, Apt. 402, New York, New York 10004.

5.      Perera & Company LLC (hereinafter, "Perera") is a Delaware limited liability company authorized to conduct business in the state of New York and maintains its principal place of business located at 199 Second Avenue, New York, New York 10003.

6.      Pickled Punk Sublease LLC is a Delaware limited liability company authorized to conduct business in the state of New York and maintains its principal place of business located at 12-14 Desbrosses Street, New York, New York 10013.

**Basis for Jurisdiction and Venue**

7.      The Court has subject matter jurisdiction over this proceeding pursuant 28 U.S.C. § 1367 as the claims raised in this Counterclaim/Third Party Complaint are supplemental and related to the federal question raised in Plaintiff's initial complaint.  Further, this dispute is between

citizens of different states as certain Counterclaim Plaintiffs are residents of Delaware and New Jersey and Counterclaim Defendants/Third Party Defendants are citizens of New York.

8.　　The Court has personal jurisdiction over the Individual Counterclaim Defendants/Third Party Defendants in that they are residents of New York and conduct their activities in New York State and within this district.

9.　　Venue is proper in this Court pursuant to 28 U.S.C. § 1391 for the same reasons that jurisdiction is proper in this Court.

### Background

10.　　On or about March 2019, Weingeist was hired in a senior role as Tropix Media's chief development officer.

11.　　Weingeist was hired to open New York offices and immediately begin work to establish a foundation whose primary focus was to raise money to finance the preservation of the audiovisual archives of Cuba's radio and television programming (the "Tropix Foundation").

12.　　Although an employment agreement was negotiated between Tropix Media and Weingeist, which included a monthly salary in the amount of $12,500.00, it was never executed.

13.　　Weingeist had requested that the accounting department convert the employment agreement into a consulting agreement with her personal corporation, Perera.

14.　　On or about March 29, 2019, Weingeist was paid the agreed upon monthly salary in the arrears so that she would begin to work on getting the Tropix Foundation up and running.

15.　　As part of Weingeist's responsibilities she was entrusted with the task of procuring offices for the Tropix Foundation in New York, New York.

16.     Weingeist entered an agreement on behalf of Tropix Foundation with a long-time friend of hers, to sublease a one room office located in Union Square area of Manhattan (the "Union Square Office").

17.     Tropix executed a six-month lease agreement for the Union Square Office with Pickled Punk Sublease LLC (the "Sublease").

18.     The terms of the Sublease included the right for Tropix Media to directly renew the lease for the Union Square Office at the end of the six-month period with Outer Space LLC, the landlord of the premises.

19.     It soon became obvious that Weingeist oversold her contacts and ability to launch the Tropix Foundation.

20.     Throughout her tenure at Tropix Media she treated other members of the management team in both the United States and Cuba in a condescending manner.

21.     On or about July 30, 2019, Baeza sent an email to Weingeist expressing concerns as to Weingeist performance at Tropix Media in failing to get the Tropix Foundation up and running.  Annexed hereto as **Exhibit A** is a true and accurate copy of the email dated July 30, 2019.

22.     The July 30, 2019 email further discussed Weingeist inappropriate treatment of other management team members at Tropix Media.

23.     On or about September 25, 2019, Baeza sent an email to Weingeist again expressing disappoint with Weingeist performance at Tropix Media and lack of progression in establishing the Tropix Foundation.  Annexed hereto as **Exhibit B** is a true and accurate copy of the email dated September 25, 2019.

24.     Upon the expiration of the term of the Sublease, Tropix Media stayed on at the Union Square Office on a month-to-month basis.

25.     On or about November 2019, the sublessor began to pressure Tropix Media to pay a security deposit for the Union Square Office. With no valid lease in place, Tropix Media sent an email requesting a copy the draft lease agreement between the parties, prior to authorizing the payment of any security deposit.  Annexed hereto as **Exhibit C** is a true and accurate copy of the email correspondence.

26.     By the end of November 2019, after hiring two additional highly experienced consultants to assist in Weingeist in filing the relatively modest paperwork required to establish the Tropix Foundation, it became abundantly clear that the continued employment of Weingeist was not in the best interest of the Tropix Foundation.

27.     On or about November 29, 2019, Beaza sent an email to Weingeist informing her that he was making a recommendation to the management committee to terminate her employment with Tropix Media disclosing some of the vast reasons for this termination.  Annexed hereto as **Exhibit D** is a true and accurate copy of the email correspondence.

28.     On or about December 3, 2019 at the recommendation of Beaza, the management committee voted unanimously to terminate Weingeist employment with Tropix Media for all the reasons sent forth in the November 29, 2019 email.  Id.

29.     On or about December 3, 2019 a notice was sent to Pickled Punk Sublease LLC informing them that Tropix Media was giving a thirty-day notice on its month-to-month lease for the Union Square Office.  The notice further stated that payment would be made for rent due in December and that the premises would be vacated by the end of the month.  Annexed hereto as **Exhibit E** is a true and accurate copy of the termination notice.

30.     Pickled Punk Sublease LLC contacted Tropix Media to say that Weingeist had entered into a verbal agreement with them to rent the Union Square Office for an additional two-year period.

31.     Based upon this representation from Weingeist, Pickled Punk Sublease LLC went ahead and entered into an additional two-year lease with the building owner, Outer Space LLC.

32.     Pickled Punk Sublease LLC was informed by Taymi Cespedes on behalf of Tropix Media that Weingeist was not authorized to make sure oral representation and that Tropix Media was not bound by such statements. Id.

33.     Weingeist throughout her employment refused to give a set of keys for the Union Square Office to Beaza despite numerous requests.

34.     Even after termination, Weingeist still refused to grant access to the Union Square Office for the Tropix Media management team to remove the furniture, televisions and computer equipment purchased by Tropix Media for the Union Square Office totaling an estimated $17,000.00 (the "Tropix Assets").

35.     On December 10, 2019, Laura Ruiz Medina contacted Weingeist on behalf pf Tropix Media to make arrangements for her final payment of monies owed by Tropix Media and to arrange for the pickup of the Tropix Assets held at the Union Square Office.  Annexed hereto as **Exhibit F** is a true and accurate copy of the correspondence.

36.     Weingeist again refused to cooperate and allow Tropix Media to access the Union Square Office in order to pick up the Tropix Assets.

37.     As part of Weingeist termination and separation from Tropix Media, she was asked to execute a general release and separation agreement in conjunction with being paid any amounts due and owed to her in the agreed upon amount of $17,353.28 (herein, the "Separation

Agreement"). Annexed hereto as **Exhibit G** is a true and accurate copy of the Separation Agreement.

38. As part of the Separation Agreement, Tropix Media insisted that Weingeist execute a general release that would prevent her from later disputing reimbursement expenses or if she was sued for statements made to Pickled Punk Sublease LLC, would provide Tropix Media from incurring additional liability.

39. Weingeist demanded that general release be turned into a mutual release to both parties.

40. Tropix Media was unwilling to make this a mutual release since Weingeist was the sole Tropix Media representative in the Union Square Office and they were concerned about other agreements or actions taken by her without Tropix Media's knowledge or consent.

41. On or about December 19, 2019, in an email exchange on behalf of Tropix Media, Weingeist was again asked for access to the Union Square Office in order to pick up the Tropix Assets, at which time Weingeist refused to assist Tropix Media with getting into the Union Square Office. Annexed hereto as **Exhibit H** is a true and accurate copy of the email correspondence.

42. In addition, in the December 19, 2019 email, Weingeist was informed that the release would not be modified into a mutual release and was asked to execute the Separation Agreement so that a final payment could be made to her by Tropix Media. Id.

43. Weingeist refused to execute the Separation Agreement in order to receive her final payment.

44. On or about January 7, 2020, Tropix Media again requested that Pickled Punk Sublease LLC, provide them with access to the Union Square Office to pick up the Tropix Assets being held at the office and was again refused access to the premises.

**The Relief Requested Herein**

45.     As of the date of filing this Counterclaim/Third Party Complaint, because of the Counterclaim Defendants'/Third Party Defendants' actions or inactions, Counterclaim/Third Party Plaintiffs have never been able to retrieve the Tropix Assets located with the Union Square Office.

**FIRST COUNT**
**[Unjust Enrichment]**

46.     Counterclaim/Third Party Plaintiffs repeat and incorporate the allegations contained in the above paragraphs as if fully set forth herein.

47.     By refusing to grant Counterclaim/Third Party Plaintiffs access to the Union Square Office to retrieve the Tropix Assets, Counterclaim Defendants/Third Party Defendants have been unjustly enriched.

48.     The benefits obtained by Counterclaim Defendants/Third Party Defendants have been obtained at the expense and detriment of the Counterclaim/Third Party Plaintiffs.

49.     As of January 7, 2020, there is currently due and owing from Counterclaim Defendants/Third Party Defendants a sum of $17,000.00 which represents the cost of the Tropix Assets retained by the Counterclaim Defendants/Third Party Defendants.

50.     As a direct and proximate result of Counterclaim Defendants'/Third Party Defendants' negligence, Counterclaim/Third Party Plaintiffs incurred and will continue to incur damages.

51.     As a result of the foregoing actions and inactions, Counterclaim/Third Party Plaintiffs have been damaged by the Counterclaim Defendants/Third Party Defendants.

**SECOND COUNT**
**[Conversion]**

52.     Counterclaim/Third Party Plaintiffs repeat and incorporate the allegations contained in the above paragraphs as if fully set forth herein.

53. Counterclaim Defendants/Third Party Defendants committed conversion, either by direct action or through authorized agents, in retaining furnishings, computers and televisions belonging to Counterclaim/Third Party Plaintiffs from the Union Square Office.

54. Counterclaim/Third Party Plaintiffs are entitled to the fair market value of all converted chattel at the time of the conversion by the Counterclaim Defendants/Third Party Defendants, with interest from the date of conversion.

55. As a result of the foregoing actions and inactions, Counterclaim/Third Party Plaintiffs have been damaged by the Counterclaim Defendants/Third Party Defendants.

## THIRD COUNT
### [Property Taken Without Authorization]

56. Counterclaim/Third Party Plaintiffs repeat and incorporate the allegations contained in the above paragraphs as if fully set forth herein.

57. Counterclaim Defendants/Third Party Defendants willfully deprived and/or negligently deprived Counterclaim/Third Party Plaintiffs to their right to possession of Property.

58. Counterclaim Defendants/Third Party Defendants deprived Counterclaim/Third Party Plaintiffs of their right to the Property thought an act repudiating Counterclaim/Third Party Plaintiffs' right to possession and by exercising dominion over the Property inconsistent with Counterclaim Defendants'/Third Party Defendants' right to possession of the Property.

59. Counterclaim Defendants/Third Party Defendants aiding, instigated and/or assisted in depriving Counterclaim/Third Party Plaintiffs of their rights to the Property.

60. Counterclaim Defendants/Third Party Defendants is liable to Counterclaim/Third Party Plaintiffs for such conduct in taking the Property without authorization for the value of the Property and/or damages for any change in condition of the Property.

61.     As a result of the foregoing actions and inactions, Counterclaim/Third Party Plaintiffs have been damaged by the Counterclaim Defendants/Third Party Defendants.

## FOURTH COUNT
**[Negligently Caused Economic Loss]**

62.     Counterclaim/Third Party Plaintiffs repeat and incorporate the allegations contained in the above paragraphs as if fully set forth herein.

63.     Counterclaim Defendants/Third Party Defendants knew or had reason to know that an identifiable class of person, namely Counterclaim/Third Party Plaintiffs, were likely to suffer an economic harm as a result of Counterclaim Defendants'/Third Party Defendants' conduct, including but not limited to conversion.

64.     Due to this conduct, Counterclaim Defendants/Third Party Defendants are liable to Counterclaim/Third Party Plaintiffs for all economic damages proximately caused by failing to take reasonable measure to avoid the risk of causing such economic damages to Counterclaim/Third Party Plaintiffs.

65.     As a result of the foregoing actions and inactions, Counterclaim/Third Party Plaintiffs have been damaged by the Counterclaim Defendants/Third Party Defendants.

## FIFTH COUNT
**[Replevin]**

66.     Counterclaim/Third Party Plaintiffs repeat and incorporate the allegations contained in the above paragraphs as if fully set forth herein.

67.     Counterclaim Defendants/Third Party Defendants exerted improper control over the personal property of Counterclaim/Third Party Plaintiffs.

68.     For the period between December 2019 and present, Counterclaim Defendants/Third Party Defendants took possession of property belonging to Counterclaim/Third

Party Plaintiffs. Counterclaim/Third Party Plaintiffs did not authorize Counterclaim Defendants/Third Party Defendants to take possession of any property belonging to Counterclaim/Third Party Plaintiffs.

69. Counterclaim/Third Party Plaintiffs have repeatedly requested return of the personal property and Counterclaim Defendants/Third Party Defendants have failed to return such personal property.

70. As a result of the foregoing actions and inactions, Counterclaim/Third Party Plaintiffs have been damaged by the Counterclaim Defendants/Third Party Defendants.

## SIXTH COUNT
### [Negligence]

71. Counterclaim/Third Party Plaintiffs repeat and incorporate the allegations contained in the above paragraphs as if fully set forth herein.

72. Counterclaim Defendants/Third Party Defendants owed a duty of care to Counterclaim/Third Party Plaintiffs.

73. Counterclaim Defendants'/Third Party Defendants' actions are the actual and proximate cause of the injuries sustained by Counterclaim/Third Party Plaintiffs.

74. Counterclaim/Third Party Plaintiffs have suffered damages as a result of the negligent actions of Counterclaim Defendants/Third Party Defendants.

75. As a result of the foregoing actions and inactions, Counterclaim/Third Party Plaintiffs have been damaged by the Counterclaim Defendants/Third Party Defendants.

## SEVENTH COUNT
### [Conspiracy]

76. Counterclaim/Third Party Plaintiffs repeat and incorporate the allegations contained in the above paragraphs as if fully set forth herein.

77.     Counterclaim Defendant/Third Party Defendant was operating under a consulting/employment agreement with Counterclaim/Third Party Plaintiff.

78.     Indeed, Counterclaim Defendant/Third Party Defendant was paid for her work with Counterclaim/Third Party Plaintiff.

79.     Counterclaim Defendant/Third Party Defendant in her role as consultant for Counterclaim/Third Party Plaintiff conspired to damage Counterclaim/Third Party Plaintiff.

80.     By Counterclaim Defendants/Third Party Defendants' actions, Counterclaim/Third Party Plaintiff has been and will continue to be damaged.

**WHEREFORE,** Counterclaim/Third Party Plaintiffs demand judgment against Counterclaim Defendants/Third Party Defendants for actual, consequential and punitive damages plus accrued interest through the date of entry of judgment costs of suit, reasonable attorney's fees, and such other relief as the court may deem just and equitable.

Respectfully submitted,

**LAW OFFICES OF GEOFFREY D. MUELLER, LLC**

Dated: July ___, 2021

By: _____

Geoffrey D. Mueller, Esq.
Attorneys for Defendants, Tropix Holdings LLC, Tropix Inc. d/b/a Tropix Media & Entertainment and Mario Baeza
633 Kinderkamack Road
Westwood, New Jersey 07675
Phone No. (201) 569-2533
Email: gmueller@gdm-law.com

TO:     Darius A. Marzac, Esq.
Marzec Law Firm, PC
Attorney for Plaintiff, Rachel Weingeist
776A Manhattan Avenue, Suite 104
Brooklyn, New York 11222
(718) 609-0303
dmarzec@marzeclaw.com

# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

RACHEL WEINGEIST, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED WHO WERE EMPLOYED BY TROPIX MEDIA & ENTERTAINMENT AND TROPIX HOLDINGS LLC AND TROPIX INC.,

PLAINTIFF,

-AGAINST-

TROPIX MEDIA & ENTERTAINMENT, TROPIX HOLDINGS LLC, TROPIX INC., MARIO BAEZA, TAYMI CESPEDES, JAVIER RODRIGUEZ, AND TANIA MILAN,

DEFENDANTS.

CIVIL ACTION NO.: 1:20-CV-00275-ER-SLC

---

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT, ENLARGE TIME TO ANSWER AND GRANTING PERMISSION TO FILE A COUNTERCLAIM AND THIRD-PARTY COMPLAINT PURSUANT TO 28 U.S.C. § 1367**

---

Of Counsel & On the Brief:
Geoffrey D. Mueller, Esq.

Law Offices of Geoffrey D. Mueller, LLC
366 Kinderkamack Road
Westwood, New Jersey 07675
Phone No.: (201) 569-2533
Attorneys for Defendants, Tropix Holdings LLC, Tropix Inc. d/b/a Tropix Media & Entertainment and Mario Baeza

## PRELIMINARY STATEMENT

Defendant, Mario Baeza is the chief executive officer of Tropix Holdings LLC and Tropix Inc., d/b/a Tropix Media & Entertainment (hereinafter, collectively, the "Defendants"). In 2017, Mr. Baeza established his primary and permanent residence in Havana, Cuba. Mr. Baeza also maintains an apartment in Fort Lee, New Jersey. During the relevant period herein, Mr. Baeza was essentially never at the Fort Lee apartment. It is undisputed Defendants were never personally served with any process from the inception of this case, through entry of default judgment.

On January 24, 2020, Plaintiff, Rachel Weingeist, (herein, "Plaintiff") filed an Amended Complaint against Defendants. Plaintiff alleges that the Amended Complaint and other supporting documents were effectively served on all Defendants in this matter. They were not.

Mr. Baeza was not in the county at the time of service. Further, the Affidavits of Service are facially defective insofar as they read that the pleadings were left with the building's doorman. [See Dkt. 37 through Dkt. 43]. Similarly, on March 24, 2020, it appears as though Plaintiff submitted her Request for a Clerk's Certificate of Default against Defendants. Plaintiff, in her request certifies that the Defendants were properly served with the Summons and Complaint by Process Server on February 20, 2020. [See Dkt. 44]. They were not.

Further, on April 22, 2020 Plaintiff filed an Order to Show Cause for Default Judgment against Defendants. [See Dkt. 62]. The Order was entered denying Plaintiff's Motion for Default Judgment and directing her to effectuate proper service of process on the Defendants or brief the Court on why existing service is proper. Plaintiff did not do this, either.

On September 30, 2020, Plaintiff filed an Order to Show Cause for Default Judgment again against Defendants. [See Dkt. 68]. The Court entered the Order for Default Judgment on November 5, 2020. [See Dkt. 76]. Mr. Baeza avers that he did not receive any documents relative

to this matter until after judgment was entered, when he returned to the United States and actually received his mail. In that package, along with what Defendant believes were the remainder of the documents filed in this matter, was the entered Default Judgment entered on November 5, 2020.

The Defendants were never effectively served. Until recently, the Defendants had no knowledge of this action, and are not responsible for their failure to know, such that it would seem to be precisely the kind of excusable neglect or inadvertence contemplated by Fed. R. Civ. P. 60(b). Further the Defendants in this action, maintain meritorious defenses to this lawsuit as well as viable affirmative claims. Therefore, it is respectfully submitted the Court should vacate default judgment and permit this matter to go forward "on the merits."

Plaintiff was hired in March of 2019 as Tropix's Chief Development Officer. Defendants aver that, throughout her tenure with Tropix, Plaintiff was ineffective and highly unpopular with the other members of the Management Team because of her pushy and condescending manner. In fact, she was disregarded equally by both the Cuban and American members of the Management Team. Plaintiff was terminated in December 2019 and came to an agreement to settle any claims she might have for approximately $17,000.

As such, by this application, and for the within reasons, Defendants respectfully seek an order: (1) vacating Default Judgment; (2) enlarging the time to file an Answer; and (3) requesting permission to file a Counterclaim and Third-party Complaint pursuant to 28 U.S.C. § 1367.

## **FACTUAL BACKGROUND**

The Defendants respectfully rely upon, and incorporate by reference, the Certification of Counsel, dated July 30, 2021 as well as the Certification of Defendant, Mario Baeza dated July 30, 2021 and the exhibits annexed to both certifications in support of the present application.

# LEGAL ARGUMENT

## POINT I

## THE DEFAULT JUDGMENT SHOULD BE VACATED

### The Standard

Fed. R. Civ. P. 55(c) governs setting aside a default or a default judgment. It reads, "The court may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)." Further, Fed. R. Civ. P. 60(b) reads, in pertinent part, "On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect…or (6) any other reason that justifies relief".

Further, Fed. R. Civ. P. 60(b)(6), "confers broad discretion on the trial court to grant relief when appropriate to accomplish justice and to constitute a grand reservoir of equitable power to do justice in a particular case". Matarese v. Le Fevre, 801 F. 2d. 98, 106 (2d Cir. 1986). The court must seek "a balance between serving the ends of justice and preserving the finality of judgments." Nemaizer v. Baker, 793 F.2d 58, 61 (2d Cir. 1986); Rodriguez v. Keane, 2003 U.S. Dist. LEXIS 12268, 2003 WL 21673624, at *1 (S.D.N.Y. July 16, 2003).

As the Court knows, Rule 60(b) should be liberally construed in favor of setting aside default judgments so that cases may be decided on their merits. "In determining whether to vacate a default judgement, a court must consider: (1) whether the default was willful; (2) whether defendant has satisfactorily alleged a meritorious defense and; (3) whether and to what extent plaintiff would be prejudiced by vacating the default judgment entered against defendant." Aetna Life Ins. Co. v. Licht, 2004 U.S. Dist. LEXIS 21538 (S.D.N.Y. Oct. 25, 2004). Further, … "when

doubt exists as to whether a default should be granted or vacated, the doubt should be resolved in favor of the defaulting party". <u>Enron Oil Corp. v. Diakuhara</u>, 10 F.3d 90 (2d Cir. 1993).

The Southern District of New York has repeatedly found willfulness as something more than merely neglect or carelessness. <u>Jet Star Enters., Ltd. v. CS Aviation Servs.,</u> 2004 U.S. Dist. LEXIS 2760 (S.D.N.Y. Feb. 23, 2004). The Defendants herein lacked of knowledge of this suit, as clearly established by the previously submitted Certification of Defendant, Mario Baeza and their failure to appear or answer the complaint from this lack of knowledge is <u>due to the lack of effective service of any document related thereto</u>.

It was through no fault or neglect on the part of the Defendants that no appearance was made on their behalf. The Defendants' lack of action was not based on any willful conduct; instead, it was because they were unaware of the pendency of this matter. The Defendants actions in regard to their default, do not give rise to any standard of willfulness on their part.

Further, the Defendants motion is timely pursuant to under Fed. R. Civ. P. 60(c), which reads that a motion brought pursuant to Rule 60(b)(1) "must be made…no more than a year after the entry of the judgment or order[.]" Judgment in this action was entered on November 5, 2020. Upon Defendants receiving notification of the entry of Default Judgment, Defendants retained counsel to assist in resolving this matter.

**Because Defendants Were Not Effectively Served,**
**<u>They Need Not Demonstrate a Meritorious Defense</u>**

However, a Defendant seeking to have a default judgment vacated pursuant to Fed. R. Civ. P. 55 <u>need not show a meritorious defense</u> if the Defendant was not properly served with process. <u>Peralta v. Heights Medical Center, Inc.,</u> 485 U.S. 80 (1988). Failure of a Plaintiff to properly serve process and the entry of a default judgment based upon such failure infringes upon a defendant's right to due process. <u>Id.</u>

Because Plaintiff failed to properly serve Defendants with a Summons and Complaint in this matter, the traditional requirement of showing a meritorious defense cannot be imposed upon Defendants. See, e.g., Coe v. Armour Fertilizer Works, 237 U.S. 413, 424 (1915) ("it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits"); Armstrong v. Manzo, 380 U.S. 545, 552 (1965) ("only wip[ing] the slate clean . . . would have restored the petitioner to the position he would have occupied had due process of law been accorded to him in the first place.")

This fact, in conjunction with the demonstrable good cause shown for failing to answer the Complaint, necessitate that the Default Judgment against the Defendants be vacated and the time to file an Answer be enlarged. Should the Court require Defendants show a meritorious defense, then the Court must then consider whether the Defendants have alleged a meritorious defense warranting the vacatur of the judgment.

The Second Circuit has held that a meritorious defense must be complete but not absolute to support vacatur. "The test of such defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." Enron Oil Corp. v. Diakuhara, 10 F.3d 90 (2d Cir. 1993).

Defendants had no such knowledge of this action and are not responsible for their failure to know, such that it would seem to be precisely the kind of excusable neglect or inadvertence contemplated meritorious defense warranting the vacatur of the judgment. Defendants were not in the country when the alleged service was made upon the Defendants. Further, Defendants did not become aware of such action until they were able to return to the United States and received the documents pertaining to the Default Judgment.

**<u>Plaintiff Cannot Demonstrate Any Appreciable Prejudice</u>**

Plaintiff will not be unduly prejudiced by vacating the Default Judgment. Concededly, some delay will result if Defendants' motion is granted. However, it is respectfully submitted that since Default Judgment was entered in November 2020 and Plaintiff has not moved in any way whatsoever relative to enforcement of same, there can be no prejudice.[1]

The Court has ruled that delay alone is not a sufficient basis for the Plaintiff to claim prejudice. <u>Davis v. Musler</u>, 713 F.2d 907 (2d Cir. 1983). "Rather, it must be shown that delay will result in the loss of evidence, created increased difficulties of discovery, or provide greater opportunity for fraud and collusion." <u>Id</u>. Finally, in weighing the parties' competing interest, Defendants respectfully highlight that Plaintiff's Motion to Enter Judgment was necessitated by its failure to promptly or adeptly prosecute this matter. As such, Plaintiff cannot claim any prejudice in vacating Default Judgment.

## <u>POINT II</u>

**<u>SERVICE UPON DEFENDANTS, TROPIX MEDIA & ENTERTAINMENT, TROPIX HOLDINGS LLC, TROPIX INC. AND MARIO BEAZA IS NOT EFFECTIVE</u>**

Fed. R. Civ. P. 4(e) reads, in pertinent part:

Unless federal law provides otherwise, an individual—other than a minor, an incompetent person, or a person whose waiver has been filed—may be served in a judicial district of the United States by:

    1) following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made; or

    2) doing any of the following:

---

[1] It is also notable that, on April 5, 2021, the Court ordered Plaintiff to move for default against Defendants Rodriguez, Milan and Cespedes. Plaintiff was directed to move for default against these defendants or otherwise provide the Court with a status update by no later than April 19, 2021. [Dkt. 77]. Plaintiff has made no such effort and thus, cannot claim prejudice especially where the case has not been fully and finally adjudicated.

> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process.

Service upon Defendants, Tropix Media & Entertainment, Tropix Holdings, LLC, Tropix Inc and Mario Baeza is defective as the Summons and First Amended Complaint were delivered to the doorman of River Ridge Condominiums. As outlined in the Affirmation of Mario Baeza, Mr. Baeza's permanent residence is in Havana, Cuba.

Further, River Ridge is a very large building with thirty-one floors and approximately 250 units. Plaintiff listed no apartment number to serve her pleadings. Mr. Baeza was essentially never there. Plaintiff alleges that Tropix Media & Entertainment, Tropix Holdings, LLC, Tropix Inc and Mario Baeza were served on February 20, 2020. It is undisputed they were not.

Plaintiff did not: (a) deliver copy of the summons and of the complaint to the individual personally; (b) leave a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (c) deliver a copy of each to an agent authorized by appointment or by law to receive service of process. As such, service was not effective per Fed. R. Civ. P. 4(e)(2).[2]

### Effective Service of Process Consistent with State Law

Service was similarly ineffective per Fed. R. Civ. P. 4(e)(1), permitting service consistent with state law where the district court is located or where service is made.

---

[2] The Rule for service of process as to a corporation, partnership or association is substantially similar and, for the reasons set forth herein, was similarly defective. See Fed. R. Civ. P. 4(h).

## New York

CPLR 308 governs personal service upon a natural person in New York. It reads, in pertinent part:

Personal service upon a natural person shall be made by any of the following methods:

1. by delivering the summons within the state to the person to be served; or

2. by delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served and by either mailing the summons to the person to be served at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such delivery and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of either such delivery or mailing, whichever is effected later; service shall be complete ten days after such filing; proof of service shall identify such person of suitable age and discretion and state the date, time and place of service, except in matrimonial actions where service hereunder may be made pursuant to an order made in accordance with the provisions of subdivision a of section two hundred thirty-two of the domestic relations law; or

3. by delivering the summons within the state to the agent for service of the person to be served as designated under rule 318, except in matrimonial actions where service hereunder may be made pursuant to an order made in accordance with the provisions of subdivision a of section two hundred thirty-two of the domestic relations law;

4. where service under paragraphs one and two cannot be made with due diligence, by affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode within the state of the person to be served and by either mailing the summons to such person at his or her last known residence or by mailing the summons by first class mail to the person to be served at his or her actual place of business in an envelope bearing the legend "personal and confidential" and not indicating on the outside thereof, by return address or otherwise, that the communication is from an attorney or concerns an action against the person to be served, such affixing and mailing to be effected within twenty days of each other; proof of such service shall be filed with the clerk of the court designated in the summons within twenty days of

either such affixing or mailing, whichever is effected later; service shall be complete ten days after such filing, except in matrimonial actions where service hereunder may be made pursuant to an order made in accordance with the provisions of subdivision a of section two hundred thirty-two of the domestic relations law[.]

Id.

Here, there is no question but that Defendants were not personally served. Moreover, while Plaintiff alleges that there was service upon the doorman for River Ridge, the record is bereft that Plaintiff thereafter mailed the summons and complaint, much less within twenty (20) days of delivery upon the doorman.

Service is likewise defective per CPLR 311 (service upon a corporation) and CPLR 311-a (service upon limited liability companies) substantially for the reasons set forth above. See also, Nat'l Mfg. Corp. v. Buffalo Metal Container Corp., 126 N.Y.S.2d 755 (Sup. Ct. 1953) (Where it conclusively appeared that the secretary of state had not mailed the copy of the summons to the defendant corporation at the proper address the court was justified in vacating a judgment provided the defendant submitted on motion a copy of a proposed answer with an affidavit of a meritorious defense.)[3]

## New Jersey

New Jersey Court Rule 4:4-4(a)(1) governs personal service of a Summons and Complaint. In pertinent part, it reads that personal service can we made " upon a competent individual of the age of 14 or over, by delivering a copy of the summons and complaint to the individual personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over then residing therein, or by delivering

---

[3] Further, even if the Court considers Plaintiff's June 8, 2020 service on the Secretary of State valid [Dkt. 64 – 66], it would be anathema to due process to permit service of entry of default *nunc pro tunc* simultaneous with service of the summons and complaint.

a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf."[4]

In this case, the doorman of the building that service was allegedly effectuated on, is not an individual member of the household and by law, cannot be served with a Summons and Complaint on behalf of the Defendants. Further, as previously discussed, 200 Old Palisade Road, Fort Lee is a very large building and Plaintiff does not address the documents to a specific apartment, rather, just the building itself. As such, pursuant to New Jersey Court Rules, Plaintiff did not properly serve the Defendants with any documents relative to this matter.[5]

### The Complaint Should Be Dismissed Without Prejudice

Fed. R. Civ. P. 4(m) provides that if "a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Id. Here, Defendants were not effectively served within 90 days of the filing of the Complaint and, as such, it should be dismissed.

### POINT III

### THIS COURT SHOULD PERMIT DEFENDANTS TO FILE A COUNTERCLAIM & THIRD-PARTY COMPLAINT PER 28 U.S.C. § 1367

In the event that the Court should view Defendants' motion favorably, the Defendants should be permitted to file a counterclaim and third-party complaint per to 28 U.S.C. § 1367. As the Court is aware, Congress has authorized district courts to exercise jurisdiction supplemental to

---

[4] N.J. Ct. R. 4:4-4(a)(5) and (6) deals with service upon partnerships, unincorporated associations and corporations. These rules are substantially similar to R. 4:4-(a)(1).

[5] N.J. Ct. R. 4:4-3(a) provides, "If personal service cannot be effected after a reasonable and good faith attempt, which shall be described with specificity in the proof of service required by R. 4:4-7, service may be made by mailing a copy of the summons and complaint by registered or certified mail, return receipt requested, to the usual place of abode of the defendant or a person authorized by rule of law to accept service for the defendant or, with postal instructions to deliver to addressee only, to defendant's place of business or employment.

their federal question jurisdiction in 28 U.S.C. § 1367 "in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joined or intervention of additional parties".  28 U.S.C. § 1367 (a).

     Pursuant to <u>United Mine Workers v. Gibbs</u>, 383 U.S. 715 (1966) (<u>codified</u> in 28 U.S.C. § 1367), there are three requirements that must all be met for a district court to have supplemental jurisdiction over state causes of action: (1) "the federal claim must have substance sufficient to confer subject matter jurisdiction on the court"; (2) "[t]he state and federal claims must derive from a common nucleus of operative fact"; and (3) "if, considered without regard to their federal or state character, a plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding." <u>Id</u>. at 725.

     Further review of case law dictates that "a counterclaim must form part of the same case or controversy of the "original action" for the Court to have authority to exercise supplemental jurisdiction over the counterclaim." <u>Solow v. Jenkins</u>, 98 Civ. 8726 (RPP), 2000 U.S. Dist. LEXIS 5157 (S.D.N.Y. Apr. 24, 2000).  "For purposes of section 1367(a), claims "form part of the same case or controversy" if they "derive form a common nucleus of operative fact."" <u>Briarpatch Ltd., L.P. v. Phx. Pictures, Inc.</u>, 373 F.3d 296 (2d Cir. 2004).

     In determining whether two disputes arise from a "common nucleus of operative fact", the Second Circuit has traditionally asked whether the facts underlying the federal claim entail most or all of the facts underlying the state law claim or whether the federal claim necessarily brought facts underlying the state claim before the court. <u>Lyndonville Sav. Bank & Trust Co. v. Lussier</u>,

211 F.3d 697, 704 (2d. Cir, 2000). "This is even so if the state law claim is asserted against a party different from the one named in the federal claim." <u>Kirschner v. Klemons</u>, 225 F.3d 227, 239 (2d Cir 2000).

Supplemental jurisdiction is designed to permit joinder of all relevant <u>claims</u> over which the Court would not otherwise have jurisdiction. Here the initial action is alleged to confer subject matter jurisdiction on the court. Further, there is no question that the dispute alleged in Defendant's counterclaim arises from a "common nucleus of operative fact" and therefore, judicial economy and fairness dictate that supplemental jurisdiction should be used to join the parties necessary to permit all issues arising from the same facts and circumstances being resolved in one lawsuit.

## <u>CONCLUSION</u>

For the foregoing reasons and based upon the above cited authorities, it is respectfully requested that this court vacate the Default Judgment, enlarge the time to file an Answer and permit Defendants to file a counterclaim and third-party complaint pursuant to 28 U.S.C. § 1367.

Respectfully Submitted,

**LAW OFFICES OF GEOFFREY D. MUELLER, LLC**
Attorneys for Defendants, Tropix Holdings LLC, Tropix Inc. d/b/a Tropix Media & Holdings and Mario Baeza


By: _ */s/Geoffrey D. Mueller* _____
GEOFFREY D. MUELLER

Dated: July 30, 2021

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| RACHEL WEINGEIST, INDIVIDUALLY AND ON BEHALF OF ALL OTHER PERSONS SIMILARLY SITUATED WHO WERE EMPLOYED BY TROPIX MEDIA & ENTERTAINMENT AND TROPIX HOLDINGS LLC AND TROPIX INC., <br><br> PLAINTIFF, <br><br> -AGAINST- <br><br> TROPIX MEDIA & ENTERTAINMENT, TROPIX HOLDINGS LLC, TROPIX INC., MARIO BAEZA, TAYMI CESPEDES, JAVIER RODRIGUEZ, AND TANIA MILAN, <br><br> DEFENDANTS. | CIVIL ACTION NO.: 1:20-CV-00275-ER-SLC <br><br><br> **AFFIRMATION OF DEFENDANT, MARIO BAEZA IN SUPPORT OF MOTION TO VACATE DEFAULT JUDGMENT, ENLARGE TIME TO ANSWER AND GRANTING PERMISSION TO FILE A COUNTERCLAIM AND THIRD-PARTY COMPLAINT PURSUANT TO 28 U.S.C. § 1367** |

I, Mario Baeza of full age, hereby certify as follows:

1.      I am a Defendant in this matter.  As such, I am fully familiar with the facts and circumstances of this case and those set forth herein.

2.      This Affirmation is made in support of the Motion to Vacate the Default, enlarge the time to file an Answer and grant permission to file a Counterclaim and Third-Party Complaint pursuant to 28 U.S.C. § 1367.

3.      I am the chief executive officer of Tropix Media & Entertainment, Tropix Holdings LLC and Tropix Inc.

4.      To be clear, my companies, Tropix Media & Entertainment, Tropix Holdings LLC and Tropix Inc. are all separate entities.

5.    Tropix Media and Entertainment is not a legal entity, it is the "d/b/a" for Tropix Inc. and Tropix Holdings LLC should be dismissed from this suit as it was not in any way involved with the matters covered in this case.

6.    Further I should not be named in this suit as I did not orally contract Plaintiff on an individual basis.

7.    To the extent that Plaintiff has any specific information concerning her allegations as to why the corporate veil should be pierced, or various business entities named on an "alter ego" basis, she should be ordered to aver to those allegations, with specificity.

**Procedural History**

8.    Upon review of the docket, after many attempts at filing, it appears that Plaintiff finally successfully filed a Complaint against myself, Tropix Media & Entertainment, Tropix Holdings LLC and Tropix Inc. on January 24, 2020.  See Affirmation of Geoffrey D. Mueller, Esq. at ¶ 6.

9.    On March 24, 2020, it appears as though Plaintiff submitted her Request for a Clerk's Certificate of Default against myself, Tropix Media & Entertainment, Tropix Holdings LLC and Tropix Inc.  Id. at ¶ 22.

10.    Plaintiff, in the Request for Clerk's Certificate of Default, certifies that myself along with Defendants, Tropix Media & Entertainment, Tropix Holdings LLC and Tropix Inc. were served with the Summons and Complaint by Process Server on February 20, 2020.

11.    This is not true.  It appears that someone accepted delivery on our behalf, but I was out of the country and not informed that service of process had supposedly been effectuate until mid-November 2020 after returning to the United States.

## <u>My Residence and Domicile</u>

12.     In October 2016, I signed a long-term agreement to rescue, preserve, digitize and commercialize or provide non-commercial access to over 500,000 hours of Cuba's precious, but rapidly deteriorating, audio and television archival material, an activity specifically permitted under the US embargo of Cuba as an exercise of the First Amendment rights of Free Speech

13.     In order to do so, I had to build a serious company from the ground up in Cuba, with cutting-edge technology, industrial capabilities and a corporate culture the likes of which had rarely, if ever, been seen in Cuba before.

14.     Therefore, I moved and established my primary and permanent residence in Havana, Cuba in 2017.  I have a special visa which is the equivalent of a permanent residency in Cuba.

15.     Until August 2019, I maintained no residence in the United States.

16.     Although I have a Fort Lee, New Jersey address, it was not my primary residence nor my domicile, in fact. As detailed herein, I am not usually there.

17.     During the period from August 2019 through March 2020, I stayed at the Fort Lee, New Jersey apartment less than fifteen (15) days in total during those eight (8) months, and used it principally as a place to stay during my relatively infrequent but "packed" business trips to New York or during stopovers en route to other countries.

18.     Accordingly, notices and pleadings may have been delivered to the receptionist or a doorman.However, unless I happened to be in town, they would be held only for a reasonable period of time for my personal pickup.

19.     On August 26, 2020, I was finally permitted to leave Cuba on a humanitarian flight to attend to my dear younger (and only) brother's estate. He had passed away suddenly and unexpectedly on July 26, 2020, from Covid-19.

20.     It was an especially dark and difficult period for me. I provide a redacted copy of my current United States of America Passport to illustrate my travel history. Unfortunately, I had to obtain a new passport in January 2020 because my old passport had run out of extended visa pages to stamp.  My prior passport is at my home in Havana, Cuba.  Annexed hereto as **Exhibit A** is a true and accurate copy of my current United States Passport.

21.     A review of the entrance and exit visas will reveal that from mid-February 2020 until August 28, 2020, I was living full time in Cuba as the entire country shut down due to the pandemic.

22.     However, my previous passport will show that from late December 2019 through January 12, 2020, I was in Indonesia on business and vacation.  Annexed hereto as **Exhibit B** is a true and accurate copy of the payment and ticket confirmation will attest.

23.     I returned to the USA only for the purpose of getting my new passport.

24.     On January 14, 2020, I returned to Cuba to attend a series of meetings with prospective investors from Singapore.

25.     Except for two round trips from Havana to Madrid, Spain, in February, 2020, I remained in Cuba until August 28, 2020.

26.     In short, except for two days in January 2020, I did not reside at my legal residence in New Jersey for the entire period from approximately December 20, 2019 through August 28, 2020, when I was fortunate to be cleared to take an humanitarian flight to attend to my brother's affairs.

27.     On October 28, 2020 I was in New Jersey but completely absorbed in trying to manage Tropix from afar, preserve its assets, negotiate with its creditors, and ensure the health and safety of Tropix's remaining core team, all while putting together the senior staffing and business plan for our new commercial offices in Madrid Spain, and. of course, attending to the morbid requirements relating to the settlement of my brother's estate before the New Jersey Surrogate's Court.

28.     On or about November 10, 2020, was the first date I was handed a two-foot-thick pile of envelopes from one of the doormen containing a seemingly endless set of pleadings for this case.[1]

29.     I was incredulous that, apparently, a default judgment had already been entered.

30.     On or about November 24, 2020, I immediately contacted my attorney, Mr. Mueller, to represent me in this matter and to attempt to set aside the default judgment so that I could have my day in court to defend against the specious allegations of a disgruntled consultant.[2]

31.     Tropix, its employees and constituents have suffered greatly as a result of the unprecedented and unexpected effects of the pandemic. Cuba shut down its airports in late March 2020, except for brief but disastrous period in December and January, Cuba's airports will remain closed for the foreseeable future, as the new Covid variant continues to spread and wreak havoc.

32.     Unfortunately, Tropix had a closing of its first external round of financing scheduled for March 31, 2020, the official date Tropix's Digitalization Center was to be

---

[1] Plaintiff alleges that they served the Secretary of State of New York to as to the Defendant companies.  To be crystal clear, I was never sent any documents from the Secretary of State.

[2] There were numerous, highly technical, documents which took longer than expected to translate professionally. However, given that Plaintiff has done nothing to pursue her default judgments or attempt to enter default against the non-answering parties, it is respectfully submitted she can show no prejudice in vacating the judgments before Your Honor.

inaugurated, with committed investors flying in for the opening ceremony, which was the only remaining condition to closing.

33.    However, as a result of the pandemic, Cuba shut down international travel around March 20,2020, and thus prevented the closing of our first and critical round of external financing from taking place,  thereby putting my enormous investment of time, as well as my heavy investment in physical and human capital at jeopardy.

34.    Moreover, the entire Cuban population was effectively under quarantine so we could not operate the Digitalization Center. In short, we had to suspend operations, layoff our talented and highly-trained work force to whom we owed one month back wages and with whom Tropix signed promissory notes to pay them, as soon as it could reestablish its finances and reopen.

35.    As the Founder and CEO of Tropix, everything fell on my shoulders to deal with this completely novel and devastating occurrence.

36.    The point is that as a result of the pandemic, I have been personally forced to deal with every conceivable human, financial, governmental and emotional problem imaginable.

37.    To the extent the Court will consider the "balancing of the equities," I would respectfully remark that I am attempting to rescue and preserve my rich cultural heritage and the heritage of my Cuban brothers and sisters.  Plaintiff was to be a part of that effort, but as detailed herein, fell woefully short of her representations to me.

### PLAINTIFF'S CONTRACTUAL RELATIONSHIP WITH TROPIX INC.

38.    Plaintiff, Rachel Weingeist was retained in March to represent Tropix by holding herself out as Tropix's Chief Development Officer.

39.    In all my interactions with Plaintiff, I acted strictly in my capacity as an executive officer of Tropix.

40.     She was to open our New York offices and immediately begin work raising money for Tropix's video and film productions, and organizing the Tropix Foundation for the purpose of raising money to finance the preservation of the audiovisual archives of Cuba.

41.     I knew of Plaintiff through her participation as a fellow member of the Advisory Board of the Harvard Cuba Studies Program.

42.     Plaintiff came highly recommended by her friends; and in the course of her interviews made specific representations that she had great connections to wealthy billionaire families who were looking to her bring investment or philanthropic projects relating to Cuba.

43.     Although I had offered her aa generous employment agreement, we were never able to reach a meeting of the minds, except with respect to her compensation, and as a result the agreement was never signed.  Instead, she asked to be a consultant to Tropix and would use her personal corporation to provide her services to Tropix, as well as to her other continuing consulting clients. Annexed hereto as **Exhibit C** is a true and accurate copy of the email correspondence with Plaintiff.

44.     We did not attempt to negotiate a separate consulting agreement; however, we were each prepared to move forward on a consultancy "at will" basis. Pursuant to this oral "at will" consultancy, Tropix paid her the agreed upon monthly retainer  of $12,500.00  so she could get going and show me what she could do. Annexed hereto as **Exhibit D** is a true and accurate copy of Plaintiff's earnings statements.

45.     Suffice it to say, things did not work out.

46.     Plaintiff oversold her contacts and relationships and, although she had run a private foundation (from which I later found out she was fired and physically thrown out of the offices), she proved inept at forming and launching a new Foundation, contrary to her representations.

47.     Throughout her tenure with Tropix, Plaintiff was highly unpopular with the members of the Management Team because of her pushy and condescending manner, which did not go over well with either the Cuban or American members.

48.     It also became obvious over time that behind all the aggressive bluster Plaintiff was accomplishing little in terms of either getting the Foundation off the ground or raising any money through her supposed vast network of wealthy patrons.

49.     On numerous occasions I spoke with Plaintiff at length about her performance or lack thereof, and wrote several long critiques of her work, warning her that if progress was not soon made on all fronts that it would lead to her termination.   Annexed hereto as **Exhibit E** are true and accurate copies of the email thread.

50.     Plaintiff was responsible for finding office space for Tropix, which she procured through her long-time good friend who agreed to let us sublease his one room office right on Union Square in Manhattan.

51.     We signed an initial six-month lease with the plan to renew it directly with the landlord since our sublessor's lease expired at the end of that six-month period.

52.     At the end of the six-month period, we stayed on as a tenant at will continuing to pay the rent monthly thereby giving us time to decide what to do with Plaintiff and the office.

53.     Sometime in November, we began to get pressure from the sublessor to pay him a security deposit.

54.     We did not understand since there was no lease in place.

55.     The sublessor promised to get us a new lease, however, we were unclear as to why he was still in the picture or whether we wished to sign a new lease for a longer term given Plaintiff's performance.

56.     By the end of November, it was abundantly clear that Plaintiff was making no real headway, even though, at her request, we hired two highly experienced consultants to help her get the relatively modest paperwork for the Tropix Foundation completed.

57.     On December 3, 2019, at my recommendation, the Tropix Management Committee unanimously voted to terminate her employment with Tropix for the reasons that were stated in my letter to her informing her of the decision.  Annexed hereto as **Exhibit F** is a true and accurate copy of the Termination Letter.

58.     In fact, after the Management Committee unanimously voted to terminate the Plaintiff's consulting services, I drafted a short Settlement Agreement and Release, discussed it briefly with Plaintiff and delegated responsibility for "buttoning things up" with Plaintiff to Tropix's CFO, Chief  Administrative Officer, its in-house counsel, and had no reason to doubt that the matter was being handled in the ordinary course.. Annexed hereto as **Exhibit G** is a true and accurate copy of the Settlement Agreement and Plaintiff's response to same.

59.     I was compelled to move on to more pressing matters and would soon be traveling outside of the country for an extended period of time.

60.     I was surprised to learn that negotiations were dragging out given that the Plaintiff had initially agreed with the final payment due her, including, as a good faith gesture on Tropix's part, reimbursement for her undocumented and unsubstantiated expenses.

61.     The Settlement Agreement specifically provided that Plaintiff forbear from hurting the company's name and reputation.

62.     After reneging on the Settlement Agreement to which she previously agreed, Plaintiff immediately took elaborate measures to hurt my and Tropix's name and reputation.

63.     Plaintiff had a story published in the internet; she spoke badly of me and the Tropix to anyone who would listen; including other consultants, our employees, strategic partners and service providers.

64.     Whatever amount she alleges she is owed should be offset against the reputational damage she has caused. Further, she has stolen the furniture and equipment from Tropix.

## SUSPICIONS OF UNAUTHORIZED PROMISES
## AND COLLUSION WITH LANDLORD

65.     Following notice of her termination, Plaintiff conspired with her personal friend, the landlord of our office premises, so that the landlord would not give us an extra copy of the keys to enter the premises, although we had already paid rent for the entire month.

66.     Throughout the term of the initial lease and through the date of termination of her employment, through one means or another, Plaintiff had refused to give me a set of keys to our offices. Although I asked repeatedly, she never seemed to have the extra keys with her or even within reach during the few times a visited the office.  Annexed hereto as **Exhibit H** is a true and accurate copy of the communications with Plaintiff.

67.     Our landlord refused to give us access on the grounds that he had had a verbal agreement with the Plaintiff that Tropix would stay in the premises for several more years, even though our rental agreement had expired.

68.     If true, that was an unauthorized and undisclosed promise by Plaintiff that could have a materially adverse effect upon Tropix and its prospects, if enforceable.

69.     The landlord of our former offices in New York City, who is a personal friend of the Plaintiff, and was introduced to Defendant by Plaintiff and who, in cahoots with Plaintiff, refused to give us access to our rented office premises despite our being current on our rent.

70.     We requested access in order to remove the brand new computer equipment, large screen TV, and other furnishings we had just paid for and, to my knowledge, either the landlord or the Plaintiff has converted.

71.     In any event, we sent a formal notice to the sublessor that we would not be continuing in the premises and paid rent through the month of December.

72.     To our surprise, our landlord turned hostile demanding to know why we had terminated the Plaintiff

73.     He reasserted that Plaintiff had reached an oral agreement with him whereby we would lease the premises for at least one or two additional years.

74.     On that basis, Plaintiff had apparently renewed his lease with the landlord for two additional years and he intended to hold Tropix responsible for additional lease payments up until the time he secured a new tenant.

75.     Our CFO, Taymí Cespedes, who had been handling negotiations and discussions with our landlord  made it clear that Plaintiff was not authorized to reach any such agreement and that we were not bound by her oral statements. Annexed hereto as **Exhibit I** is a true and accurate copy of the email thread with Alex Halpern.

76.     Now that her employment was terminated and the landlord notified of our decision to vacate the premises, Plaintiff still refused to hand over the keys unless and until we paid her final monthly salary plus her incurred expenses and we waived the release

77.     This was an obvious problem because we had recently finished furnishing the office and purchasing expensive computers and television monitors. In fact, the furnishings and equipment together totaled what Plaintiff and Taymí agreed that she was owed, roughly $17,000. Annexed hereto as **Exhibit J** is a true and accurate copy of the New York Expenses sheet.

78.     Alternatively, we asked the landlord to give us the key for offices that we had paid for through the month of December. However, the landlord flatly refused to give us access to our leased premises.   Essentially, Plaintiff was "holding hostage" Tropix's office.

79.     Accordingly, as part of the termination and settlement with Plaintiff, Tropix insisted that she sign a release that would prevent her from later coming after Tropix because she wanted to continue to dispute reimbursement of her expenses that were clearly inappropriate or for some other matter.

80.     We also wanted to make sure that if her friend, the sublessor, sued her or us based on her unauthorized statements purporting to bound Tropix to a new long-term lease for at least a year or more, that she would remain on the hook for that liability and for any other liability that Tropix was deemed to have incurred as a result of her unauthorized agreements.

81.     Unfortunately, Plaintiff would not agree to sign the release unless, on advice of her lawyer we turned it into a mutual release.

82.     This was unacceptable to Tropix because Plaintiff was the sole Tropix representative in our New York office and "who knows" what else she might have agreed to despite being clearly unauthorized to do so. Annexed hereto as **Exhibit K** is a true and accurate copy of Taymi's response to Plaintiff.

83.     That was the state of affairs when she apparently decided to file her lawsuit.

84.     To this day, our corporate property in the premises in unaccounted for as we were never given the keys or access by her or the sublessor to the premises to clear out our brand-new furniture and equipment.

85.     The sticking point turned out to be the release, which to my mind should not have been a major obstacle to her unless she was either in cahoots with the sublessor or she had made other unauthorized and undisclosed agreements during her tenure with Tropix.

86.     Not until much later did I find out that a suit was purportedly filed, although I had never been served.

87.     When the initial Order to Show Cause was filed in January, I was out of the country and had no knowledge of it.

88.     When I returned to Cuba, I had no knowledge that I had been served as none of the other purported plaintiffs had been served.

89.     In March 2020, Cuba and the rest of the world pretty much shut down for the pandemic and, when I checked the internet, I learned that the courts were closed in New York, except for high priority and special cases, which this was not.

90.     Plaintiff makes much of the fact that Mr. Wilderwas served with the pleadings.[3] Mr. Wilder is not my personal lawyer, nor has he ever been.  Mr. Wilder was introduced to me by the Plaintiff whom he had known through other largely *pro bono* entertainment projects.

91.     Based on Plaintiff's recommendation, Tropix retained Wilder as its special counsel solely to work on its investment in, and coproduction of, a new IMAX 3-D movie titled, "Cuba," which was released to critical acclaim in late 2019.

92.     In the process of that representation, Wilder also introduced other partners of the firm to me to see what other business we could do together. I invited Rachel to participate in those meetings.

---

[3] Notably, not the summons and complaint.

93.     A few weeks after Plaintiff was terminated, I received a call from Wilder informing me that, unbeknownst to him, Plaintiff had been visiting his other partners, and had said some "really nasty things about me and Tropix," and that one of the partners came to see him to complain about how unprofessional and unethical she had acted and to find out what was going on.

94.     At that point I informed Wilder of Plaintiff's termination and Wilder, strictly as a friend of both of us, asked whether I would mind if he reached out to Plaintiff to see if he could get her to come to her senses and settle the matter quickly.

95.     Apparently, Plaintiff told him to talk to her lawyer, to whom he tried to make the same point but was met with hostility and derision, and the message fell on deaf ears.

96.     That was the last time I talked to or with Wilder about anything.

97.     In fact, Mr. Wilder never filed a Notice of Appearance or any other document in this matter.

98.     In short, Wilder is not and has never been retained to represent me or Tropix in this matter. He is a entertainment lawyer and not a litigator.

99.     Wilder should not be receiving copies of any pleadings or notices relating to this matter, and to my knowledge he does not read or respond to them.

100.    He did not pass on the notice to me that a possible default judgment was about to be entered against me.

101.    Delivery to Wilder thus cannot constitute service of process on the plaintiff, as Wilder is not the legal or *de facto* representative of any Defendant in this matter.

## DEFENDANTS' MERITORIOUS DEFENSES TO SUPPORT
## VACATUR OF THE DEFAULT JUDGMENT

102.  As mentioned above, Defendants believe they have meritorious defenses to the claims made and seek an opportunity to make their case.

103.  Plaintiff has established no basis for piercing the corporate veil and holding Defendant Baeza personally liable for the alleged acts of the company. At no time during the course of defendant Baeza's oral contractual consultant arrangement with Plaintiff did Defendant Baeza hold himself out as acting as anything other than the CEO of Tropix.

104.  Defendant Baeza never interacted with plaintiff on other than a professional basis as the senior most representative of the Tropix.

105.  The case against defendant Baeza should be dismissed as he at all times acted on behalf of Tropix and never in his individual or personal capacity and therefore the plaintiff is not entitled to pierce the corporate veil under settled New York case law.

106.  Likewise, Tropix Holdings should be dismissed as it played no part in the matters under adjudication. Tropix Holdings is currently inactive.

107.  Tropix Media & Entertainment is the informal name under which Tropix Inc operates in the US. Tropix Media & Entertainment is not a legal entity and therefore should not be a party to this legal action.

108.  Defendant was never anything more than an "at will" employee of Tropix since she refused to agree to the employment agreement offered to her and specifically requested in writing that our accounting staff treat her as an independent contractor and therefore payment of her $12,500 monthly retainer was not subject to withholding taxes.

109.    Plaintiff also had made clear to the Defendant Baeza that she had a preexisting consulting job commitment to the Museum of Hip Hop in NYC, which she intended to maintain during her tenure as consultant to Tropix.

110.    As a paid consultant under an oral "at will" agreement, Plaintiff is not entitled to the extra month retainer she seeks.

111.    Plaintiff was, in every way, substandard. She did not keep track of or provide an accounting of her hours worked; she did not keep regular office hours; she did not keep a log of her meetings; and she routinely ignored tasks assigned to her directly by the CEO, to whom she nominally reported.

112.    Accordingly, it is even impossible to know whether plaintiff was in fact a full-time employee or merely an overpaid part time employee.

113.    Plaintiff was the most highly compensated person in the company. During her tenure she produced no useful results.

114.    Plaintiff did, however, lead us into a number of failed initiatives that she heavily promoted, in part, as it turns out, as a means to repay an actual or moral debt she owed to the contracting party.

115.    Notwithstanding her shoddy effort and results, ee offered to pay Plaintiff's retainer amount for the last month. There is no basis for her claim that she is entitled to a second month severance payment.

116.    Tropix had eminently legitemate grounds for terminating Plaintiff for cause based on her willful and continued disregard of directives from the CEO, the person to whom she reported, and I so informed Plaintiff in my letter of termination.

117.    The setting aside of a default judgment requires equitable relief. In general, default judgments should be vacated when timely appealed, especially when the service of process was defective. In this case, there were a confluence of forces and exceptional circumstances that prevented effective service of process. This is in addition to the aroma of conspiracy, slander, and commission of a potentially criminal theft of property..

118.    Pursuant to F.C.R.P. 60(b) a default judgment may be set aside for "mistake, inadvertence, surprise, or excusable neglect." Rule 60(b) should be liberally construed in favor of setting aside default judgments so that cases may be decided on their merits.

119.    The Defendants lack of knowledge of this suit and failure to appear or answer the complaint from this lack of knowledge is due to the dramatic circumstances associated with the global pandemic and the lack of being served with any document related thereto.

120.    The Defendants had no such knowledge of this action and are not responsible for their failure to know, such that it would seem to be precisely the kind of excusable neglect or inadvertence contemplated by Fed. R. Civ. P. 60(b).

121.    The Defendants in this matter maintain meritorious defenses to this lawsuit.

122.    The current application to vacate the default and allow Defendants' time to file an Answer, Counterclaim and Third-Party Complaint would not prejudice Plaintiff in any way.

123.    In fact, it doesn't appear that Plaintiff has moved since the Default was entered. Therefore, allowing Defendants to assert defenses to this matter and asserting a counterclaim would in no way prejudice Plaintiff.

124.    A true and complete copy of the Defendants proposed Answer and Counterclaim is annexed to the Certification of Counsel, Exhibit D.

125.   Thus, it is respectfully requested the Court vacate the default judgment, permit the Defendants to file an Answer Counterclaim and Third-Party Complaint within a reasonable period of time.

I certify that the foregoing statements made by me are true.  I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.


By:   */s/Mario Baeza*_____
MARIO BAEZA

Dated: July 30, 2021

Exhibit A

UNITED STATES OF AMERICA

PASSPORT
PASSEPORT
PASAPORTE

Type / Type / Tipo    Code / Code / Código    Passport No. / No. du Passeport / No. de Pasaporte
P                     USA                      567684624

Surname / Nom / Apellidos
BAEZA

Given Names / Prénoms / Nombres
MARIO LEON

Nationality / Nationalité / Nacionalidad
UNITED STATES OF AMERICA

Date of birth / Date de naissance / Fecha de nacimiento
22 Jan 1951

Place of birth / Lieu de naissance / Lugar de nacimiento
NEW JERSEY, U.S.A.

Date of issue / Date de délivrance / Fecha de expedición
13 Jan 2020

Date of expiration / Date d'expiration / Fecha de caducidad
12 Jan 2030

Endorsements / Mentions Spéciales / Anotaciones
SEE PAGE 51

Sex / Sexe / Sexo
M

Authority / Autorité / Autoridad
United States
Department of State

SIGNATURE OF BEARER / SIGNATURE DU TITULAIRE / FIRMA DEL TITULAR

P<USABAEZA<<MARIO<LEON<<<<<<<<<<<<<<<<<<<<<<<
5676846242USA5101223M3001231168O2462<281748

May God continue the unity of our country as the railroad unites the two great oceans of the world.
*inscribed on the Golden Spike, Promontory Point, 1869*

*Visas*

*Visas*



20

21



Whatever America hopes to bring to pass in the world must first come to pass in the heart of America.

*Dwight D. Eisenhower*

341 REPUBLICA DE CUBA
*Visas*
1 4 ENE. 2020
JOSE MARTI 341

273 REPUBLICA DE CUBA
*Visas*
2 4 FEB. 2020
JOSE MARTI

415
0 3 FEB. 2020

253 REPUBLICA DE CUBA
2 4 FEB. 2020
JOSE MARTI

270 REPUBLICA DE CUBA
1 2 FEB. 2020
JOSE MARTI 270

156 REPUBLICA DE CUBA
1 4 FEB. 2020
JOSE MARTI 156

MADRID - BARAJAS
A 057
04.02.20  4 5

16    17



14

15

We hold these truths to be self-evident: that all men are
with certain unalienable rights, that among these
created equal, that they are endowed by their Creator
are life, liberty, and the pursuit of happiness.
*excerpt from the Declaration of Independence*

## Visas

## Visas



MAY 24 2021

10

11



Let us raise a standard to which the wise and honest can repair.
*George Washington*

*Visas*

*Visas*

↓ E
25.02.20
98
MADRID · BARAJAS
A 057

↑ E
12.02.20  36
MADRID · BARAJAS
A 035

↑ E
29.02.20  17
MADRID · BARAJAS
A 004

Exhibit B

See below.

---------- Forwarded message ---------
From: **Justfly.com** <<noreply@justfly.com>>
Date: Sat, Dec 7, 2019 at 8:44 PM
Subject: Your trip confirmation and receipt
To: Mario <<mlbaeza@tropixholdings.com>>



## Pack your bags. We'll take care of the rest!

You're all set! To view or print your boarding pass, go to your airline's website and enter your confirmation number (below). You can check-in for your flight 24 hours ahead of departure.

**JustFly Booking Number: 172-951-211**
**China Southern Airlines Confirmation Number: MY6B44**

## With JustFly, you're in control of your booking!

JustFly is the only place where you can fully manage your booking online and at your convenience. Our Self Serve portal is designed to put you in control.

**Manage my Booking**

# YOUR ITINERARY

## Departure

| New York, NY (JFK) to Denpasar, Indonesia (DPS) | 1 Stop |
|---|---|

China Southern Airlines
Flight 300
*Terminal 4*

| 10:40am | Thu. Dec 26 | New York, NY (JFK) |
| 3:35pm | Fri. Dec 27 | Guangzhou (CAN) |

Business

2h 40m Layover in Guangzhou

China Southern Airlines
Flight 625
*Terminal 2*

| 6:15pm | Fri. Dec 27 | Guangzhou (CAN) |
| 11:25pm | Fri. Dec 27 | Denpasar (DPS) |

Business

Total Trip Time: **26h 25m**

[Baggage Information](#)

## Return

| Denpasar, Indonesia (DPS) to New York, NY (JFK) | 1 Stop |
|---|---|

China Southern Airlines
Flight 8482
*Terminal I*

| 9:00am | Tue. Jan 14 | Denpasar (DPS) |
| 1:45pm | Tue. Jan 14 | Guangzhou (CAN) |

Business

5h 50m Layover in Guangzhou

 China Southern Airlines
Flight 699
*Terminal 2*

| | | |
|---|---|---|
| **7:35pm** | Tue. Jan 14 | Guangzhou (CAN) |
| **10:00pm** | Tue. Jan 14 | New York, NY (JFK) |

Business

Total Trip Time: **31h 50m**

[Baggage Information](#)

## IMPORTANT FLIGHT INFORMATION

Exhibit C

**From:** Rachel Perera Weingeist <rachel@tropixme.com>
**Sent:** Monday, March 25, 2019 10:56 AM
**To:** Javier Rodríguez <javier@tropixme.com>; Taymí Céspedes <tcespedes@tropixme.com>
**Subject:** Re: ADP setting up

Perera & Company's EIN number is 45-4521006

rachel@tropixme.com



**From:** Javier Rodríguez <javier@tropixme.com>
**Date:** Friday, March 22, 2019 at 2:25 PM
**To:** Taymí Céspedes <tcespedes@tropixme.com>, Rachel Perera Weingeist
<rachel@tropixme.com>
**Subject:** RE: ADP setting up

Hi Rachel,

I´m setting up your information on ADP and your company TIN is required, could you email it to me?

Thanks

**JAVIER RODRÍGUEZ**
MANAGER OF PRODUCTION BUDGETS & FINANCIAL REPORTS
OFFICE: +53 7830-0339
CELL: +53 5243-6535
EMAIL: JAVIER@TROPIXME.COM
WEB: WWW.TROPIXME.COM



Help save paper - do you need to print this email?
Ayuda a ahorrar papel - realmente necesitas imprimir este mensaje?

**From:** Taymí Céspedes <tcespedes@tropixme.com>
**Sent:** jueves, 21 de marzo de 2019 17:57
**To:** Rachel Perera Weingeist <rachel@tropixme.com>; Javier Rodríguez <javier@tropixme.com>
**Subject:** RE: ADP setting up

Javier as I mentioned please use Rachel company info in the meantime we finalize their contracts and insurance etc with tropix

Tay

TCESPEDES@TROPIXME.COM



**From:** Rachel Perera Weingeist <rachel@tropixme.com>
**Sent:** Thursday, March 21, 2019 4:00 PM
**To:** Javier Rodríguez <javier@tropixme.com>
**Cc:** Taymí Céspedes <tcespedes@tropixme.com>
**Subject:** Re: ADP setting up

I need the big picture on all of this please Javier. I assume since we are getting health insurance I must be an employee! Can we talk through this with Taymi please and you...as needed?

rachel@tropixme.com



**From:** Javier Rodríguez <javier@tropixme.com>
**Date:** Thursday, March 21, 2019 at 3:57 PM
**To:** Rachel Perera Weingeist <rachel@tropixme.com>
**Subject:** ADP setting up

Good afternoon Rachel,

I'm setting up the new employees on ADP and I've noticed that your employee form is filled with your company information, not your personal information. If that is ok, I will proceed to set you up as a contractor, instead of an employee, if you want to be set up as an employee then I will need you personal information on your ADP form.

Please let me know how you'd like me to proceed.

Thanks,

**JAVIER RODRÍGUEZ**
MANAGER OF PRODUCTION BUDGETS & FINANCIAL REPORTS
OFFICE: +53 7830-0339

CELL +60 5243-4535
EMAIL: JAVIER@TROPIXME.COM
WEB: WWW.TROPIXME.COM

**TR PIX**
MEDIA &
ENTERTAINMENT

Exhibit D

# Earnings Statement

Period Starting: 03/01/2019
Period Ending: 03/31/2019
Pay Date: 03/29/2019

Business Phone: 917-488-8036

Taxable Marital Status:
Exemptions/Allowances:

| | | Tax Override: | |
|---|---|---|---|
| Federal: | 0 | Federal: | |
| State: | 0 | State: | |
| Local: | 0 | Local: | |

Social Security Number: XX-XXXXXXX

**Perera & Company**
**56 Beaver**
**402**
**New York, NY 10004**

| Earnings | rate | hours/units | this period | year to date |
|---|---|---|---|---|
| 1099 Misc | | 0.00 | 12500.00 | 12500.00 |
| Gross Pay | | | $12,500.00 | $0.00 |
| Net Pay | | | $12,500.00 | |

Deposits

| account number | transit/ABA | amount |
|---|---|---|
| XXXXXX1747 | XXXXXXXXX | 12500.00 |

Tropix Holdings LLC
123 Hillside Ave
Englewood, NJ 07631

Pay Date: 03/29/2019

| Deposited to the account | account number | transit/ABA | amount |
|---|---|---|---|
| Checking DirectDeposit | XXXXXX1747 | XXXXXXXXX | 12500.00 |

THIS IS NOT A CHECK

Perera & Company
56 Beaver
402
New York, NY 10004

Exhibit E

Rachel Perera Weingeist rachel@tropixme.com 7/30/19 5:41 PM
Dear Mario,

I am very sorry to read your email right now, it really saddens me as I have worked very hard for 8 months and I think this is all easily resolved matter for dialog and conversation. I take great pride in my hard work and have shared all of my resources openly and honestly.

I have traveled a lot to Cuba 4 times and would have been there much more if banking were resolved and you sent for me. I have also been to Chicago, Boston and other places on behalf of Tropix and put my best foot forward bringing in the highest possible partners and shared all kinds of progress along the way. In no way shape or form is there any relationship with anyone I have brought into the mix other than professional. I have no debt to anyone and would never use any professional situation as described. David Lipsey, Dennis Panutto, Wilder Knight are all highly esteemed professionals with excellent credentials.

At DAM, yes, I was asked by the conference organizers to ask our staff at the final moment to move to the back of the room to make way for highly paying conference ticket holders. Our professional staff should have easily recognized they were guests and been nimble in mind and spirit. I was the messenger, not the initiator of that information. I asked you via email right after DAM to do a post-mortem so we could learn from the success and failures of the conference and for team building and got no response. It is unusual for senior staff of a company to be so firm in an observation and hold then go on to hold unproductive grudge. Why has not Taymi reached out to me to mend this situation? Isn't she the head of HR?

In terms of the Foundation, I wrote you that I found a temporary non-profit status that would take donations immediately for Tropix Foundation and got no response. Jesus has not made time to talk to me about his needs. I am all ears. I have asked several people to join the board and shared that info with you as well. I found the best lawyers in the world to represent us in starting the Foundation. They have given us 4 meetings without charge.

The financial crisis has been very difficult on all of us. I got no regular communication from the office at all and was indeed very worried. My personal health, credit and relationships have suffered. I am not in or around the office to get mumblings and had to rely on emails to get even bits of information. I was scared and needed reassurance

of what was happening. I have never had such an empty personal bank accounts and have used all of my reserves staying afloat in NYC.

Let's talk and nail everything down. I think you know I am a devoted passionate worker. My 6-month report that I am working on for Taymi as her request will certainly outline a long list of accomplishments.

Best,

rachel

RACHEL PERERA WEINGEIST
CHIEF BUSINESS + PHILANTHROPIC DEVELOPMENT OFFICER
+1-212-365-6198 USA
+53-5-911-0553 Cuba
rachel@tropixme.com



**From:** "Mario L. Baeza" <mbaeza@tropixme.com>
**Date:** Tuesday, July 30, 2019 at 5:11 PM
**To:** Rachel Perera Weingeist <rachel@tropixme.com>
**Subject:** Re: Speaking by WhatsApp!

Rachel, I have been meaning to talk or write to you for a long time. Right now I need you to focus on the foundation, putting the initial board together and raising the initial funding to cover operating expenses. Tropix will contribute approximately $200-$250,000 per year mostly in covering your salary, the office expenses, certain organizational costs and your travel and entertainment budget to cover recruitment of donor/board members. The rest you have to make happen! We are still awaiting a budget for your first six and 12 months.

We are all concerned that such little progress seems to have been made to date. We have urgent and strategic needs for a nonprofit affiliate. We need to raise about $2 million to buy 35mm scanning equipment and documents scanners for the ICAIC digitization project; we need to raise money for documentary/feature films we wish to do on Stella Bravo and Débora Andoyo; Jesús believes he can raise money from a variety of Colorado Foundations for TV projects involving utilizing the Education/ Entertainment Model and storytelling to promote health behavior change; we would like to raise money for the restoration of the famous backlot and sound stages of ICAIC, and possibly for a theater controlled by ICAIC which could become the first IMAX theater in Cuba. We would also like to raise funds for an AfroCuban focused

audiovisual archival center in line with what Alejandro is doing at Harvard. As you can imagine the list is potentially endless. But we need to get started!

As we discussed last time we were together in the offices, by now you should have identified and contacted likely donors and board members; have identified and systematically begun to meet with the top 20 or 30 foundations and family offices that would likely support one or more of our programs or initiatives; have identified and contacted the leading NGOs operating in our space or zone of interest; fully engaged your expansive Rolodex of contacts and relationships with the rich and famous; and developed your own programmatic ideas for which you believe you can find funding and that Tropix could help carry out; etc.

There is a huge amount of exciting stuff going on in Tropix today. However, it has been difficult to stay engaged since you don't attend any committee meetings and you have managed to alienate a number of the management team members with your unfortunate treatment of them as second class citizens during the Lipsey conference in NYC, including by making them feel unwelcome, sitting them in the back of the room during my presentation, and not introducing them to any of your important contacts. (I later found out that that was the reason they did not even visit our fledgling office). The overwhelming sense is that you view Tropix as a vehicle to resolve your personal financial problems and to return favors to your friends by doggedly ensuring they get paid this time around.

Frankly, for my own part, I was very disappointed in your handling of our banking crisis. Instead of showing leadership and stepping up to help us manage the crisis by keeping the rest of the employees and our creditors hopeful, grounded, encouraged and focused, you, our highest paid employee in Tropix by far, did nothing but send us innumerable dunning notices and unwelcomed reminders that we owed you or one of your friends money, and how terrible that fact was making your life—as if we were not already feeling bad enough for the hardship being caused to all of our employees; as if we were not working night and day and every minute of the weekend trying to find a solution to the problem; as if none of our other employees were similarly affected or, in some cases, put in a much worse situation as a result of the crisis; as if Taymi, me and the rest of the management team were not also suffering great harm through the crisis. Instead of proving yourself an asset in hard times, you became our biggest and loudest headache, drowning out the voices of the rest of our employees and all of our creditors.

I just want you to know that you have done substantial damage to your standing among the management team of Tropix. Those of us on the front line of this crisis feel battered and bruised by you, and not at all confident that when difficult times arise we can count on you. And that is not a good place to be.

I am not sure what can be done to repair the damage. However, I would start by putting some numbers on the board and demonstrating that you can build the Tropix Heritage Fund into an asset as important as any other within Tropix. At least that is where I would start: by making my

presence known through action and momentum and thus, once again, at least becoming a topic in our management committee meetings.

Mario Baeza

**From:** Rachel Perera Weingeist <<u>rachel@tropixme.com</u>>
**Sent:** Tuesday, July 30, 2019 1:31 PM
**To:** Jesus Fuentes; Mario L. Baeza
**Subject:** Re: Speaking by WhatsApp!

I would love to be of help to the team if you want another set of fresh eyes and I have done a lot of international presentations as well as worked closely with the Chinese.
They can be mercurial as they quietly agree to everything to be polite.

Best,

rachel

RACHEL PERERA WEINGEIST
CHIEF BUSINESS + PHILANTHROPIC DEVELOPMENT OFFICER
+1-112-505-5198 USA
+53-5-911-3555 Cuba
<u>rachel@tropixme.com</u>



**From:** Mario L. Baeza <mbaeza@tropixme.com>
**Sent:** Wednesday, September 25, 2019 3:55 PM
**To:** Mario L. Baeza <mbaeza@tropixme.com>
**Subject:** Personal & Confidential

Dear Rachel,

I must say that I was rather shocked to see the lack of progress in getting the Foundation set up and running. It seems that you are spending an inordinate amount of time spinning your and others' wheels on the Purpose, Mission and Strategy of the Foundation when, if you had been attuned to what I have been saying consistently, this should have come together in a few hours. Moreover, you completely failed to distinguish between the language we needed for filing with the State and, later, the IRS versus what we might want to say in our website and propaganda.

In any event, I would have expected you to write the first draft of the purpose document and not rely on Mary and Elizabeth to write it for you. To reiterate, this is not a difficult document to write. You should have been able to knock it out in several hours given all that has previously been written on the subject by Tropix and all that I have imparted to you from the beginning.

Similarly, Mary gave you a sample set of bylaws to use that was straightforward and basically just needed to change the names. Why wasn't this simply done and cleared off the table? Why was it that when I was there yesterday, you presented me with a different sample set of bylaws from the Jewish organization that on its face made no sense for the Tropix Foundation? When I asked you why we needed some of the IRS language included therein you had no idea and wanted to defer discussion until Mary arrived. I remember wondering whether you had even read either set of bylaws. One thing for sure was that you had not given it more than a glance or a cursory review. And yet the bylaws are the heart and soul that dictates how the Foundation would operate.

I also am totally confused as to how and why we decided to switch back to a membership organization instead of a private foundation after we spent an hour on this very topic with the Withers law firm. Frankly, I thought this was settled; however, there does appear to be a serious discrepancy in what our advisors are telling us. I would have expected you to get to the bottom of this discrepancy, pulling out and referring to chapter and verse of the actual law and regulations, and the articles you have found, as well as the memos and articles Wither's was

supposed to send us. Instead, you never even informed me, much less discussed with me, the wisdom of this profound change in how we were to operate.

If you are going to do this job, you must know first hand all the laws, rules and regulations applicable to what you are responsible for carrying out. This is basic. Yet I have the sense you have not done this homework and therefore you shift positions based on the latest advice someone gives you. This will not do! I need YOU to be the expert who reaches judiciously for outside counsel and advice only when you believe you are in a legally or politically gray area and have discussed it with me, or there is something you do not understand despite dedicated research and prior discussion with me. (Don't forget I used to represent the Ford Foundation among many other non/profits. I need to confirm from time to time with outside counsel only that there have been no recent changes to laws, regulations or policies in effect when I was practicing corporate law, or be updated accordingly).

**Rachel, I expect you to file our Articles of Incorporation today. Put yourself down as the third director and let's deal with the disclosure issues when we cross that bridge. You can always resign if we find the right third board member before we make our IRS filing.**

Also, please arrange a meeting with me and the proposed Afro Cuban German Director as soon as possible, hopefully in Havana. Where is she based? If she is in NYC/USA, I would be pleased to cover her expenses and fly her to Havana to meet me, the Tropix team and for all of us to get to know her better. If you were convinced about her as a board member, why wasn't I introduced to her a long time ago? Please confirm that she is prepared to serve on the board before the filing.

Finally, I was also disappointed that we are still at square one with the fiscal agents. Many months ago, up to and including in our meeting with Withers, you had on the top of your agenda evaluating the cost/benefits of a permanent strategic relationship versus a stop gap relationship. I know you spoke to a few firms, but your efforts were not thorough, and you never presented a cogent position paper with a thoughtful researched recommendation. Instead, you presented an organization with no prior experience as a third party fiscal agent, that is barely three years in existence, and whose activities and purpose, while laudable, would likely be considered fringe by most funders. So here we are in October and we are just now beginning serious discussions and research with fiscal agent candidates.

Following our meeting with Withers, you were also to do research about the appetite or need for tax deductible contributions for many of our likely funders or co/funders. We developed a likely list at Withers offices , which you were going to augment with your contacts.  What ever happened to this work? Like so many other things, it seems to have fallen into a black hole.

Similarly, what happened to your heavyweight donors? Have you been courting them actively? Why do I no longer hear about the Russian billionaires or the Peruvian mining family or the vast network of contacts you have in your Rolodex? What happened to Maria Rita's friend who was supposed to be the backdoor into the wealthy Miami money and wanted to work with us? It can't be that they are all held in abeyance pending defining our purpose and mission.

Similarly, you were supposed undertake a study of all of the NGOs that have as part of their mission or experience supporting the kind of projects we are doing? I mentioned books and studies with this information. What happened to this work?

The bottom line is that we need to see a lot more productivity out of you and your office to continue this operation under your leadership. Based on what has been accomplished so far in nearly nine months, I am not optimistic that you will be able to turn this around very quickly. I just do not see the work product for all of the time and money spent.  Based on what I saw in the office yesterday, all that has been done so far represents about three weeks of work, maybe. The rest of the time on this "full-time job" is unaccounted for in my book.

I don't know what seems to be the problem, but we are stumbling badly on simple things that seem to be preventing you from moving forward. There seems to be a lack of clarity and decisiveness on a variety of matters, which justifies, in your mind, inaction and continued spinning of wheels. For the record, time spent spinning your wheels which leads to paralysis and inaction, is of zero value to Tropix. We need to see concrete results and advances on a daily basis.

Rachel, all this leads me to question whether this is the right job for you. There is a big difference between starting up a non-profit and managing an existing one. Maybe your strengths lie in the latter.

Accordingly, I would seriously like for you to reflect and consider if there could be another role or position within Tropix or the Foundation which would provide for your highest and best use for the organization. I know you are tremendously talented and a real go getter when properly motivated and focused. For these reasons, I want to see if there is a way to keep you within the Tropix family even if your current position turns out not to be your cup of tea; not the right fit for you or for Tropix.

In the meantime, I am giving you until the end of this year to show some important concrete results from nearly a year's paid efforts. These results must include raising some major funding for one or more of our proposed initiatives, like the scanning equipment for ICAIC; the documentary films for Estela Bravo and/or Debra Andoyo; funding of a major restoration program for video and film archival material for ICAIC and ICRT; funding of technology for enhancing the visual quality of archival material by the employing 3D and color technology; funding for the renovation and restoration of an historic movie and performance theater in Old Havana; etc.

In all of these cases you will need to rely on work to be done by others at Tropix and so you must devise and implement a strategy to make sure you get what you need from them, when you need it. However, I expect you to be the catalyst to get one or more of these initiatives funded by year end. Your position will not be saved by a failure to execute because others did not do their part on a timely basis. You have to own the outcome.

Of course, you can count on my support 100% at every step of the way. As you know, I do not mind rolling up my sleeves and getting things done. If you do your part, I will most assuredly do mine as CEO of Tropix. Nothing would please me more than to see the promise of the Foundation come to fruition by the end of this year.

After you have had a chance to read and reflect on the above, please feel free to give me a call to discuss any of the matters raised herein.

Un fuerte abrazo,
Mario

Exhibit F

**From:** Mario L. Baeza <mbaeza@tropixme.com>
**Sent:** Friday, November 29, 2019 6:01 PM
**To:** Mario L. Baeza EU; Diana Maria González; Vania Salgado
**Cc:** Laura Ruiz Medina
**Subject:** Draft Termination Letter for Comment

Dear Rachel,

It is with a great sense of disappointment and regret that I am notifying you of my decision to recommend to the Management Committee termination of your employment by Tropix to become effective if, as and when determined by the Management Committee. Although I believe there are strong arguments to justify termination For Cause, I have left that ultimate determination to the Management Committee.

For any number of reasons, things did not work out for Tropix with you as our Chief Business & Philanthropic Development Officer. Nor have things worked out under your stewardship of the proposed Tropix Heritage Fund. After nearly a year of machinations, I feel we are no closer to identifying business prospects or funders or likely funders than we were when you were brought on board.

Moreover, your stubborn insistence on ignoring all of my clear directives and your refusal to consider other valid points of view, means that under your leadership, Tropix Heritage Foundation has pursued a singleminded strategy based on incorporation in NYC, which, as I suspected, and as we since have learned, is a failed or inadvisable strategy for raising the kind of funding we seek— at least at this time.

Upon our return trip from the Retreat, you showed me a binder reflecting what you have accomplished, with the help of two consultants, over the course of the year. Suffice it to say, what I reviewed reflected a cursory effort and did not reflect or represent a year's worth of work. At best, it appeared to represent three to four weeks of actual work.

Nevertheless, since I did not have an opportunity to review all of the materials in depth, I asked you to leave the notebook with me so that I could continue my review that evening and we could further meet in the morning. Much to my chagrin, you had no time to meet during the following morning and you returned to NYC later that day. To make matters worse, you did not leave the notebook for my further review as I requested.

Immediately following your return to NYC, Laura and I repeatedly and urgently asked you to forward a digital copy of the notebook. After your refusals to comply, I directed you to send me the copy forthwith or I would be forced to conclude that, indeed, the notebook contained nothing of value and could not justify your full time efforts, let alone your efforts buttressed by two expert consultants.

To date, I have not received the digital contents of that notebook. I therefore have concluded that (a) you have not, in fact, been working full-time for Tropix; (b) you have not produced anything of value for Tropix; (c) you have been insubordinate in your refusal to carry out clear directives from the CEO to whom you report; and (d) at your behest, Tropix has incurred unrecoupable losses and expenses attendant to supporting your purported full time efforts as a member of the senior management team.

As a result of the foregoing, Tropix has also lost invaluable time and has allowed important leads for funding generated by me and others to go cold.

You should not be surprised with my decision and recommendation. More than a month ago, I sent you an email outlining my disappointment and concerns with your performance. I stated in that email that if you did not raise substantial funds for the Foundation prior to the end of the year, I did not intend to go forward with your continued employment. Attached for your reference is a copy of that and other emails expressing my dismay with your overall performance during the course of this past year.

Rachel, I am sorry it has had to come to this. I had such high hopes for you and what you would quickly be able to accomplish for Tropix and our Tropix Foundation. Believing in your talent and knowing of your experience, I can only assume that you must have had other serious pressures, problems, responsibilities or opportunities that prevented you from looking upon Tropix as something more than a means to pay your bills or finance your lifestyle.

Although this job did not turn out as I had hoped, please know that we are not shutting the door to possible collaborations around the Cuban experience with institutions you may represent or be affiliated with in the future.

Please expect to hear from Taymi or Diana as to the decision of the Management Committee regarding the termination of your employment and next steps. Pending such decision, you are hereby instructed (i) **not to remove any of Tropix's property or assets from our office,**
(ii) not to incur any additional liabilities, costs or expenses on behalf of Tropix, (iii) not to take any action or make any statements that might be harmful or perceived as harmful to the interests of Tropix or any of its employees or affiliates, (iv) not to discuss the **status of your employment with any of Tropix's** service providers, or with any persons or entities with whom Tropix does business or proposes to do business in the future, and (v) not to divulge any confidential information concerning Tropix or any aspect of **Tropix's business, plans or prospects** to any person or entity. Failure to abide by any part of this directive will constitute an immediate grounds for termination For Cause.

Sincerely yours,


Mario L. Baeza

Exhibit G

# GENERAL RELEASE AND SEPARATION AGREEMENT

Set forth below are the terms and conditions of the General Release and Separation Agreement made by Rachel Perera Weingeist in favor and for the benefit of "Tropix,Inc" (TROPIX), a New York Corporation:

1. Rachel Perera Weingeist was employed by TROPIX for the period February 1th, 2019 to November 30, 2019. TROPIX has elected to terminate Rachel Perera Weingeist employment with TROPIX effective November 30, 2019.

2. In consideration for this agreement, payment to Rachel Perera Weingeist by TROPIX of the sum of USD 4 853.28 which constitutes the sum of approved business expenses plus her salary for November 2019 (USD 12 500.00) for a total of **USD 17 353.28**. This payment is to be made at the moment this agreement is signed by Rachel Perera Weingeist.

3. In further consideration for this agreement, if another employer makes any official inquiry to the TROPIX personnel department regarding Rachel Perera Weingeist employment, TROPIX will provide only the following employment information: job title, dates of employment, and last rate of pay and will state that the reason for her separation was that Tropix decided to relocate operations to Madrid, Spain.

4. Rachel Perera Weingeist on behalf of herself and her estate, executors, administrators, successors and assigns, fully releases and discharges TROPIX and all agents, partners, directors, employees, attorney, successors, assigns and insurers of TROPIX, and each of them, from all actions, causes of actions, claims, judgments, obligations, damages, and liabilities, of whatsoever kind and character, occurring at any time or prior to the date of this release, including, but not limited to, any such claims arising out of or relating to Rachel Perera Weingeist's employment and/or termination thereof and to any such acts or events involving her and TROPIX, including any contract, tort and any federal and state employment statutory claims. Rachel Perera Weingeist represents and warrants that she has not assigned any such claim or authorized any other person or entity to assert any such claim on her behalf. Further, Rachel Perera Weingeist agrees that by this release she waives any claim for damages incurred at any time after the date of this release because of alleged continuing effects of any alleged acts or omissions involving TROPIX that occurred on or before the date of this release and any right to sue for monetary or injunctive relief arising out of the alleged continuing effects of acts or omissions that occurred before the date of release.

5. Rachel Perera Weingeist understands and expressly agrees that this release extends to all claims of every nature and kind whatsoever, known or unknown, suspected or unsuspected, past or present, which existed before the execution of this release. Rachel Perera Weingeist expressly

waives all claims which she does not know or suspect to exist in her favor at the time of executing the release, which if known to her might have materially affected his settlement with the debtor.

6. Rachel Perera Weingeist covenants and agrees that the terms, amount and fact of settlement shall be kept strictly confidential. Rachel Perera Weingeist therefore agrees that neither she nor her agents will disclose, directly or indirectly, any information concerning the settlement to anyone, including past, present and future partners, employees or other personnel of TROPIX.

7. Rachel Perera Weingeist understands and agrees that any breach by her of any of the foregoing covenants shall entitle TROPIX to bring an action for failure to comply with the terms of this release and, further, should TROPIX prevail in such action, TROPIX shall be entitled to attorneys' fees and costs as part of such action. In addition, Rachel Perera Weingeist agrees that the remedy at law for breach of this agreement shall be inadequate and that TROPIX shall be entitled to injunctive relief.

8. Rachel Perera Weingeist undertakes not take any actions or make any statements that may directly or indirectly adversely affect TROPIX, its managers, employees, customers or suppliers.


RACHEL PERERA WEINGEIST FURTHER STATES THAT SHE HAS READ THIS RELEASE, THAT SHE HAS HAD THE OPPORTUNITY BUT WAIVED THE RIGHT TO SEEK ADVICE OF COUNSEL IN ADVANCE OF EXECUTING THIS STET, THAT SHE FULLY UNDERSTANDS ITS FINAL AND BINDING EFFECT, THAT THE ONLY PROMISES MADE TO INDUCE HER TO SIGN THIS AGREEMENT ARE THOSE STATED IN PARAGRAPH 2 ABOVE, AND THAT SHE IS SIGNING THIS AGREEMENT VOLUNTARILY AND WITH THE FULL INTENT OF RELEASING TROPIX FROM ALL CLAIMS.

Date: _____

Rachel Perera Weingeist

Date: _____

TROPIX

Mario,

- My salary is past due-December 1, 2019. There is no excuse for slowing that earned income down. It was due December 1st for completed work in November and your deliberate stop payment is not ethical nor legal.

- Many of the Tropix expenses are not listed on your spreadsheet. you know Cuban staff have no idea what it takes to work in the outside world, nor do they know what you asked me to do on your behalf for 10 months. Please note the large hotel bill in Chicago (Siv booked the hotel for me and I thought it was on your card until my bill arrived) and many other expenses. I suggest you take a deeper look. I also was advised to put plenty of things for the office on my card over many months from Staples supplies to many other things. You cannot edit the history to what pleases you after I have been asked to spend money for you to build your company. The precedent set by paying my expenses in March was a green light for the very reasonable pattern I set. You asked me to move about and meet people and attend meetings at all hours in many cities. You simply cannot edit that retroactively. The only policy that was added when I was already on the job was that we needed permission to travel from you before booking the actual travel. You asked me to travel for you to Cuba x 6, Chicago, Boston and all over NYC. You need to handle all of those expenses and what I spent to build your office.

- I contacted and emailed Tania the moment you requested. I am happy to help her gain entry into the space through the building. The landlord has limited my entry.

- There are errors on the equipment list. Several things I bought are on my card and somethings that are just wrong.

- There is nothing in your Tropix guide-book about signing an exit document or before payment or reimbursement for expenses. You never provided me a contract even after numerous requests throughout the winter and spring, nor did you provide me employee health insurance (when others have it) nor did you handle ADP payroll.

I am happy to consult some trusted advisors if we cannot tidy this up with swift payment due and the emptying of the office. I have acted only in good faith and I suggest you pay me and tidy everything up professionally.

Kindly do the right thing so we can move on amicably!

Rachel

On Dec 10, 2019, at 7:18 PM, Laura Ruiz Medina <laura@tropixme.com> wrote:

Dear Rachel,
It's a pleasure to greet you.

Mario has asked me to make all the arrangements necessary so that you receive your final payment as soon as possible. In order to finalize everything in accordance with the Management Committee's decision, have arranged the following:

1. Tomorrow you need to contact Tania to have an appointment.
2. Tania will have a list with details of all equipment and furniture of the office. (You can see in attached)
3. Once Tania has confirmed the inventory, you should sign the General Release and Separation Agreement (in attached) and deliver it to Tania, along with the keys to the office.
4. Tania will then give you a bank check in the amount specified in the release. The check will include what the Management Committee considered your reimbursable expenses under the policy established in our Employee Handbook (page 19 attached) .

Please, let me know if you need something else and all my best for you.

Best Regards,

laura@tropixme.com

Exhibit H

**Dec 9, 2019**

Hi Tania, Mario asked that I get in touch with you about timing around moving some things out of the office.

★ 3:32 PM

Hi Rachel, yes he mentioned. I can go to the office tomorrow between 12:00 12:30 to see what is there to moving. Is it ok?

3:39 PM ✓✓

I can see if I can move a few things around tomorrow, but it is unlikely to work. I can send photos too. But I



I can see if I can move a few things around tomorrow, but it is unlikely to work. I can send photos too. But I have not been reimbursed for my expenses so some things are in a murky place of ownership at the moment.

3:58 PM

Send pictures

4:00 PM

next time I get up there I can do that for sure! Tomorrow I have a few appointments and an event at the UN so it is already a



I am happy to help!

4:01 PM

Ok. Let me know when you are there, I can stop by if I am around.

4:33 PM ✓✓

Thanks

4:33 PM ✓✓

Dec 10, 2019

Tania, I am hoping to get paid so we can wrap the office move up.  Not sure why my November salary is now 10 days late, but I really have no idea what to pack if my expenses are



Rachel

Hi Rachel, contact Taymí for details 3:08 PM ✓✓

about you salary 3:09 PM ✓✓

She has never replied in any useful way and was a huge part of me not being able to get things done. 3:09 PM

I have been asking her since August to pay my expenses which I held onto through the banking crisis, funding the NYC office





Hi Rachel, contact Taymí for details

3:08 PM ✓✓

about you salary

3:09 PM ✓✓

She has never replied in any useful way and was a huge part of me not being able to get things done.

3:09 PM

I have been asking her since August to pay my expenses which I held onto through the banking crisis, funding the NYC office personally and still cannot





**Dec 20, 2019**

Good afternoon Rachel. Please, let me know when you are available to meet me and review the inventory of NY office.

4:37 PM ✓✓

Tania I've not been paid for November or 10k worth of expenses. I've tried to offer solutions and find this disorganized process impossible to navigate. If you are meeting me with a cashiers check I'm happy



There are a few errors on the inventory list that I'm happy to clear up in person and help with the move

5:14 PM

I am willing to meet you tomorrow or Monday. Following Taymí's instructions, I will have a check with the amount set in the agreement. Please discuss the inventory's errors with Taymi

5:25 PM ✓✓

Tania, Tropix is not behaving well. I have no



Tania, Tropix is not behaving well. I have no reason to trust that anything will actually happen in an organized way. I need a cashier's check for minimum $17,855 for November salary and half my expenses. 5:45 PM

I have offered everything reasonable since December 2nd and need a sign of reason from Tropix. My job ended now 20 days ago and every day I am asked to continue to work



expenses.

I have offered everything reasonable since December 2nd and need a sign of reason from Tropix. My job ended now 20 days ago and every day I am asked to continue to work for Tropix to get my back pay and expenses I have been asking for since August.

Can we meet tomorrow to go to the office and review the inventory?

Tania, I have told Mario, Taymi and everyone that I would help you but I need to be paid at the same time.

6:58 PM

Mario is illegally holding my November salary at Christmas time- Nice!

6:59 PM

I will have a check with the amount set in the agreement. Let me know when you can meet me

7:06 PM ✓✓

Dec 21, 2019

Tania, I made edits to the



Tania, I made edits to the agreement and have not received an appropriate version back yet. I was told by Taymi that my version was not accepted. I need a version back to consider signing. It is not legal for Mario to create random obstacles to receive my salary and expenses. Clearly no one at Tropix has the ability to follow US laws or work in a progressive way to create an acceptable separating document for both parties.



I have clearly stated numerous times that I moved out of the office with my personal things. Alex the landlord has been very forgiving and is 100% responsive to all communications considering he was left with no notice when he just renewed the lease on the space for Tropix use otherwise would have given the space up.

Mario is the one holding my payments hostage. If I was paid in a timely way this

otherwise would have given the space up.

Mario is the one holding my payments hostage. If I was paid in a timely way this would have been done December 2nd

Lastly, I am being totally screwed out of more than half of my Tropix expenses. I cannot sign a one-sided document when Mario's goal is clearly to pay less than he owes me and manipulate the situation to serve this purpose.

Exhibit I

**From:** A T Halpern III <<u>alexhalpern@mac.com</u>>
**Date:** January 7, 2020 at 3:53:39 PM GMT-5
**To:** Taymí Céspedes <<u>tcespedes@tropixme.com</u>>
**Subject: Re:  NY office Rent**

Taymi

Get a lawyer. Sue me. I'm gonna she back and we will see who wins.

Tell Mario I'm done.

AH

On Jan 7, 2020, at 10:07 AM, Taymí Céspedes <<u>tcespedes@tropixme.com</u>> wrote:

Dear Alex,

As you know, a commercial rental contract for more than 1 year requires to be formalized in writing. Although we never close a commercial rental contract in writing, we have complied with the payment of the monthly fee from March 2019 until December 2019, despite as soon as December 3, we communicate our intention to move the offices of the Foundation to Madrid.

I doesn't found any legal requirement about the obligation to give you 60 days' notice to terminate a verbal and implied contract. You can rent this space immediately to another tenant.

In fact, access to the space we had paid for and access to our real estate and our equipment has been denied. That is not legal (Real Property Law § 231), reason why we asked you once again to schedule a day so Tania can have access to the space and our furniture and tech is remove from the office.

Your attention to this matter as well as the resolution of this situation will be appreciated.

Taymi

**From:** A T Halpern III <<u>alexhalpern@mac.com</u>>
**Sent:** Saturday, December 28, 2019 11:27 PM
**To:** Taymí Céspedes <<u>tcespedes@tropixme.com</u>>
**Subject:** Re: NY office Rent

Taymí

In New York State an oral contract is binding. Your representative orally committed to the space for a period of  24 months.

I'm sure in Cuba things are run differently but you have a responsibility in New York.

AH

On Dec 28, 2019, at 4:21 PM, Taymí Céspedes <tcespedes@tropixme.com> wrote:

Sorry Alex

When you said: representative promise I'll assume you have a document signed that compromise Tropix on this lease. I will appreciate copy of that document so I could revise the document with our legal department.
Thanks

Taymi

Sent from my iPhone

On Dec 28, 2019, at 9:06 PM, A T Halpern III <alexhalpern@mac.com> wrote:

Taymi

You have ignored my prior emails.

Your notification to vacate the space was inadequate.

I signed a new two year lease in October based on your representatives promise that you would continue to occupy the space during that time. As such Tropix has created a massive liability for me.

Until such time as a replacement tenant can be found Tropix will continue to be responsible for the rent. As such you have already received a bill for Jan.

Tropix is months in arrears on providing a security deposit.

Until we can come to an agreement we will not be be able to permit you to remove anything.

AH

On Dec 28, 2019, at 9:32 AM, Taymí Céspedes <tcespedes@tropixme.com> wrote:

Hello Alex,

In regards to our decision to vacate the office. We informed you since December 3 about our decision. Once again, below the explanation of why the decision was taken at the time.

I have been informed that our furniture and tech stills inside the building because we are been unable to remove it from the building even if our notice to you was sent 27 days before the end of the month. Could you please schedule date and time so I can arrange pick up of our assets from the building?

Sorry for the inconvenience but we should move forward with moving this Foundation to a Spain.

Regards

Taymi

Sent from my iPhone


Dear Alex,

Our decision to vacate the premises is based upon advice of counsel to move the proposed operations of the Tropix Heritage Fund offshore to MADRID, Spain. We received that advice last week and the Company's Management Committee completed its deliberation on the matter last evening. We let you know of our decision promptly this morning.

We apologize for any inconvenience this may cause you; however, we understand from our counsel that in the absence of a signed lease, we could have been evicted by you at anytime.
Although we are prepared to pay rent through the end of this month, you may begin showing the premises at anytime during normal business hours. Also, please be aware that less than six months ago, we completely repainted and cleaned up the premises, which should inure you your benefit.

Regards,
Taymi
─────────────────────────────────────────────────────────────
**From:** A T Halpern III <alexhalpern@mac.com>
**Date:** December 3, 2019 at 11:09:15 AM EST
**To:** Taymí Céspedes <tcespedes@tropixme.com>
**Cc:** Javier Rodríguez <javier@tropixme.com>, Rachel Weingeist <rpweingeist@gmail.com>
**Subject: Re: NY office Rent**

Taymí

This is not acceptable and not how we do business in NYC.

Rachel has consistently said that you wanted to stay until at least next oct.

Please provide me with a further explanation of your decision and if you must leave i need at least 2 months notice to find a new tenent or give the space back to the building.

Alex Halpern

AH

On Dec 3, 2019, at 5:57 AM, Taymí Céspedes <tcespedes@tropixme.com> wrote:

Dear Alex,

Find this email as the Company final decision on the NY office rent lease.

The company has decide to not continue with the office lease. We will pay December rent as our final rent payment and we will move out prior to the end of the month.

Please advice in written your response to this email.  I'll be in contact with you for the final arrangements.

Regards,

Taymi Cespedes

Exhibit J

# NEW YORK PURCHASES (Furniture)

| DESCRIPTION | QUANTITY | PRICE |
|---|---|---|
| **Office Furniture** | | |
| Brightech Eclipse Torchiere LED Floor Lamp | 1 | $94.99 |
| DELONGHI EMK6 for Authentic Italian Espresso, 6 cups, Stainless Steel | 1 | $49.99 |
| COSORI 1.7L Electric Kettle with Upgraded 100% Stainless Steel Filter | 1 | $39.99 |
| Van Wyck Mesh Executive Chair MCRW673 | 1 | $131.99 |
| Burke Upholstered Dining Chair | 3 | $565.03 |
| | | $881.99 |
| | Merchandise Total: | |
| | Shipping: | |
| | Tax: | $77.62 |
| | **Total** | **$959.61** |
| | | |
| **IKEA Furniture** | | |
| ALEX N drawer unit /cstr 26 3/8x26" white | 1 | $129.00 |
| VANGSTA extendable table 47 1/4/70 7/8x29 1/2" white | 2 | $238.00 |
| ROTHULT smart lock white NA | 2 | $40.00 |
| IDÅSEN drawer unit/cstr 16 1/2x24" beige | 2 | $258.00 |
| LAGAN fridge with freezer compartment 4/1cu.ft NA | 1 | $159.00 |
| BILLY bookcase 31 1/2x11x41 3/4" white | 3 | $117.00 |
| | Service: | $39.00 |
| | Subtotal | $980.00 |
| | Other Charges: | $88.05 |
| | **Total** | **$1,068.05** |
| | | |
| | **GRAND TOTAL** | **$2,027.66** |

# NEW YORK PURCHASES (Tech)

| DESCRIPTION | QUANTITY | PRICE |
|---|---|---|
| **Printing Supplies** | | |
| 9/5/2019 | | |
| TRU RED 85 x 11 Color Printer Paper 20 lbs 96 Brightness 500Ream 10 ReamsCarton TR56962 | 1 | $63.99 |
| HP 202A Original Toner Cartridge Cyan Laser Standard Yield 1300 Pages 1 Pack CF501A | 1 | $76.99 |
| HP 202X High Yield Black Original LaserJet Toner Cartridge | 1 | $96.99 |
| HP 202A Original Toner Cartridge Yellow Laser Standard Yield 1300 Pages 1 Pack CF502A | 1 | $76.99 |
| HP 202A Original Toner Cartridge Magenta Laser Standard Yield 1300 Pages 1 Pack CF503A | 1 | $76.99 |
| | Merchandise Total: | $391.95 |
| | Shipping: | FREE |
| | Tax: | $34.79 |
| | **TOTAL** | **$426.74** |

| **Computers and more** | | |
|---|---|---|
| 21.5-inch | | |
| S | | |
| iMac   16GB 2133MHz DDR4 | 1 | $1,299.00 |
| 1TB Serial ATA Drive @ 5400 rpm | | |
| Intel Iris Plus Graphics 640 | | |
| Magic Mouse 2 | | |
| Magic Keyboard - US English | | |
| APPLE CARE - for desktop | | $169.00 |
| MacBook Air - Silver | | |
| Retina display with True Tone | | |
| 1.6GHz dual-core 8th-generation Intel Core i5 processor, Turbo Boost up to 3.6GHz | | |
| MacBook Air   16GB 2133MHz LPDDR3 memory | 1 | $1,299.00 |
| 128GB SSD storage | | |
| Intel UHD Graphics 617 | | |
| Touch ID | | |
| Force Touch trackpad | | |
| Two Thunderbolt 3 ports | | |

Exhibit K

| | |
|---|---|
| **From:** | Rachel Weingeist <rpweingeist@gmail.com> |
| **Sent:** | Thursday, December 19, 2019 12:18 PM |
| **To:** | Taymí Céspedes; Mario L. Baeza; tania_milan@yahoo.com |
| **Cc:** | Diana Maria González; Darsi Fernandez; Laura Ruiz Medina |
| **Subject:** | Re: General Release and Separation Agreement |

I offered to meet Tania weeks ago. This is a total sham. I've done everything you have asked including settle for 6k less than you owe me. I moved out of the office immediately. You have to arrange your move with Alex directly. My payment is not linked at all to your slow movement.

Best,
Rachel
+12125056198
Sent from my North American iPhone

On Dec 19, 2019, at 11:46 AM, Taymí Céspedes <tcespedes@tropixme.com> wrote:

> Rachel,
>
> Your proposed changes to the separation and release agreement were not approved.
>
> Please find below the comments.
>
> Also, We will also appreciate the keys of the NY office be handed to Tania ASAP as we informed the landlord that we will empty the space before the end of the month. The inventory list will also be revise.
>
> Once again I will mention that our committee decision was final and that as soon as you agree on the proposed release method payment will be handed.
>
>
> Thanks Taymi
>
>
>
> We understand Rachel's desire to turn the simple Separation and Release Agreement into a mutually binding agreement. However, that is inappropriate. In exchange for her release, Tropix is forebearing from notifying her of a "termination for cause," delivering to her a final check and is agreeing not to make any disparaging remarks about her performance.
>
> It is inappropriate for Tropix to provide her with a general release because she alone has been in charge of the NYC Office and our Foundation business. We are assuming, for example, that she has not entered into any undisclosed oral or written contracts, agreements or understandings and that she has not caused Tropix to directly or indirectly incur any undisclosed liabilities during her tenure, including to the IRS or other taxing authorities. (We now know that she has asked Tropix to reimburse her for certain expenses incurred without prior authorization and/or submitted long after the

expiration of the 30-day period for submitting expenses provided in the Employee Manual).

So to the extent the Release now claims to be mutual, it is unacceptable for the reasons stated above.