UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

RACHEL WEINGEIST,

                Plaintiff,

      – against –

TROPIX MEDIA & ENTERTAINMENT,
TROPIX HOLDINGS LLC, TROPIX,
INC., MARIO BAEZA, TAYMI
CESPEDES, JAVIER RODRIGUEZ, and
TANIA MILAN,

                Defendants.

**OPINION AND ORDER**

20 Civ. 275 (ER)

RAMOS, D.J.:

      The Court granted default judgment for Rachel Weingeist on November 5, 2020.

Doc. 76.  Before the Court is a motion to vacate the default judgment brought by

defendants Mario Baeza, Tropix Holdings LLC, and Tropix, Inc. d/b/a Tropix Media &

Entertainment (the "Defaulting Defendants") pursuant to Rules 55(c) and 60(b) of the

Federal Rules of Civil Procedure.  Doc. 82.  For the reasons set forth below, the motion is

GRANTED.

## I.  BACKGROUND

### A.  Factual Background

      Rachel Weingeist brought this action on January 10, 2020, for unpaid wages and

overtime pursuant to the Fair Labor Standards Act ("FLSA"), along with related state law

claims, against corporate defendants Tropix Media & Entertainment, Tropix Holdings

LLC, and Tropix, Inc. (the "Corporate Defendants"),[1] and individual defendants Mario

---

[1] According to Baeza, who is the chief executive officer of Tropix Media & Entertainment, Tropix Holdings
LLC, and Tropix, Inc., the three companies are separate entities.  Doc. 82 at 74.  He explains that Tropix
Media & Entertainment is not a legal entity and is the business alias for Tropix, Inc., and that Tropix
Holdings LLC is a distinct entity that was not involved with the matters at issue in this suit.  *Id.* at 75.  The
parties' submissions indicate that Weingeist worked for Tropix, Inc., d/b/a Tropix Media and Entertainment.
The Court will refer to this entity as "Tropix."

Baeza, Taymí Cespedes, Javier Rodriguez, and Tania Milan (the "Individual Defendants").  Docs. 1, 16.  Weingeist alleged in her amended complaint ("AC") that Baeza was at all relevant times the chief executive officer ("CEO") of the Corporate Defendants, that Cespedes was the Chief Financial Officer ("CFO") of the Corporate Defendants, that Rodriguez was the budget manager, and that Milan was an employee charged with payment of wages to Weingeist and others.  Doc. 16 at 2-3.

Weingeist's action arises out of Baeza's and the Corporate Defendants' work in Cuba.  *Id.* at 4–5.  According to Baeza's affidavit, he signed a long-term agreement to preserve and digitize Cuba's audio and television archival material in approximately October 2016.  Doc. 82 at 76.  To do so, he established a company in Cuba—Tropix—and he moved to Havana in 2017.  *Id.*  Baeza maintained his primary and permanent residence in Havana from 2017 until August 2019.  *Id.*  In approximately late 2020, Tropix opened new offices in Madrid, Spain, where the company is now based.  *See id.* at 78.

Weingeist worked for Tropix in 2019.  Doc. 16 at 2.  The parties dispute Weingeist's exact title, start date, and employment status with the company.  Weingeist attests that she was hired as Tropix's Chief Business and Philanthropic Development Officer and began working for the company in February 2019 as an employee, but that the company did not set up payroll appropriately, did not take appropriate deductions and withholding of payroll taxes and benefits, and did not provide her with benefits such as health insurance.  Doc. 84-1 at 1–3, 8.  Baeza attests that Weingeist was retained as Chief Development Officer and began working in March 2019 as a consultant, rather than as an employee, because he and Weingeist could not agree on the terms of her employment.  Doc. 82 at 80, 104–06.  They agree that Weingeist was to earn $12,500.00 per month.  Docs. 82 at 80, 84-1 at 1–2.  Weingeist's role was to open Tropix's New York office and to raise money for Tropix's video and film productions, including by making introductions to philanthropists and others interested in Cuba's cultural heritage who

might support Tropix's work.  Docs. 82 at 80, 84-1 at 8.  Among the individuals Weingeist introduced to Defendants was Wilder Knight, who is of counsel at Pryor Cashman LLP.  Docs. 82 at 86, 84-1 at 9–10.  Tropix retained Knight as its special counsel for negotiating the rights and managing the production of its IMAX 3-D film entitled "Cuba," which was released in late 2019.  *Id.*

The parties agree that Weingeist's tenure at Tropix was mutually dissatisfactory. Weingeist was terminated from the company in approximately December 2019.  Doc. 82 at 62, 82.  Baeza attests that Tropix offered Weingeist a settlement agreement and release, but that Weingeist declined to execute the agreement.  *Id.* at 82, 85.  She commenced this action for unpaid wages shortly thereafter.

### B.  Procedural History

Weingeist brought this action on January 10, 2020.  Doc. 1.  That same day, prior to filing suit, she sent a demand letter by email to Baeza as well as to nonparties Laura Ruiz Medina, Baeza's assistant, and Darsi Fernandez, a supervisor in charge of payroll, at their Tropix email addresses.  Docs. 84 at 6, 84-3.  She filed the operative AC on January 24, 2020, and requested issuance of summonses on January 30, 2020.  Docs. 16, 25–30. The summonses were issued on January 31, 2020.  Docs. 31–36.  On February 24, 2020, Weingeist filed proof of service as to all Defendants, indicating that they had all been served at Baeza's home address in New Jersey.  Docs. 37–43.  The affidavits of service state that the summonses as to all Defendants were left with "Jose, security for River Ridge," at 200 Old Palisade Road, Fort Lee, New Jersey on February 20, 2020 (the "Fort Lee apartment building" or the "Fort Lee address").  Docs. 37–43.  The proof of service further noted that the Fort Lee apartment building had a concierge and that visitors to the building were not allowed up to a resident's apartment without consent; that the building was Baeza's home address and that the concierge confirmed that Baeza was a resident of the building; and that the process server had left the summonses with security on the third

service attempt.[2]  *See id.*

On March 26, 2020, Weingeist moved the Clerk's office for certificates of default, which were issued the same day.  Docs. 45–51, 53–59.  On April 22, 2020, she moved the Court by order to show cause for entry of default judgment.  Doc. 60.  The Court set a show cause hearing date for June 5, 2020, and ordered Weingeist to serve Defendants with notice of that hearing by certified mail.  Doc. 61.  Weingeist served all Defendants with the order to show cause and supporting exhibits on April 28, 2020, by certified mail, return receipt requested, at the Fort Lee address, and she attested that she also notified Cespedes and Rodriguez by email at their Tropix email addresses.[3]  Doc. 62.  At the hearing on June 5, 2020, at which Weingeist appeared and none of the Defendants appeared, the Court ordered Weingeist to effect service again or to submit briefing explaining how the service she had effected was proper.  Doc. 63.  The Court also ordered Weingeist to provide any such briefing to Knight, who she contended represented Defendants.[4]  On September 8, 2020, the Court noted that Weingeist had neither submitted further proof of service nor submitted briefing as to why existing service was proper, and ordered her to properly serve Defendants by September 30, 2020, warning that failure to do so would result in dismissal of her case.  Doc. 63.

---

[2] The affidavit of service upon Milan stated that "[p]ublic records indicate that this is the current address for the recipient.  On [February 12, 2020], concierge advised that they knew the recipient to be a resident of the building."  Doc. 41.  Weingeist's affidavit claims that Milan is Baeza's girlfriend.  Doc. 84-1 at 6.

[3] The receipts were signed "JRG."  Doc. 62.

[4] Weingeist claims in her affidavit that Knight called her attorneys and stated that he was Baeza's attorney and that he attempted to negotiate a settlement after she sent the pre-suit demand letter.  Doc. 84-1 at 9.  Baeza denies that Knight is his personal lawyer and explains that Weingeist introduced them.  Doc. 82 at 86.  With her opposing papers, Weingeist submits a copy of a letter dated June 8, 2020, purportedly sent by her counsel to Knight by mail, email, and text message, informing him of the Court's order at the June 5 conference and attaching a copy of the order to show cause.  That letter states, "It is [] our understanding that you have been the attorney for the Tropix corporate Defendants as well as the attorney for Mr. Baeza personally for many years."  Doc. 84-4.  However, as noted above, Weingeist's affidavit specifically states that she introduced Defendants to Knight in 2019.  Doc. 84-1 at 10.  Knight never entered an appearance in this action.

Weingeist submitted affidavits of service on September 30, 2020, showing that she had served the Corporate Defendants on June 8, 2020, through service upon the New York Secretary of State.  Docs. 64–66.  She again moved the Court to enter default judgment on October 1, 2020.  Docs. 68–71.  Her submission in support of her motion for default judgment included the February 2020 affidavits of service made at the Fort Lee address; the June 2020 affidavits of service upon the New York Secretary of State; and a copy of the June 8, 2020 letter purportedly sent by her counsel by first-class mail, email, and text message to Knight.  Doc. 69.  The Court set a show cause hearing for October 28, 2020, and ordered service of the order to show cause by first class mail, return-receipt requested; the hearing was then adjourned to November 5, 2020.  Docs. 72–74.  In advance of the hearing, Weingeist submitted an affidavit of service that she had served the Corporate Defendants and Baeza by mail at the Fort Lee address and that she had served Knight by email.  Doc. 75.  At the hearing, noting that Weingeist's counsel represented that he had called Knight that morning and left a voicemail, the Court ordered counsel to report by the end of the day whether Knight responded.  Minute Entry for November 5, 2020.  The Court then entered default judgment, awarding Weingeist $78,899.63 in damages.  Doc. 76.

On April 5, 2021, the Court ordered Weingeist to submit a status report as to her action against the remaining Individual Defendants Rodriguez, Milan, and Cespedes, by April 19, 2021.  Doc. 77.  She did not do so.

On June 29, 2021, attorney Geoffrey D. Mueller entered an appearance for the Defaulting Defendants.  Doc. 78.  That same day, he requested a pre-motion conference requesting leave to file a motion to vacate the default judgment.  Doc. 79.  The Court held a pre-motion conference on July 16, 2021 and granted the Defaulting Defendants leave to move for vacatur.  Minute Entry for July 16, 2021.  The Defaulting Defendants moved to vacate the default judgment, to enlarge the time to answer, and to bring counterclaims and a third party complaint on July 30, 2021.  Doc. 82.

### C. Defaulting Defendants' Submission

In support of their motion to vacate, the Defaulting Defendants have submitted along with their memorandum of law, *inter alia*, a draft answer with affirmative defenses and counterclaims; tax records for the Fort Lee apartment building showing that it is a large building with approximately 250 apartments; Baeza's affidavit; a copy of Baeza's passport showing entry and exit stamps to Cuba and Spain; a December 2019 flight booking confirmation for a flight from New York City to Denpasar, Indonesia; and copies of emails and text message communications between Baeza and other Tropix staff and Weingeist.  *See* Doc. 82.

As relevant to the instant motion, Baeza attests that he did not maintain his residence in the United States from approximately 2017 to August 2019, and that he instead resided in Havana during that time.[5]  Doc. 82 at 76.  He explains that he does maintain an apartment at the 200 Old Palisade Road address in Fort Lee, New Jersey, but that he was rarely there during the relevant time period:  from August 2019 through January 2020, Baeza spent approximately fifteen days in total at the Fort Lee address.  *Id.* Furthermore, according to Baeza's affidavit, which is supported by the entry and exit stamps on his passport, he was outside the United States from approximately January 14, 2020 until late August 2020.  Doc. 82 at 77, 93–98.  He traveled twice in February 2020 from Cuba to Spain, returning to Cuba from Madrid on February 29, 2020.  *See id.*  From that time until late August 2020, Baeza remained in Cuba as "the entire country shut down due to the pandemic."  *Id.* at 77.  Cuba shut down international travel in March 2020 and established a strict quarantine.  *Id.* at 79, 86.  He was permitted to leave Cuba on a humanitarian flight on August 26, 2020 to attend to his younger brother's estate, after his brother passed away from COVID-19 in July 2020.  *Id.* at 77.  Thus, Baeza

---

[5] Baeza explains that he has a special visa that is the equivalent of permanent residency in Cuba.  Doc. 82 at 76.

claims that even if papers were left with a security guard or doorman at the Fort Lee apartment, he did not actually receive them.  *Id.* at 76.

Baeza further states that he did not receive the summons, pleadings, notices, and default judgment in this case until November 10, 2020, when he received them from a doorman at the Fort Lee apartment building.  *Id.* at 78.  He contacted Mueller, his attorney, on November 24, 2020.[6]  *Id.*  He did not receive any notification from the New York Secretary of State of service on the Corporate Defendants.  *Id.*

## II.    DISCUSSION

### A.  Legal Standard

Fed. R. Civ. P. 55(c) provides that a court may set aside an entry of default for good cause, and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b).  The Defaulting Defendants move to set aside the default judgment on the grounds that the judgment occurred as a result of "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), or for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  However, because their primary argument is that service was improper, the Court first considers the applicable standard under Fed. R. Civ. P. 60(b)(4).[7]

#### *1.  Rule 60(b)(4)*

"A judgment is void for lack of personal jurisdiction over the defendant where service of process was not properly effected," and "actual notice of suit [cannot] cure a

---

[6] Weingeist's affidavit claims that Baeza's representation that he did not maintain a residence in the United States is false, because while she worked for Tropix—that is, during 2019—he sometimes stayed at the Harvard Club and with Milan at an address in the Bronx.  Doc. 84-1 at 6.  She also claims that he was in New York "multiple times after the commencement of this action and immediately after a judgment had been issued," including that he was present in New York City "on November 28, 2020, and on various other dates."  Doc. 84-1 at 5–7.  Nonetheless, Weingeist's affidavit does not actually contradict Baeza's averments about his whereabouts from approximately January to November 2020, during the pendency of her lawsuit until the entry of default judgment.  Weingeist also argues that Baeza's representation that he did not receive notice of this action by email, phone, or text while he was outside the United States is "not credible."  *Id.* at 5.  However, her opposing papers indicate that her counsel emailed, texted, and called only Knight and nonparties, and did not directly email, call, or message Baeza after commencing this action.

[7] Weingeist's opposing papers are no better in this regard and also confuse the relevant legal standards.

failure to comply with the statutory requirements for serving process." *Sartor v. Toussaint*, 70 F. App'x 11, 13 (2d Cir. 2002) (summary order) (citations omitted).  Rule 60(b)(4) implicates a different legal standard than 60(b)(1) or (6), because "[w]hen a judgment entered against the defaulting party is void, the Court has no discretion and is compelled to grant the motion [to set aside a default judgment] for the reason that a void judgment cannot be enforced." *Id.*  (internal quotation marks and citation omitted); *accord Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005).

Moreover, "[t]he burden of proof [in Rule 60(b)(4) motions] is properly placed on the party asserting" that the judgment is not void. *Triad Energy Corp. v. McNell*, 110 F.R.D. 382, 385 (S.D.N.Y. 1986).  However, "on a motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur." *Burda Media*, 417 F.3d at 299.  Where, as here, it is in dispute whether the defendant had actual notice before the entry of default judgment, courts have found that the burden of proof properly remains with the plaintiff. *Restoration Hardware, Inc. v. Lighting Design Wholesalers, Inc.*, No. 17 Civ. 5553 (LGS) (GWG), 2020 WL 4497160, at *4 (S.D.N.Y. Aug. 5, 2020), *report and recommendation adopted,* No. 17 Civ. 5553 (LGS), 2020 WL 7093592 (S.D.N.Y. Dec. 4, 2020), *appeal dismissed* (May 21, 2021).

2. *Rule 60(b)(1) and 60(b)(6)*

"A motion to vacate a default judgment is addressed to the sound discretion of the district court." *S.E.C. v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998) (citations omitted). In deciding such motions, courts in this Circuit apply a three-factor test:  (1) whether the default was willful; (2) whether defendants demonstrate the existence of a meritorious defense to the defaulted claims; and (3) whether, and to what extent, vacating the default judgment will cause the non-defaulting party prejudice. *W.B. David & Co., Inc. v. De Beers Centenary AG*, 507 F. App'x. 67, 69 (2d Cir. 2013) (citations omitted).

In the Second Circuit, there is a strong "preference for resolving disputes on the merits." *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90, 95 (2d Cir. 1993); *see also Johnson v. New York Univ.*, 800 F. App'x 18, 20 (2d Cir. 2020) (summary order).  While default procedures play an important role in keeping "the orderly and efficient administration of justice," they are "generally disfavored" and "reserved for rare occasions."  *Enron Oil*, 10 F.3d at 96.  Therefore, when doubt exists as to whether a default should be vacated, "the doubt should be resolved in favor of the defaulting party," *id.*, so as to ensure that actions will be resolved on the merits, *Sony Corp. v. S.W.I. Trading, Inc.*, 104 F.R.D. 535, 539–40 (S.D.N.Y. 1985).  Motions to set aside default judgments should be granted liberally.  *See Standard Enters., Inc. v. Bag-It, Inc.*, 115 F.R.D. 38, 39 (S.D.N.Y. 1987) ("Rule 60(b) is its strongest in the context of setting aside default judgments . . . [t]here is much more reason for liberality in reopening a judgment when the merits of the case never have been considered than there is when the judgment comes after a full trial on the merits[.]" (internal quotation and citation omitted)).

### B.  Application

Since the Defaulting Defendants challenge whether service was properly effected, Doc. 82 at 61, the Court first considers whether service was proper, and therefore whether the judgment was valid, pursuant to Rule 60(b)(4), before turning to the prudential factors relevant to a 60(b)(1) motion.  *See Orix Fin. Servs. v. Phipps,* No. 91 Civ. 2523 (RPP), 2009 WL 2486012, at *3 (S.D.N.Y. Aug. 14, 2009) ("[J]udgments that are void *must* be set aside under Rule 60(b)(4)."); *Vega v. Trinity Realty Corp.*, No. 14 Civ. 7417 (RJS), 2021 WL 738693, at *6–7 (S.D.N.Y. Feb. 24, 2021) (first considering whether the judgment was void, and then considering the prudential factors).  For the reasons stated below, the Court finds that it cannot definitively conclude that service on the Individual Defendants was proper, but that service on the Corporate Defendants was proper.  In any event, prudential factors weigh in favor of granting the motion to vacate.

### 1. Service

Federal Rule of Civil Procedure 4(e) governs service of process on an individual.[8] Under Rule 4(e), an individual may be served by: (1) "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made"; or (2) by "(A) delivering a copy of the summons and complaint to the individual personally"; (B) "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (C) "delivering a copy of [the summons and complaint] to an agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(e). Weingeist does not argue that she effected service in accordance with Fed. R. Civ. P. 4(e)(2), and it is apparent that Rules 4(e)(2)(A) and 4(e)(2)(C) were not met, since she did not personally deliver the summons to Baeza or leave it with his agent.

The Court turns to Rule 4(e)(2)(B). Assuming that the Fort Lee address was indeed Baeza's (and Milan's) dwelling or usual place of abode, *Nat'l Dev. Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir. 1991), the affidavit of service does indicate that the doorman was a person of suitable age and discretion, as the process server noted that he was approximately 45–50 years old. Docs. 40, 41. Courts in this Circuit disagree whether leaving the summons with the doorman or concierge of a building satisfies the "resides there" requirement of Rule 4(e)(2)(B).[9] *See 131 Main St. Assocs. v. Manko*, 897

---

[8] Rule 4(h) governs service of process on a corporation and provides that corporations must be served either in the manner prescribed by Rule 4(e)(1) for serving an individual, Fed. R. Civ. P. 4(h)(1)(A), or by delivering a copy of the summons and complaint to an officer or other agent authorized by appointment or law to receive service of process, Fed. R. Civ. P. 4(h)(1)(B). Here, the summons and complaint were delivered to a doorman at the Fort Lee apartment building and not to an officer of the Corporate Defendants, and thus Rule 4(h)(1)(B) is not satisfied. As set forth herein, the Court finds that service on the Corporate Defendants was proper under New York law, and therefore the requirements of Rule 4(h)(1)(A) were met.

[9] Pursuant to the 1993 Amendment to the Rules of Civil Procedure, subdivision (e) replaced former subdivisions (c)(2)(C)(i) and (d)(1). Fed. R. Civ. P. 4.

F. Supp. 1507, 1525 (S.D.N.Y. 1995) (service on apartment building doorman of suitable age and discretion was proper service under Rule 4(d)(1), since the building was the doorman's business residence); *Three Crown Ltd. P'ship v. Caxton Corp.,* 817 F. Supp. 1033, 1051 (S.D.N.Y. 1993) (service on building doorman described as being approximately 20 years old was proper); *Polo Fashions Inc. v. B. Bowman & Co.*, 102 F.R.D. 905, 907–08 (S.D.N.Y. 1984) (Motley, J.) (service on a non-live-in housekeeper at the defendant's residence did not satisfy Rule 4(d)(1), since the housekeeper did not reside there); *Espada v. Guardian Serv. Indus., Inc.,* No. 18 Civ. 5443 (ILG) (JO), 2019 WL 5309963, at *8 (E.D.N.Y. Oct. 18, 2019) (service on a building's concierge did not satisfy Rule 4(e)(2)(B) because the concierge did not reside there); *Van Leuven v. Nielsen*, No. 18 Civ. 1007 (MPS), 2019 WL 330863, at *3 n.2 (D. Conn. Jan. 25, 2019) ("The requirement that the recipient of the summons and complaint be someone 'who resides there' has long been held to mean that the recipient must be actually living in the same place as the defendant who is to be served." (quoting 4A Wright & Miller, Fed. Prac. & Proc. Civ. § 1096 (4th ed.))).  Accordingly, even though Weingeist has not argued this point, service on the doorman may have been proper service under the Federal Rules of Civil Procedure.  Since this matter is ambiguous, however, the Court next considers whether service was proper under either New Jersey or New York law.

New Jersey Court Rule 4:4–4(a)(1) requires that the summons and complaint be personally served within the state

> [u]pon a competent individual of the age of 14 or over, by delivering a copy of the summons and complaint to the individual personally, or by leaving a copy thereof at the individual's dwelling place or usual place of abode with a competent member of the household of the age of 14 or over then residing therein, or by delivering a copy thereof to a person authorized by appointment or by law to receive service of process on the individual's behalf.

N.J. Ct. R. 4:4–4(a)(1).  New Jersey courts have interpreted "dwelling place or usual place of abode" to refer to where an individual is actually living on the date of service,

including a "person's permanent home, even if he . . . is temporarily staying elsewhere" but not extending to a "house from which defendant is absent for an extended or continuous period of time." *Khaldei v. Kaspiev*, No. 10 Civ. 8328 (JFK), 2014 WL 2575774, at *6 (S.D.N.Y. June 9, 2014) (first citing *Fid. & Deposit Co. of Md. v. Abagnale*, 234 A.2d 511, 519 (N.J. Super. Ct. Law. Div. 1967); and then quoting *Bank of New York for the Benefit of the Asset Backed Certificates Series 2007–2 v. Tross*, 2011 WL 1584426, at *4 (N.J. Super. Ct. App. Div. Apr. 28, 2011) (unpublished opinion)).

It is unclear whether leaving the summons with the doorman was proper service for the purposes of Rule 4:4–4(a)(1). In their reply papers, the Defaulting Defendants argue that the Fort Lee apartment was at best Baeza's "legal residence" and not his "dwelling place or usual place of abode" because of his extended absences from the apartment. Doc. 85 at 4–5 (citing *Abagnale*, 234 A.2d at 519 ). The Court assumes for purposes of the instant motion that the Fort Lee apartment qualifies as Baeza's dwelling place or usual place of abode. However, the Court cannot be certain that the doorman was "a competent member of the household . . . residing therein." The term "household" in the New Jersey Court Rules encompasses "all competent persons over fourteen years who make their home with the person to be served[,]" not just family members. *Resol. Tr. Corp. v. Associated Gulf Contractors, Inc.,* 622 A.2d 1324, 1329 (N.J. Super. Ct. App. Div. 1993) (citations omitted). New Jersey courts have explained that "[t]he test for who qualifies as a household member is a flexible one, to accommodate non-conventional family arrangements" and is "intended to be more expansive than the previous . . . 'family' standard." *Tross*, 2011 WL 1584426, at *4 (citations omitted). Furthermore, in explicating "then residing therein," the *Tross* court explained that "there must be a nexus between the individual and the defendant that establishes some reasonable assurance that notice would reach the defendant," such as a relationship of confidence between the two, or a nexus established by the individual's frequent or regular presence at the defendant's residence. *Id.* at *5 (internal quotation marks and citations

omitted).  Thus, a resident housekeeper qualified as a household member for purposes of service of process, where the parties did not dispute that the housekeeper "made her home with [defendant]," *Resol. Tr. Corp.* 622 A.2d at 1329 , and a defendant's seventeen-year-old stepdaughter could accept service at defendant's address on his behalf, *M & D Assocs. v. Mandara*, 841 A.2d 441, 450 (N.J. Super. Ct. App. Div. 2004). However, a court in the District of New Jersey found that service was improper where the process server's affidavit stated only that the summons was left with an unidentified "roommate" of the defendant and, among other defects, did not provide confirmation that the alleged roommate was a competent member of the household.  *Granger v. Am. E-Title Corp.*, No. 10 Civ. 4627 (JLL), 2013 WL 1845338, at *12 (D.N.J. Apr. 10, 2013), *report and recommendation adopted,* No. 10 Civ. 4627 (JLL), 2013 WL 1845144 (D.N.J. May 1, 2013).

The Defaulting Defendants claim that the doorman is not part of Baeza's household and thus as a matter of law cannot accept service for them.  Doc. 82 at 71. Weingeist, on the other hand, claims that the individual with whom the process server left the summons and complaint was Baeza's "resident doorman," and that service was valid because it is beyond dispute that the doorman "was located at Mr. Baeza's residence at the time he accepted service."  Doc. 84 at 9–10.  Neither party has provided the Court with any caselaw concerning the application of Rule 4:4–4(a) to doorman buildings, and the Court has been unable to find any New Jersey caselaw precisely on this point.  "[I]f there is at least some doubt as to whether the defendant was in fact served with process, . . . the circumstances require a more liberal disposition of the motion [to vacate]."  *Davis v. DND/Fidoreo, Inc.*, 721 A.2d 312, 316 (N.J. Super. Ct. App. Div. 1998) (internal quotation marks and citation omitted); *see also New Jersey Re-Ins. Co. v. Saintphard*, 2007 WL 3170117, at *8 (N.J. Super. Ct. App. Div. Oct. 31, 2007) (unpublished opinion).  Resolving its doubts in favor of the Defaulting Defendants, the Court finds that

Weingeist has not carried her burden to show that service was proper pursuant to New Jersey Court Rule 4:4–4(a)(1).[10]

The New Jersey Court Rules also allow for service by mail under certain circumstances, but Weingeist has not met those requirements here. *See Citibank, N.A. v. Russo*, 759 A.2d 865, 868 (N.J. Super. Ct. App. Div. 2000). First, in lieu of personal service, service may be made "by registered, certified or ordinary mail," but such service is only effective "if the defendant answers the complaint or otherwise appears," and default judgment shall not be entered against a defendant who fails to appear in response to such service by mail. N.J. Ct. R. 4:4–4(c). Since the Defaulting Defendants did not answer or appear, this rule does not apply. Alternatively, if a plaintiff avers by affidavit that "despite diligent effort and inquiry," personal service cannot be made, service may be made simultaneously by mailing by registered or certified mail, return receipt requested, and by ordinary mail. N.J. Ct. R. 4:4–4(b)(1)(C); *see also Citibank*, 759 A.2d at 868. Although Weingeist did send the Defaulting Defendants notice of the show cause hearings twice by registered mail at the Fort Lee address, she did not serve them simultaneously by ordinary mail. Nor did she submit an affidavit of due diligence. *See Sobel v. Long Island Ent. Prods., Inc.,* 747 A.2d 796, 801 (N.J. Super. Ct. App. Div. 2000) (reversing the lower court's denial of a motion to vacate and explaining that "even without a violation of due process, a default judgment will be set aside for a substantial deviation from the service of process rules."); *cf. Strike 3 Holdings, LLC v. Vokoun*, No. 12 Civ. 14321 (NLH) (AMD), 2022 WL 310201, at *2–3 (D.N.J. Feb. 2, 2022) (finding

---

[10] New Jersey courts have noted that "default judgments will not be vacated for minor flaws in the service of process," and that "delivery of a summons and complaint to someone at the defendant's home who transmits them to the defendant in a timely fashion will be treated as valid service of process even if the recipient of the process was not a member of the defendant's household." *Sobel v. Long Island Ent. Prods., Inc.*, 747 A.2d 796, 800 (N.J. Super. Ct. App. Div. 2000) (citations omitted). However, there is no indication that the doorman transmitted the summons and complaint to Baeza in a timely fashion after receiving them, and Baeza attests that he first received the summons and complaint, along with other notices in this matter, on November 10, 2020. Doc. 82 at 78.

that service by certified mail, return receipt requested, and by ordinary mail was sufficient to meet the requirements of N.J. Ct. R. 4:4–4(b)(1)(C) where the record supported that defendant had been actively evading service).

Finally, the New Jersey Court Rules provide for service upon a corporation "by serving a copy of the summons and complaint in the manner prescribed by paragraph (a)(1) of this rule on any officer . . . or any person authorized" to receive process. N.J. Ct. R. 4:4–4(a)(6). Because the Court cannot conclude that personal service on Baeza and the other Individual Defendants was proper under N.J. Ct. R. 4:4–4(a)(1), it follows that service on the Corporate Defendants under this provision is also in doubt.

Next, the Court considers compliance with New York law. Weingeist did not serve Baeza or any of the other Individual Defendants in New York, but she did serve the Corporate Defendants through service upon the New York Secretary of State. Subsections (1), (2), and (4) of the N.Y. C.P.L.R. § 308 "provide for service by personal delivery, delivery and mailing, and nailing and mailing, respectively." *Doe v. Hyassat*, 337 F.R.D. 12, 15 (S.D.N.Y. 2020) (citation omitted). "Service of process must be made in strict compliance with statutory 'methods for effecting personal service upon a natural person'" pursuant to C.P.L.R. § 308. *Est. of Waterman v. Jones*, 843 N.Y.S.2d 462, 464 (N.Y. App. Div. 2007) (collecting cases). "Where service pursuant to these subsections is 'impracticable,' however, service may be effected 'in such a manner as the court, upon motion without notice, directs.'" *Hyassat*, 337 F.R.D. at 15 (quoting *Tishman v. The Associated Press*, No. 05 Civ. 4278 (GEL), 2006 WL 288369, at *1 (S.D.N.Y. Feb. 6, 2006)); *see also* N.Y. C.P.L.R. § 308(5). Finally, "[a]lthough each of the subdivisions of CPLR 308 refers to service 'within the state,' the same methods that are used to serve process on a defendant located in New York" apply when service is made outside New York. *Bozza v. Love*, No. 15 Civ. 3271 (LGS), 2015 WL 4039849, at *1 (S.D.N.Y. July 1, 2015) (citing N.Y. C.P.L.R. § 308).

There is no dispute that Baeza was not personally served, nor was his agent served, nor did Weingeist follow the procedures for "nail and mail" service, that is both affixing a copy of the summons to the door of his actual place of business or dwelling place and mailing a copy of the summons within the time frame prescribed by statute. Thus, N.Y. C.P.L.R. §§ 308(1), (3), and (4) are inapplicable. C.P.L.R. § 308(2) requires "delivering the summons within the state to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode of the person to be served" and "mailing the summons to the person to be served" with "such delivery and mailing to be effected within twenty days of each other." Under New York law, "[t]he dwelling place of a person must be the place where he or she actually dwells, lives or inhabits." *Doe v. Alsaud*, 12 F. Supp. 3d 684, 687 (S.D.N.Y. 2014) (citations omitted). "New York law permits valid service by leaving a copy of the summons and complaint with a doorman at a defendant's residence or dwelling." *Id.* (citing *Charnin v. Cogan,* 673 N.Y.S.2d 134, 137 (N.Y. App. Div. 1998)); *see also MRS Prop. Invs., Inc. v. Bivona*, No. 21 Civ. 1104 (EK) (AYS), 2021 WL 1738329, at *3 (E.D.N.Y. May 3, 2021) (citations omitted).[11] Nevertheless, service was not proper under C.P.L.R. § 308(2) because Weingeist did not also send the summons by mail within the twenty-day time period required by statute. *See Opt Out of IEAM, LLC v. Indus. Enters. of Am., Inc.,* No. 11 Civ. 8470 (DLC), 2012 WL 6135819, at *3 (S.D.N.Y. Dec. 11, 2012) (finding that service was not effective where the process server's affidavit stated that "summons and complaint were timely delivered to a 'doorman/secretary' at [defendant's] offices," but did not indicate that they had been mailed, and no proof of service was filed with court clerk). She did not mail the summons to the Fort Lee apartment until April 28,

---

[11] In some circumstances, delivery of papers to a doorman may be insufficient service. The Appellate Division, First Department has found that delivery of papers to a doorman in the lobby of an apartment building was not proper service under C.P.L.R. § 308(2) where the plaintiff's process server could have but did not access the defendant's actual apartment. *McCormack v. Goldstein*, 611 N.Y.S.2d 185, 186 (N.Y. App. Div. 1994). Here, the process server's affidavits indicate that he was not allowed up to Baeza's apartment, distinguishing *McCormack*.

2020, when she sent the order to show cause with supporting exhibits to all Defendants at that address, in advance of the June show cause hearing.  Doc. 62.  Accordingly, Weingeist did not properly effect personal service under New York law.[12]

In the alternative, Weingeist argues that service was proper pursuant to N.Y. C.P.L.R. § 308(5).  Section 308(5) provides that service may be effected "in such manner as the court, upon motion without notice, directs, if service is impracticable" under the other provisions of C.P.L.R. § 308.  Weingeist argues that she effected service by mail, email, telephone, and text message upon Knight in June, October, and November 2020, and that Defendants "can be placed on notice of Plaintiff's action and applications for default judgment by noticing an attorney who represented himself as the attorney for Defendants, representing to have an agency relationship."  Doc. 84 at 13.  Courts do permit service by email where "the movant supplied the [c]ourt with some facts indicating that the person to be served would be likely to receive the summons and complaint at the given email address," and where service by email is reasonably calculated to inform the defendant of the pendency of the action.  *Kesten v. Broad. Music, Inc.*, No. 20 Civ. 8909 (LJL), 2021 WL 1740806, at *2 (S.D.N.Y. Mar. 3, 2021) (quoting *AMTO, LLC v. Bedford Asset Mgmt., LLC*, 2015 WL 3457452, at *8 (S.D.N.Y. June 1, 2015) and collecting cases).  Courts have also permitted "backstop service" upon an attorney representing a defendant in another matter where "the fact of that representation has been well-established."  *Hyassat*, 337 F.R.D. at 17  (quoting *Ransome v. Epstein*, No. 17 Civ. 616 (JFK), 2018 WL 637421, at *1 (S.D.N.Y. Jan. 30, 2018)); *see also*

---

[12] In her affidavit, Weingeist asserts that Baeza's adult daughter may have also checked the mail at the Fort Lee apartment and would have received the mail:  "It is well known that Mr. Baeza keeps assistants for other entities employed as well as his daughter Ms. Ariel Baeza who is employed by Defendant Tropix Inc. who performs administrative and research tasks for her father.  Ms. Milan and her daughters most certainly were in and out of the Fort Lee apartment and were receiving mail and packages on behalf of Mr. Baeza."  Doc. 84-1 at 7.  The Defaulting Defendants contest this assertion in their reply papers.  Doc. 85 at 7.  Weingeist did not actually make such an argument in her memorandum of law.  The Court does not consider whether Ms. Baeza may have received notice of this suit as there is no affidavit of service upon Ms. Baeza in the record, nor any indication in the record that Ms. Baeza actually received the summons and complaint.  Accordingly, this portion of Weingeist's affidavit is speculative.

*Rampersad v. Deutsche Bank Sec., Inc.,* No. 02 Civ. 7311 (LTS) (AJP), 2003 WL 21073951, at *1 (S.D.N.Y. May 9, 2003) (granting plaintiff's request to serve attorney who "acknowledged that he represented [defendant]").  Here, as in *Hyassat*, whether Knight actually represented Baeza and the Corporate Defendants is in dispute.  Weingeist claims that Knight held himself out as Baeza's attorney and attempted to settle the case after she sent her pre-suit demand letter.  Doc. 84-1 at 9.  Baeza, on the other hand, avers that Knight is not and has never been his personal lawyer, and that he met Knight through Weingeist.  Doc. 82 at 86.  Unlike the attorney in *Ransome*, Knight has not entered an appearance on behalf of Baeza or any of the other Defaulting Defendants in any other matter in this District, and unlike the attorney in *Rampersad*, Knight has not acknowledged that he represented Baeza or the Defaulting Defendants.[13]  Although Weingeist represented to the Court that she had served Defendants through service upon Knight, she never moved the Court for an order of alternate service, explaining why personal service was impracticable and making a showing that service on Knight would be reasonably calculated to apprise Defendants of this action.  *See Hyassat*, 337 F.R.D. at 17–18; *Kesten*, 2021 WL 1740806, at *2–3.  Finally, Knight's biography on Pryor Cashman LLP's website indicates that he is a corporate entertainment and intellectual property attorney.[14]  At best, it is unclear whether Knight was in fact Defendants' counsel for purposes of this FLSA litigation.  Therefore, the Court cannot conclude that service was proper pursuant to N.Y. C.P.L.R. § 308(5).

The Court next considers whether service on the Corporate Defendants via the New York Secretary of State was proper under N.Y. C.P.L.R. § 311(a)(1).  Personal service upon a corporation may be made either by delivering the summons upon an

---

[13] Weingeist's claim that Knight called her attorneys and stated that he was Baeza's attorney is hearsay. Doc. 84-1 at 9.  Moreover, her argument that Knight was Baeza's "personal and corporate attorney," and her counsel's letter describing him as Baeza's long-time personal attorney, Docs. 84 at 13, 84-4, are incongruous with her statement that she introduced Knight to Baeza in 2019.  Doc. 84-1 at 10.

[14] *See* https://www.pryorcashman.com/w-wilder-knight-ii (last accessed March 28, 2022).

officer of the corporation or in accordance with N.Y. Bus. Corp. Law § 306.  N.Y.
C.P.L.R. § 311.  Since the summons was not served upon Baeza or any other officer of the
Corporate Defendants, the Court considers whether service was proper under N.Y. Bus.
Corp. Law § 306.  "Under New York law, a New York corporation  . . . may be served by
personal delivery of process to, or leaving process with 'any person authorized by the
secretary of state to receive such service.'"  *Crawford v. Nails on 7th By Jenny Inc.*, No.
18 Civ. 9849 (ER), 2020 WL 564059, at *3 (S.D.N.Y. Feb. 5, 2020) (quoting N.Y. Bus.
Corp. Law § 306 (b)(1)).  Section 306(b)(1) provides that service is complete "when the
secretary of state is so served."  The Secretary of State must then promptly send a copy of
the summons by certified mail to the corporation's address.  N.Y. Bus. Corp. Law
§ 306(b)(1).  Here, it appears that service on the Corporate Defendants was proper:
Weingeist has submitted facially valid affidavits of service as to all three Corporate
Defendants, which constitutes a *prima facie* case of proper service.  *Old Republic Ins. Co.
v. Pac. Fin. Servs. of Am., Inc.*, 301 F.3d 54, 57 (2d Cir. 2002) (citing *Nyctl 1997-1 Tr. v.
Nillas*, 732 N.Y.S.2d 872, 873 (N.Y. App. Div. 2001)).  Accordingly, service was
complete when the process server delivered the complaint and summons to the Secretary
of State, regardless of whether Baeza or any of the other Defendants received actual
notice of the lawsuit.  *See Vega*, 2021 WL 738693, at *5 (collecting cases).

In sum, the Court finds that Weingeist has not definitively shown that service
upon the Individual Defendants was proper, but that service upon the Corporate
Defendants was proper.  The Court next turns to the discretionary factors applicable
under Rule 60(b)(1) and (6).  For the reasons below, the Court finds that vacatur is
warranted even if service was proper.

   *2. Willfulness*

Weingeist argues that the default was willful because the Defaulting Defendants
were served and were on notice of this action.  For the reasons stated above, whether
Baeza was served is not clear.  Although the Corporate Defendants were properly served,

Baeza has submitted a sworn declaration stating in part, "I was never sent <u>any</u> documents from the Secretary of State."  Doc. 82 at 78.  Such a denial of receipt of service rebuts the presumption of proper service established by the process server's affidavit and necessitates an evidentiary hearing.  *Crawford*, 2020 WL 564059, at *3 (citing *Old Republic*, 301 F.3d at 57).

Nor does the record indicate that Defendants engaged in deliberately evasive conduct—that is, conduct that is "more than mere negligence"—which is required for a finding of willfulness.  *Id.* (citing *United States v. Manhattan Cent. Cap. Corp.*, No. 94 Civ. 5573 (WK), 2001 WL 902573, at *4 (S.D.N.Y. Aug. 09, 2001)).  Weingeist's argument that the default was willful because her counsel served Knight and contacted him multiple times, Doc. 84 at 6, is unavailing for the reasons discussed above.  Her claim that the Defaulting Defendants were on notice of her intent to file an action has more merit, since her pre-litigation demand letter was sent by email to Baeza and nonparties Ruiz Medina and Fernandez.  *Id.*  However, courts in this Circuit have found that ignoring a pre-litigation demand letter does not establish willfulness.  *See Tile, Inc. v. Cellntell Distribution Inc.*, No. 20 Civ. 428 (FJS) (DJS), 2021 WL 2682253, at *5–7 (N.D.N.Y. June 30, 2021) (no finding of willfulness where plaintiff had sent two letters requesting that defendants cease infringing actions and a third pre-litigation demand letter); *cf. Gesualdi v. Seacost Petroleum Prod., Inc.,* 97 F. Supp. 3d 87, 100 (E.D.N.Y. 2015) (finding willfulness where plaintiffs had submitted eight separate demand letters, among other steps taken).  Furthermore, the Court recognizes that the circumstances of the early days of the pandemic may have contributed to the default.  *Wildflower + Co. v. Mood Apparel, Ltd.*, 338 F.R.D. 192, 197 (S.D.N.Y. 2021) ("Certainly, the exigencies of the COVID-19 pandemic may excuse a party's default under the right circumstances.") While the Defaulting Defendants' failure to move for vacatur between November 2020 and June 2021 goes unexplained—Baeza claims only that there were several highly technical documents that had to be professionally translated, but does not explain why,

Doc. 82 at 78—the Court nonetheless finds that this was not "egregious or deliberate conduct" rising to the level of willfulness.  *New York v. Green*, 420 F.3d 99, 108 (2d Cir. 2005) (citations omitted).

Accordingly, this factor counsels in favor of vacatur.

### 3.  *Meritorious Defense*

In order to make a sufficient showing of a meritorious defense, a defendant need not prove the defense conclusively, *see McNulty*, 137 F.3d at 740, but need only present facts that if proven at trial, would constitute a complete defense.  *Enron Oil*, 10 F.3d at 98.  Defaulting defendants must "present more than conclusory denials when attempting to show the existence of a meritorious defense."  *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001).

The Defaulting Defendants argue, first, that they have no burden to establish a meritorious defense if they were not served.  Doc. 82 at 65–66 (citing *Peralta v. Heights Med. Ctr., Inc.*, 485 U.S. 80, 86–87 (1988) ("Where a person has been deprived of property in a manner contrary to the most basic tenets of due process, it is no answer to say that in his particular case due process of law would have led to the same result because he had no adequate defense upon the merits." (internal quotation marks and citations omitted)).  "The question of a meritorious defense . . . is not at issue in a motion under Fed. R. Civ. P. 60(b)(4)," where the judgment is void due to improper service.  *Restoration Hardware,* 2020 WL 4497160, at *5 (collecting cases).  To the extent service on Baeza was not proper, this assertion is correct.  However, the Corporate Defendants appear to have been served properly.  Therefore, the Court will consider whether they have raised a meritorious defense.

The Defaulting Defendants' proposed answer denies all allegations relating to Defendants as Employer, including whether they had control over the conditions of Weingeist's employment, and all allegations relating to piercing the corporate veil.  Doc. 82 at 43.  Furthermore, the Defaulting Defendants have alleged affirmative defenses,

including that the Court lacks personal jurisdiction, improper venue, and that Weingeist's claims are time-barred, among others. *Id.* at 47–48. While "[a]defendant seeking to vacate an entry of default must present some evidence beyond conclusory denials to support his defense . . . [t]he test of such a defense is measured not by whether there is a likelihood that it will carry the day, but whether the evidence submitted, if proven at trial, would constitute a complete defense." *Enron Oil*, 10 F.3d at 98 (citations omitted). Baeza's affidavit attests that Weingeist was not in fact an employee because the parties could not agree on the terms of her employment, and that she instead worked as a consultant and was paid through her personal corporation, and that she simultaneously worked with other clients in addition to Tropix. Doc. 82 at 80. Furthermore, the Defaulting Defendants have provided a copy of her earnings statement, dated March 1, 2019, showing that Weingeist was paid via IRS Form 1099-MISC to "Perera & Company." Doc. 82 at 108. Thus, they have a colorable meritorious defense to this FLSA action, because Weingeist's action will turn on whether she was in fact an employee rather than an independent contractor for FLSA purposes. *See Crawford*, 2020 WL 564059, at *3; *Hart v. Rick's Cabaret Int'l, Inc.*, 967 F. Supp. 2d 901, 912 (S.D.N.Y. 2013) (explaining that the Second Circuit adopts an "economic realities" test to determine whether an individual worker is an employee for purposes of the FLSA).

   *4. Prejudice to the Non-defaulting Party*

   In considering whether a plaintiff would be prejudiced if an entry of default were vacated, the Court must take into account more than mere delay or passage of time. *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983). A plaintiff may demonstrate prejudice by showing "that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collision," *id.*, or that her "ability to pursue the claim has been hindered since the entry of the judgment." *Brown v. Gabbidon*, No. 06 Civ. 8148 (HB), 2007 WL 1423788 at *3 (S.D.N.Y. May 14, 2007) (internal quotation marks and citation omitted). Prejudice may also be present if

vacatur would "thwart plaintiff's recovery or remedy." *Green*, 420 F.3d at 110 (internal quotation marks and citation omitted). To meet this standard, "the plaintiff must demonstrate that any prejudice resulting from the defendant's default cannot be rectified in the Court in another manner were the default to be vacated." *Murray Eng'g, P.c. v. Windermere Properties LLC*, No. 12 Civ. 0052 (JPO), 2013 WL 1809637, at *5 (S.D.N.Y. Apr. 30, 2013).

Here, Weingeist contends that she will be prejudiced by a vacatur of the default judgment due to the passage of time and because "upon information and belief, the Corporate Defendants have ceased doing business," and thus the delay may result in lost evidence or difficulties in discovery, which may thwart her recovery. Doc. 84 at 18 (citing *Green*, 420 F.3d at 109–10). Defendants assert that Weingeist cannot show prejudice because delay alone cannot demonstrate prejudice and because, although default judgment was entered in November 2020, Weingeist took no action to enforce the default judgment between November 2020 and June 2021, when the Defaulting Defendants appeared in this action. Doc. 82 at 67. Moreover, Defendants argue that Weingeist's improper service and failure to prosecute this action as to Individual Defendants Cespedes, Rodriguez, and Milan weigh against a showing of prejudice. *Id.*

The Court finds that this factor does not weigh against vacatur. The passage of time does not constitute prejudice. Nor do the costs and legal fees related to obtaining default judgment or opposing a motion to vacate. *Hernandez v. La Cazuela de Mari Rest., Inc.*, 538 F. Supp. 2d 528, 534 (E.D.N.Y. 2007). Weingeist's claim that vacatur will jeopardize her "ability to obtain the funds necessary to proceed with this litigation in payment of attorneys' fees and post-judgment proceedings," Doc. 84 at 18, is not sufficient, since she "would have incurred legal fees and costs in pursuing [her] claims had Defendants not defaulted," *Hernandez*, 538 F. Supp. 2d at 534. Courts have found no prejudice even where a plaintiff had relied on the default judgment by hiring a second law firm to help collect the default judgment. *Crawford*, 2020 WL 564059, at *4. Here,

Weingeist agrees that she had taken no action to collect the judgment and that there was "no urgency" to do so, in part due to a backlog caused by the pandemic.  Doc. 84-1 at 12.

Taking into consideration the Second Circuit's strong preference in favor of deciding cases on the merits, and noting that default judgment is an "extreme sanction . . . of last, rather than first, resort," *Meehan v. Snow,* 652 F.2d 274, 277 (2d Cir. 1981), the Court finds that vacatur is warranted in this instance.

## III.   CONCLUSION

For the foregoing reasons, the motion is GRANTED.  Baeza and the Corporate Defendants are directed to answer by April 21, 2022.  For the same reasons that service on Baeza at the Fort Lee address was not clearly proper service, it is not clear that Individual Defendants Cespedes, Rodriguez, and Milan were properly served.  Accordingly, Weingeist is directed to submit a status report as to her action against Cespedes, Rodriguez, and Milan by the same date.

The Clerk of Court is respectfully directed to terminate the motions, Doc. 82.

SO ORDERED.

Dated:     March 30, 2022
          New York, New York

_____
EDGARDO RAMOS, U.S.D.J.